**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re | § | Chapter 11 |
| | § | |
| ALTERA INFRASTRUCTURE L.P., | § | Case No. 22-90130 (MI) |
| *et al.,* | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |
| | § | |

**EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS FOR AN ORDER EXTENDING**
**DEADLINES AND CONTINUING HEARING SET FORTH IN THE**
**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN**
**POSTPETITION FINANCING, (II) GRANTING LIENS AND**
**PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE**
**EXPENSE STATUS, (III) AUTHORIZING THE USE OF CASH**
**COLLATERAL, (IV) MODIFYING THE AUTOMATIC STAY,**
**AND (V) SCHEDULING A FINAL HEARING**

EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN SEPTEMBER 1, 2022.

IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

A HEARING WILL BE CONDUCTED ON THIS MATTER ON SEPTEMBER 1, 2022 AT 9:00 A.M. (CENTRAL) IN COURTROOM 404, 515 RUSK, HOUSTON, TEXAS 77002.  YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.

AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954-554. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE. THE MEETING CODE IS "JUDGEISGUR". CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/Altera.  The location of Debtor Altera Infrastructure L.P.'s principal place of business and the Debtors' service address in these chapter 11 cases is Altera House, Unit 3, Prospect Park, Prospect Road, Arnhall Business Park, Westhill, AB32 6FJ, United Kingdom.

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE ISGUR'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

The Official Committee of Unsecured Creditors (the "**Committee**") of Altera Infrastructure, L.P. and its related debtors and debtors in possession (the "**Debtors**") in the above-captioned cases (the "**Cases**") hereby moves this Court (the "**Motion**") for entry of an order extending certain deadlines and continuing the hearing set forth in paragraph 48(a) of the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Authorizing the Use of Cash Collateral, (IV) Modifying the Automatic Stay, and (V) Scheduling a Final Hearing* [Docket No. 100] (the "**Interim DIP Order**").

In support of this Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

The Debtors have requested that the Court conduct a hearing – a mere two weeks after the Committee's appointment – to pave the way for an insider to take all the restructured equity at the expense of unsecured creditors. The Debtors seek to have the Court determine on an expedited basis whether a prepetition investigation by the Debtors was adequate to absolve the insider of any liability for, and validate, a transaction, completed less than one year before the Petition Date, that laid the groundwork for the insider's equity grab. The Debtors ask the Court to rule as early as September 8 that no further investigation is necessary.

The Bankruptcy Code does not permit such preclusive effect to be given to an investigation by a debtor in possession, much less a prepetition debtor, and expressly reserves such investigatory authority to a trustee, examiner, or statutory committee that is not selected by a debtor or its management. But even if the Court were inclined to hold such a hearing to consider whether it should give some weight, or none, to the Debtors' investigation, the Committee is entitled to a reasonable

period to investigate – not just 14 days – before such a hearing takes place.  Such haste is particularly inappropriate because, as the Court made clear at the hearing regarding the Interim DIP Order, the September 8 hearing is simply a lead-in to a later hearing at which the Debtors will have to prove that the insider releases incorporated into the Debtors' DIP Motion[2] are justified under Bankruptcy Rule 9019.  The Committee has a right to investigate the propriety of those releases prior to that hearing.

Accordingly, in order to provide a reasonable time to assess the Debtors' investigation and to protect the Committee's due process rights and statutory right to conduct an investigation of the Debtors' prepetition transactions, and in accordance with the *Procedures for Complex Chapter 11 Cases in the Southern District of Texas* (which provide for a presumptive 60-day period for investigations by a committee), the Committee requests that the Court continue the September 8, 2022, evidentiary hearing regarding the adequacy of the Debtors' investigation at least to October 21, 2022 (60 days after the Committee's appointment), and set an appropriate schedule for the corresponding dates and deadlines.

The process advocated by the Debtors here represents the latest manifestation of a debtor strategy of relatively recent vintage to short-circuit the Bankruptcy Code's carefully crafted scheme for the investigation of suspect prepetition debtor transactions, including those with insiders.  The Bankruptcy Code contemplates that such an investigation will be conducted either by a trustee appointed by the U.S. Trustee with the bankruptcy court's approval, an examiner appointed by the U.S. Trustee with the court's approval, or a committee appointed by the U.S. Trustee, in each case employing professionals whose appointment is subject to the court's approval following required

---

[2] *Debtors'* _Emergency_ *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Authorizing the Use of Cash Collateral, (IV) Modifying the Automatic Stay, and (V) Scheduling a Final Hearing* [Docket No. 18] (the "**DIP Motion**").

disclosures to the court, creditors, and other parties in interest, notice and an opportunity to be heard and object.  Debtors in recent cases, and now this one, have sought to replace the Bankruptcy Code's construct with a prepetition investigation of suspect transactions by a "Restructuring Committee" chosen by the debtor being investigated, in whose creation, composition, and employment of professionals neither the U.S. Trustee nor the Court is involved, but in which the debtor's counsel, who may have advised (and in this case did advise) the debtor in connection with the very transaction being investigated, and even the insider who is to be the subject of the investigation, may be involved.

In this case, on August 27, 2021, less than one year before the Petition Date, the Debtors consummated an exchange transaction (the "**Exchange Transaction**") pursuant to which approximately $699 million of insider Altera Infrastructure L.P. ("**Altera Parent**") unsecured debt held by the Debtors' equity sponsor – Brookfield Business Partners L.P. and affiliates (collectively, "**Brookfield**") – was exchanged for an allegedly equivalent amount of secured debt issued by the intermediate holding company that directly or indirectly owns all of the operating entities, Altera Infrastructure L.L.C ("**IntermediateCo**").  Meanwhile, approximately $276 million of non-insider Altera Parent unsecured notes were structurally subordinated to this newly-created IntermediateCo debt issued to Brookfield under the Exchange Transaction by being left behind at Altera Parent, to be crammed down under a plan in the Cases.  The Exchange Transaction imposed unreasonably high subscription and other requirements on minority unsecured noteholders and was designed to ensure that Brookfield would retain ownership and control of the Debtors in any chapter 11 case that followed.  Thus was laid the groundwork for Brookfield to seek ownership of 100% of Altera Parent, while Altera Parent's non-insider unsecured noteholders essentially would be wiped out.

Beginning in May 2022, Debtors' counsel commenced an investigation of any claims or causes of action held by the Debtors against Brookfield, primarily arising from the Exchange Transaction (the "**Debtors' Internal Investigation**").   The Debtors' Internal Investigation culminated in a presentation by one of the Debtors' counsel,  Quinn Emanuel Urquhart & Sullivan,

LLP ("**Quinn Emanuel**"), the day before the August 12, 2022 petition date (the "**Petition Date**"), in which the firm concluded that there were "no claims worth pursuing."[3]  In contrast, the Interim DIP Order affords the Committee only 12 days from its appointment to retain the services of professionals and undertake an examination of, and take positions with respect to, the adequacy and propriety of the Debtors' Internal Investigation and the proposed Brookfield release – an incredibly short period of time for this work to be done under any circumstances.

If the Court approves Brookfield's DIP financing on a final basis pursuant to the DIP Motion, Brookfield will be absolved and released – at the very outset of these Cases and outside of a plan process or a fully-considered Bankruptcy Rule 9019 hearing process – of its self-interested conduct in the Exchange Transaction and any other misconduct it may have committed to the detriment of unsecured creditors prior to the commencement of the Cases.  This extraordinary relief is sought in the context of an expedited request for final approval of a $50 million DIP facility, a significant portion of which is not currently needed,[4] and which is being put in place as leverage in favor of Brookfield at the expense of unsecured creditors before the Committee is even "up and running."[5]

The Committee does not believe that it is possible to accomplish an adequate review of the

---

[3] First-Day Hearing Transcript (Aug. 15, 2022) ("**Tr.**") at 28.

[4] *See* Tr. at 88, ll. 1-21:

   THE COURT:  So why do you need the final hearing then? Mr. Ruell, why do you need to get more money out of the DIP in that – I was told we needed the final hearing because – and I reached the conclusion the 3.9 – was our cash balance.  If we've approved the interim already and you have 28.9 million of cash in the bank, why do you need to have a final hearing in 45 days?

   THE WITNESS [Christopher Ruell of FTI Consulting]:  The second tranche of the 25 million is for the – the fees, which will come emergence, Your Honor.

   THE COURT:  I'm sorry. It's for the what?

   THE WITNESS:  It's for fees at – at emergence at the end of the case.

   THE COURT:  So none of the final is going to be drawn after the final hearing until we get the confirmation?

   THE WITNESS:  That's correct.

   THE COURT:  So why do we need the final hearing in 45 days?

   THE WITNESS:  I've been not – Your Honor, I've not been involved in the – in the timeline for hearings. I've solely looked at the – the liquidity need of the business.

   THE COURT:  All right.

[5] Much of the proposed DIP financing appears to be exit financing.

Debtors' investigation of the estates' potential claims against Brookfield without undertaking its own, independent review of the transactions at issue.[6]  Indeed, as discussed below, the Bankruptcy Code does not contemplate a debtor's investigation of its own actions, even through the use of allegedly "disinterested" directors.[7]  Congress has delegated the responsibility for investigating the actions of the debtor to three parties – a trustee, examiner or statutory committee – none of which (nor any of their professionals) is selected by the debtor.  There is no basis for the Debtors' position that the Committee should simply trust that the Debtors conducted a thorough and complete investigation of these insider transactions without allowing the time or opportunity for a truly independent investigation to test whether this was indeed the case.  Such an approach would, in essence, write the Committee's investigative duties out of the Bankruptcy Code.  In these Cases, the Committee must be allowed to carry out its statutory duties and investigate the insider Exchange Transaction and assess and report to this Court whether the proposed release of the Debtors' insiders is justified, or not, and the reasons why.

The Committee's review, if permitted to take place over a reasonable period of time, would allow it to analyze and opine on the propriety of the Exchange Transaction and whether the Debtors' investigation was thorough and complete.[8]  Such a review, however, is not possible within the compressed timeline currently set forth in the Interim DIP Order, which calls for the Committee to

---

[6] The Debtors propose that the Committee simply respond to the Debtors' Internal Investigation, rather than conducting its own investigation.  To assess the Debtors' Internal Investigation will still require a thorough review and analysis of the Exchange Transaction. The Committee cannot opine on another party's investigation without conducting its own investigation.  By way of simple example, if the Debtors' Internal Investigation suggests that the Debtors reviewed a particular document for a specific infirmity, absent a review of the document and the consideration of other possible infirmities, the Committee is left with accepting the Debtors' review of the document and the single infirmity considered.

[7] *See, e.g., The Rise of Bankruptcy Directors*, European Corporate Governance Institute Law Working Paper N·593/2021 (February 2022) (http://ssrn.com/abstract_id=3866669).

[8] As noted in Footnote 6, it is unreasonable to expect that the Committee can comment upon, let alone object to, the Debtors' Internal Investigation without undertaking its own investigation.  Absent an investigation by the Committee, the Committee is left with second guessing the Debtors' efforts, without an ability to consider alternative and/or additional considerations that may have not been considered or were overlooked by the Debtors.

file a brief concerning the adequacy of the Debtors' Internal Investigation by September 6.  The schedule is especially inappropriate in light of the Committee's recent appointment (on August 22), retention of proposed counsel (on August 25) and the engagement of financial advisors (on August 29), the Debtors' refusal to provide access to information necessary for the Committee to properly review the Debtors' Internal Investigation, and the need to take at least 15 depositions.  Not allowing the Committee additional time to undertake a proper investigation would irreparably harm creditors of these estates, as it would allow the Debtors to implement their unprecedented strategy of obtaining a full release for Brookfield by way of the DIP Motion – as opposed to a fully-considered Bankruptcy Rule 9019 or plan process – based solely on the Debtors' own internal prepetition investigation, which would be essentially unvetted by the Committee, an independent body charged with such investigation.

## FACTUAL BACKGROUND

A.    <u>The August 2021 Exchange Transactions</u>

1.    As of August 2021, Brookfield owned 60% of the senior unsecured notes of Altera Infrastructure L.P. ("**Altera Parent**"), with the remaining 40% held by non-insider noteholders.[9] Brookfield also held approximately $267 million of other Altera Parent unsecured debt.[10]

2.    Brookfield also held 97.98% of the common equity of Altera Parent and 100% of Altera Infrastructure GP L.L.C., the general partner of Altera Parent which owns 0.76% of Altera Parent.[11]

3.    In August 2021, the Debtors exchanged with Brookfield an alleged total of approximately $699 million of debt, including $411 million of 8.5% senior secured notes due 2023,

---

[9] *Declaration of Jan Rune Steinsland, Chief Financial Officer of Altera Infrastructure Group Ltd., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 17]  ¶ 55 at 28.

[10] *Id.* ¶ 55 at 29.

[11] *Id.* ¶ 7 at 4.

$237 million in revolving loans, and $30 million in revolving loans, all owed by Altera Parent, and $17 million in a new-money PIK term loan to Altera Infrastructure Holdings L.L.C. ("**IntermediateCo**"), with maturities between 2022 and 2024, in exchange for an allegedly equal aggregate principal amount of newly-issued 11.5% Senior Secured PIK Notes of IntermediateCo, due in 2026.[12]  Meanwhile, $276 million of Altera Parent unsecured notes held by non-insiders that were due to mature in 2023 were left outstanding.[13]

4.      The Exchange Transaction closed on or about August 27, 2021.[14]

**B.      The Commencement of the Cases**

5.      Less than one year later, on August 12, 2022, the Debtors commenced their chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate as debtors in possession.  No trustee or examiner has been appointed in the Cases.

**C.      The Interim DIP Order**

6.      On August 16, 2022, the Court entered its Interim DIP Order, which provides, among other things that:

> [a]n evidentiary hearing … relating to the adequacy of the existing investigation … by the Restructuring Committee of potential claims and causes of action subject to the Debtors' stipulations, admissions, agreements, and releases contained in this Interim [DIP] Order with respect to the DIP Secured Parties and the Prepetition IntermediateCo Secured Parties, including the Stipulations set forth in paragraphs 1 through 14 of Annex B and the Releases set forth in paragraph 33 as to the DIP Secured Parties, the Prepetition IntermediateCo Secured Parties and certain of their related parties, is scheduled for September 8, 2022 at 3:00 p.m.[15]

---

[12] *Id.* ¶ 58 at 30.

[13] *Id.* ¶ 14 at 8.

[14] *See* Altera Infrastructure L.P., SEC Form 6-K (September 30, 2021) § 12 at 17.

[15] Interim DIP Order ¶ 48(a) at 67.

7.     Paragraph 33 of the Interim DIP Order contains broad releases by the Debtors and affiliated parties of Brookfield and other parties, including their affiliates, advisors, employees, current and former directors, officers, and interest holders.[16]

8.     The Interim DIP Order establishes a briefing schedule in advance of the September 8 hearing regarding the adequacy of the Debtors' Internal Investigation, requiring briefing in support of the sufficiency of the investigation to be filed no later than September 1, 2022, at 4:00 p.m. (Central Time), responsive pleadings to be filed no later than September 6, 2022, at 2:00 p.m. (Central Time), and reply papers to be filed no later than September 7, 2022, at 7:00 p.m. (Central Time).[17]

9.     Paragraph 48(b) of the Interim DIP Order provides that, following the evidentiary hearing, the Court will determine whether it is appropriate to schedule a further hearing to consider approval of the DIP Motion on a final basis, including the proposed releases.[18]  The Debtors and Brookfield have requested that the hearing on final approval of the DIP Motion occur within 45 days of the Petition Date.[19]

10.    Significantly, the Interim DIP Order states:  "As stated on the record at the Interim Hearing, the Committee, when formed, may file any appropriate motion to alter dates within this Interim [DIP] Order, and all parties retain the right to oppose any such motion."[20]

---

[16] Id. ¶ 33 at 57-59.

[17] Id.

[18] Id. ¶ 48(b) at 68.

[19] See DIP Motion, Exhibit D (Form of DIP Credit Agreement), § 5.18(c) at 62.

[20] Interim DIP Order ¶ 48(a) at 68.  See also Docket Entry No. 80 ("As stated on the record the committee, when formed, may file any appropriate motion to alter dates within the orders.").

D.        **The Appointment of the Committee**

11.       On August 22, 2022, the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.[21]  The Committee consists of three members:  (a) The Bank of New York Mellon, (b) American High-Income Trust, and (c) CI Canadian Short-Term Bond Pool.[22]

12.       On August 25, 2022, the Committee selected Pachulski Stang Ziehl & Jones LLP and Friedman Kaplan Seiler & Adelman LLP as proposed counsel to represent the Committee in the Cases.[23]  On August 29, 2022, the Committee selected AlixPartners as its financial advisor and Houlihan Lokey as its investment banker.

E.        **The Committee's Document Requests Regarding the Debtors' Internal Investigation**

13.       Upon its retention, counsel for the Committee immediately requested that the Debtors provide the Committee with all documents regarding the Debtors' Internal Investigation previously provided to the Ad Hoc Group of TopCo Noteholders, which represents the interests of certain unsecured noteholders of Altera Parent.

14.       On Friday evening, August 26, 2022, the Debtors provided Committee counsel with download links in response to the Committee's requests for materials previously produced to Ad Hoc Group of TopCo Noteholders.  Of note, the Debtors provided the Ad Hoc Group of TopCo Noteholders and the Committee a highly redacted version of the presentation made by Quinn Emanuel (one of the Debtors' counsel) to the Debtors' Restructuring Committee (the "**Quinn Presentation**").  After a further request, on August 29, the Debtors provided Committee counsel with an unredacted copy of the Quinn Presentation.  As of the filing of this Motion, counsel for the Committee is in the process of reviewing the documents produced.

---

[21] *See* Docket No. 148.

[22] *Id.*

[23] *See* Docket No. 158.

DOCS_LA:345020.10 03002/002

**F.      The Committee's Requests for Unredacted Documents and for a Continuance of the September 8, 2022, Evidentiary Hearing**

15.      In response to the Debtors' production of the redacted Quinn Presentation, on August 28, 2022, counsel for the Committee requested that the Debtors immediately provide the Committee with: (a) an unredacted copy of the Quinn Presentation, (b) unredacted versions of any other reports, presentations, summaries or other documents that describe the bases for the Debtors' conclusions regarding the estates' claims against Brookfield, (c) unredacted versions of any other redacted documents provided to the Committee, (d) unredacted copies of all notes, presentation materials, transcripts and other documents regarding the oral discussion accompanying the Quinn Presentation, (e) all documents that describe the full contents of interviews Quinn Emanuel conducted with individuals affiliated with the Debtors, Brookfield, and the Debtors' financial advisor Evercore Group L.L.C. ("**Evercore**"), which advised Altera in connection with the Exchange Transaction, (f) all documents that reflect Evercore's analysis of the Exchange Transaction, and (g) the removal of any confidentiality designation from the redacted version of the Quinn Presentation.  The Committee also requested that the Debtors agree to a 60-day continuance of the evidentiary hearing regarding the Debtors' Internal Investigation and requested that Debtors' counsel "meet and confer" with the Committee regarding these issues on August 29, 2022.

16.      The parties met and conferred on August 29, 2022.  Although the Debtors agreed to produce an unredacted copy of Quinn Emanuel's initial and final presentations, they wholesale rejected the Committee's other requests.

## JURISDICTION

17.     This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief sought herein are sections 105, 363, 364, 1103, 1106, and 1107 of the Bankruptcy Code and Rules 6004 and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the *Procedures for Complex Chapter 11 Cases in the Southern District of Texas*.

## RELIEF REQUESTED

18.     The Committee requests that the Court continue the evidentiary hearing and corresponding briefing schedule regarding the adequacy and propriety of the Debtors' Internal Investigation, scheduled for September 8, 2022, pursuant to paragraph 48(a) of the Interim DIP Order, to October 21, 2022.

## BASIS FOR RELIEF

**A.     The Bankruptcy Code's Comprehensive Statutory Scheme for the Investigation of a Debtor's Prepetition Transactions Does Not Contemplate Debtor Self-Investigations.**

19.     The overall statutory scheme of the Bankruptcy Code contemplates that an investigation of potential causes of action of the estate – including preference and fraudulent transfer claims that the prepetition debtor could never assert and claims against insiders – will be conducted by a trustee, an official committee or an examiner, not by the debtor in possession, and certainly not by the prepetition debtor.

20.     Section 1107(a) of the Bankruptcy Code provides, in relevant part, that the "debtor in possession shall have all the rights, … and powers, and shall perform all the functions and duties, *except **the duties specified in sections 1106(a)(2), (3), and (4) of this title***, of a trustee serving in a case under this chapter."[24]  Section 1106(a)(3), in turn, provides as follows: "A trustee shall – except

---

[24] 11 U.S.C. § 1107(a) (emphasis added).

to the extent that the court orders otherwise, ***investigate the acts, conduct, assets, liabilities, and financial condition of the debtor***, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan."[25]   Section 1106(a)(4) then requires the trustee to promptly report on any such investigation.[26]

21.     Bankruptcy Code section 1106(b) provides that "[a]n examiner appointed under section 1104(d) of this title ***shall perform the duties specified in paragraphs (3) and (4) of subsection (a)*** of this section, and, except to the extent that the court orders otherwise, any other duties of the trustee that the court orders the debtor in possession not to perform."[27]   A trustee or an examiner, therefore, is expressly tasked with investigating the debtor, but a debtor in possession is not, and a prepetition debtor certainly is not.

22.     Beyond a trustee and an examiner, chapter 11 creates yet another entity tasked with conducting investigations of the debtor:  a statutory committee.  Section 1103(c)(2) states that "[a] committee appointed under section 1102 of this title may … ***investigate the acts, conduct, assets, liabilities, and financial condition of the debtor***, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan."[28]   The United States Court of Appeals for the Fifth Circuit has held that the "may" in section 1103 is not merely permission:  It creates a duty to undertake such investigative tasks.[29]

---

[25] 11 U.S.C. § 1106(a)(3) (emphasis added).

[26] 11 U.S.C. § 1106(a)(4).

[27] 11 U.S.C. § 1106(b) (emphasis added).

[28]  11 U.S.C. § 1103(c)(2) (emphasis added).  Notably, the Bankruptcy Code grants this right in an entirely unqualified way – § 1103 does not directly authorize the court to limit the ability of a statutory committee to investigate, in contrast to other sections that grant the court discretion.  *Cf.* § 1107 (authorizing court to direct debtor in possession to not perform duties); § 1108 (authorizing court to direct the trustee to cease operating business); § 1106(b) (authorizing court to direct examiner rather than trustee to perform specific duties).

[29] *In re Adv. Comm. of Major Funding Corp.*, 109 F.3d 219, 225 (5th Cir. 1997).

13

23.     Thus, the Bankruptcy Code authorizes three separate persons or entities to conduct investigations in chapter 11 cases:  a true chapter 11 trustee, an examiner, and a statutory committee. By contrast, conducting investigations and filing a report on those investigations are explicitly carved out from the duties of the debtor in possession.[30]  That design makes sense:  The clear rationale is that the debtor is not permitted to investigate itself in a manner that would usurp the powers of a trustee, examiner, or committee.[31]

24.     During the meet and confer with the Debtors on August 29, 2022, the Debtors advised the Committee that the legal grounds on which they seek approval of the resolution of the claims and release of Brookfield – and thus the grounds on which they would attempt to limit the Committee's investigative rights – are based on section 363 of the Bankruptcy Code and Bankruptcy Rule 9019. There is, however, no language in, or authority under, either section 363 of the Bankruptcy Code or Bankruptcy Rule 9019 that would serve to eliminate, or even limit, a creditors' committee's power or duty to investigate under section 1103(c)(2) of the Bankruptcy Code.  As established by the U.S. Supreme Court, bankruptcy courts are not authorized to circumvent the express provisions and procedural safeguards of the Bankruptcy Code.[32]  The Committee's power and duty to investigate is expressly established under Section 1103(c)(2) and neither section 363, Rule 9019, nor any other provision of the Bankruptcy Code or Rules, provides any basis to curtail the Committee's statutory power and duty to investigate – let alone do so on the basis of an investigation by the Debtors.

---

[30] The legislative history states that the debtor in possession "is required to perform the functions and duties of a chapter 11 trustee (except the investigative duties)."  S. Rep. No. 95-989, 95th Cong., 2d Sess. 116 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5902.

[31] Unlike the debtor in possession, those entities charged with an investigation of a debtor's transactions (a trustee, examiner, or statutory committee) are appointed independently of the debtor: a chapter 11 trustee is generally chosen by vote of the non-insider creditors in a chapter 7 case or by the United States Trustee in a chapter 11 case, *see* 11 U.S.C. §§ 702, 1104(b), and examiners and statutory committees are appointed by the United States Trustee.  *See* 11 U.S.C. §§ 1102(a)(1), 1104(d); Fed. R. Bankr. P. 2007.1.

[32] *Czyzewski* v. *Jevic Holding Corp.*, 137 S. Ct. 973, 986 (2017).

25.     Given this statutory backdrop, a court should be reluctant to countenance a debtor in possession's preferred internal investigation as precluding an investigation by the three entities that the Bankruptcy Code tasks with conducting investigations of the debtor and its prepetition transactions.  There is no such thing in the Bankruptcy Code as an "independent branch" of the debtor in possession.  There is just a debtor in possession.  Deferring solely to a debtor in possession's "self-sanitized" investigation would subvert the statutory design enacted by Congress with one of a debtor in possession's choosing.[33]

26.     Here, these Debtors are asking for even more far-reaching relief.  They are asking this Court to defer to an investigation conducted not by the debtor in possession, but by the prepetition debtor, including with respect to potential avoidance causes of action – preferences and fraudulent transfers – that do not belong to the prepetition debtor and that it could never assert.  Indeed, the Debtors' Internal Investigation concluded that certain claims against Brookfield were of no value even before the bankruptcy petitions were filed and avoidance claims under the Bankruptcy Code first came into being and vested in the estates.

27.     Any reliance on a prepetition investigation by the Debtors would represent a major departure from the statutory design of the Bankruptcy Code.  The Bankruptcy Code attaches the unique fiduciary duties of a debtor in possession and its professionals upon the entry of an order for relief, not before.[34]  Recovering preferences and fraudulent transfers are one of the core duties of the newly-created estate fiduciary, a right not possessed by the prepetition debtor.[35]  Yet here, the

---

[33] The Committee is not suggesting that a debtor cannot do a prepetition or post-petition investigation.  Rather, any such debtor investigation is not a basis to eliminate an investigation by a committee.

[34] *Czyzewski* v. *Jevic Holding Corp.*, 137 S. Ct. at 978.

[35] *See id.* (The trustee "may . . .  perform certain bankruptcy-related functions, such as seeking to recover for the estate preferential or fraudulent transfers made to other persons, § 547 (transfers made before bankruptcy that unfairly preferred particular creditors); § 548 (fraudulent transfers, including transfers made before bankruptcy for which the debtor did not receive fair value).")

DOCS_LA:345020.10 03002/002

prepetition investigation for which the Debtors seek deference would necessarily encompass Altera Parent's potentially preferential and fraudulent transfers to its insiders.

28.     Any deference or preclusive effect to a prepetition investigation by a debtor as a substitute for a post-petition investigation by a statutorily-designated entity is simply inconsistent with the Bankruptcy Code.  Although it is appropriate for the debtor in possession to share a report of the results of such an investigation, and the materials that were relied on in preparing the report, with a statutory committee to assist it in *its* task of investigating the debtor's prepetition transactions with the insider (as requested in these Cases), it is not appropriate to permit a debtor in possession to use such an investigation as a form of self-help to short-circuit the statutory committee's performance of its duty to investigate.

**B.    Providing the Committee With an Adequate Opportunity to Review the Challenged Insider Transactions and the Debtors' Investigation Thereof Is Necessary to Ensure an Independent and Fair Process in These Cases**

29.     Where a debtor's potential claims are against its insiders, the requisite investigation is routinely undertaken by a fiduciary charged with the Bankruptcy Code's investigatory powers (a trustee, an examiner, or a committee) – and not the debtor or debtor in possession – in order to ensure the independence and adequacy of the investigation.

30.     The need for a truly independent review of insider transactions by a fiduciary with investigative powers was specifically recognized by counsel to the Debtors here in *In re Caesars Entm't Operating Co.,* 561 B.R. 420, 428 (Bankr. N.D. Ill. 2015), a case which also involved an "extensive, independent internal investigation" undertaken by the debtors.   As set forth by the court in *Caesars,* "the debtors (through Kirkland, their proposed counsel) moved to have an examiner appointed.  The motion noted that

> "Several prepetition transactions" involving the debtors and [their majority owner] had been "challenged by various creditors and resulted in contentious litigation." ***Although the debtors themselves had "launched an extensive, independent internal investigation into these transactions," "[a]s fiduciaries with the duty to maximize estate value for all stakeholders" they recognized "the need for a fair process to***

16

*review the challenged transactions*, while avoiding the potential for these cases to devolve into a value-destructive litigation free-for-all."[36]

"The debtors accordingly sought 'the immediate appointment of an independent examiner to thoroughly, expeditiously, and efficiently investigate the prepetition transactions[,]'" which request was granted.[37]  The necessity of a "fair process to review the challenged transactions" under the auspices of an independent neutral party is as essential in these Cases as it was acknowledged to be in *Caesars* and similar cases.

31.     The need for an appropriate non-debtor party to investigate insider transactions has also been recognized in the context of the appointment of a chapter 11 trustee under section 1104 of the Bankruptcy Code.[38]

32.     Similarly, creditors' committees often undertake the investigation of insider transactions.[39]

---

[36] *Id*. at 428 (emphasis added).

[37] *Id.*; *See also In re Mirant Corp.*, 314 B.R. 555, 559-60 (Bankr. N.D. Tex. 2004) (empowering an examiner, as a neutral, to investigate, among other things, insider and potential conflict transactions); *West v. Flores (In re St. Marie Clinic PA)*, 2013 Bankr. LEXIS 3866, *3 (Bankr. S.D. Tex. Sept. 17, 2013) (examiner appointed to, among other things, investigate insider transactions).

[38] *See, e.g., In re Patman Drilling Int'l, Inc.*, 2008 Bankr. LEXIS 715, *6 (Bankr. N.D. Tex. Mar. 14, 2008) ("Large transactions (in both number and amount) between the Debtor and insiders warrant immediate investigation and may result in litigation.  The current board and management of the Debtor are not the appropriate parties to pursue that investigation and potential litigation because of conflicting loyalties with regard to those transactions."); *In re Westbank Holdings, LLC*, 2022 Bankr. LEXIS 2109, *42-43 (Bankr. E.D. La. Aug. 1, 2022) ("The volume of intercompany and insider transactions forces the Court to presume that [the sole managing member of the Debtors] will be unable to conduct the impartial investigations and make the decisions required to evaluate and pursue intercompany claims on behalf of the Debtors.").  *See also In re Microwave Prods. of Am., Inc.*, 102 B.R. 666, 676 ("because the debtor is not in a strong posture to pursue possible claims that may have resulted from conflicts of interest and fraudulent transfers, a trustee would likely be able to investigate claims that could result in additional sums of money coming into the estate.") (*citing In re Sharon Steel*, 871 F.2d 1217, 1228 (3d Cir. 1989), and *In re L.S. Good & Co.,* 8 B.R. 312, 315 (Bankr. N.D. W.Va. 1980) ("that although no clear proof of fraud, dishonesty, or gross mismanagement had been presented, intercompany transactions exceeding $ 1 Million Dollars justified appointment of a trustee under section 1104(a)(2) because the size and number of transactions places current … management ... in a position of having grave conflict of interest, and the presumption arises that the current management ... will be unable to make the important investigation and decisions demanded.").

[39] *See, e.g., Official Comm. of Unsecured Creditors of Midway Games Inc. v. Nat'l Amusements Inc. (In re Midway Games Inc.)*, 428 B.R. 303, 310-11 (Bankr. Del. 2010) (committee investigation of prepetition "red flag" insider transactions); *In re International Admin. Servs.*, 211 B.R. 88, 90-91 (Bankr. M.D. Fla. 1997) (following the appointment of the unsecured creditors' committee, the debtor and the committee agreed that, due to the complex relationship between the debtor and its shareholder and other insiders, the committee was the appropriate entity to undertake the investigation and pursuit of insider claims).

33.     The Debtors and their advisors in these Cases are not the proper estate fiduciaries to conduct – much less bless – their own internal prepetition investigation of the complex and numerous potential claims against their private equity sponsor, Brookfield.  Nor should the Debtors be allowed to "jam" through releases for Brookfield at the very outset of these Cases based solely on their prepetition investigation without the benefit of a truly independent review.  The Committee has been charged with the duty to investigate claims against Brookfield in these Cases, but has not yet been provided with the information with which to even start to undertake this task.  The Committee should be allowed sufficient time to conduct its review of the Debtors' investigation.  Without sufficient time, the Committee is excluded from doing its own investigation.

34.     Sixty days from the Committee's appointment is the minimum time necessary to conduct the investigation needed in these Cases.  The Committee's professionals need to review more than 300,000 pages recently produced by the Debtors (with additional document requests pending) and to take at least 15 depositions including, among others, the members of the Restructuring Committee, Ms. Flaton and Mr. Transier; Altera officers or directors Steinsland, Mitchell, Rundberg, Oie, Donaldson, Craig, Turcotte, Rudnick, and Laurie; and personnel from Evercore.

**C.     The Committee Does Not Need to Establish "Standing" in Order to Investigate**

35.     During the first-day hearing, the Court noted that the adequacy of a debtor's investigation of a claim is relevant to whether a committee should be granted standing to assert an estate cause of action.[40]  The Fifth Circuit's decisions on standing, however, concern only the right to sue, not the right to investigate.[41]  The Committee is not aware of any authority holding that the standing requirements apply whenever a creditors' committee wishes to conduct an investigation,

---

[40] *See* Tr. 68, 108.

[41] *See, e.g., In re Cleveland Imaging & Surgical Hosp. LLC*, 26 F.4th 285, 297 (5th Cir. 2022); *In re SI Restructuring Inc.*, 714 F.3d 860, 863-64 (5th Cir. 2013); *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1397 (5th Cir. 1987).

irrespective of whether it ever seeks to assert claims on behalf of the bankruptcy estate.  Indeed, an investigation is necessary for the Committee to determine whether it can meet the standing requirements that "the claim be colorable [and] that the debtor-in-possession have [*sic*] refused unjustifiably to pursue the claim."[42]

36.     It is one thing for a debtor to assert that its plan of reorganization should include a Bankruptcy Rule 9019 settlement of potential claims because it conducted a prepetition investigation and believes that such a settlement is warranted.  That was the approach taken by the Debtors' counsel here when they served as debtors' counsel in the Nine West bankruptcy.  There, the committee was permitted to conduct a full investigation notwithstanding that independent directors of the debtors had previously conducted their own investigation, and that the issue of the committee's standing had not yet been resolved.[43]  The same approach should be taken here.

37.     Moreover, independently of the Committee's right to undertake an investigation to establish standing, the Committee must undertake a thorough investigation so that it is in a position to respond to the proposed release and related issues, not only in connection with the currently proposed DIP financing, but also in connection with any future Rule 9019 motion and/or any settlement proposed through a plan in these Cases.

**D.    Debtor in Possession Financing Unjustly Benefitting an Insider Should Not Be Approved at the Expense of the Unsecured Creditor Body**

38.     Absent an ability of the Committee to undertake its investigative mandate in a reasonable timeframe in advance of the evidentiary hearing, and present its findings in connection therewith, there are no grounds for this Court to move forward with the requested approval of the DIP Motion.  The purpose and effect of the DIP Motion is to validate a suspect insider transaction

---

[42] *Louisiana World*, 832 F.2d at 1397.

[43] *See* Disclosure Statement, *In re Nine West Holdings, Inc.*, No. 18-10947 (Bankr. S.D.N.Y. Nov. 14, 2018), at 29-30 [Docket No. 868] (discussing "The Independent Directors' Evaluation of Potential Claims and Causes of Action" and "The UCC's Rule 2004 Investigation").

as a precursor to unwarranted and preferential treatment of Brookfield, the entity controlling the Debtors, at the expense of unsecured creditors.

39.     A court should approve a proposed debtor in possession financing only if such financing "is in the best interest of the general creditor body."[44]  Moreover, the proposed financing must be "fair, reasonable, and adequate."[45]  Postpetition financing should *not* be authorized if its primary purpose is to benefit or improve the position of a particular secured lender.[46]

40.     Indeed, the law has long acknowledged the unequal bargaining power inherent in negotiations leading to proposed postpetition financing, as well as the very significant harm that can befall creditors if the proposed financier is permitted to exploit its leverage position.[47]

41.     In these Cases, the proposed DIP financing is designed to insulate, on a fast-track basis, the Debtors' insider, Brookfield, an entity in a position to exercise far greater control over the Debtors in these proceedings than a typical outside lender would have.  The Debtors seek to release all claims against Brookfield and validate the Exchange Transaction in exchange for DIP financing – half of which is admittedly not even necessary until the Debtors exit from chapter 11.  This relief is sought, not under a plan or a fully-considered Rule 9019 process, but within 45 days of the Petition Date.  This request is based on Brookfield's threat that if it does not get its way (and if one believes that the DIP financing is actually needed), Brookfield will jeopardize its investment of over $650

---

[44] *In re Roblin Indus., Inc.*, 52 B.R. 241, 244 (Bankr. W.D.N.Y. 1985) (*citing In re Vanguard Diversified, Inc.*, 31 B.R. 364, 366 (Bankr. E.D.N.Y. 1983); *see also In re Tenney Village Co.*, 104 B.R. 562, 569 (Bankr. D. N.H. 1989) ("The debtor's prevailing obligation is to the bankruptcy estate and, derivatively, to the creditors who are its principal beneficiaries").

[45] *In re Crouse Group, Inc.*, 71 B.R. 544, 546 (Bankr. E.D. Pa. 1987).

[46] *See, e.g., In re Aqua Assocs.*, 123 B.R. 192, 195-98 (Bankr. E.D. Pa. 1991) ("[C]redit should not be approved when it is sought for the primary benefit of a party other than the debtor."); *Tenney Village*, 104 B.R. at 568 (debtor in possession financing terms must not "pervert the reorganizational process from one designed to accommodate all classes of creditors and equity interests to one specially crafted for the benefit of the secured creditor").

[47] *See, e.g., In re FCX, Inc.*, 54 B.R. 833, 838 (Bankr. E.D.N.C. 1985) ("[T]he court should not ignore the basic injustice of an agreement in which the debtor, acting out of desperation, has compromised the rights of unsecured creditors."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 39 (Bankr. S.D.N.Y. 1990) ("[A] proposed financing will not be approved where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate.").

million in Altera debt (not to mention a presumably substantial investment in Altera equity) by refusing to provide the DIP financing. And this request is based on the Debtors' internal, prepetition, as of yet unscrutinized investigation that the Debtors hope will never be subject to meaningful review by any entity statutorily tasked with conducting such an investigation. The Debtors' strategy of requesting this extraordinary relief – while at the same time playing "hide the ball" with the information necessary for the Committee to undertake its review – would not only erase the Committee's investigative functions from the Bankruptcy Code but is antithetical to the bankruptcy process itself, not to mention elemental due process.

42.     In order to ensure the independence, fairness and transparency of the process, and to allow the Committee sufficient time to review and analyze the Debtors' Internal Investigation, its conclusions and the bases therefor, and engage in related discovery and undertake an independent review of the transactions and the propriety of the proposed insider release, the Committee should be provided with a period of 60 days to adequately and appropriately undertake and fulfill its investigative duties in these chapter 11 Cases. Only after a full evidentiary hearing with educated input from the Committee should the Court, if it then determines it to be appropriate, schedule a final hearing on approval of the DIP Motion.

### EMERGENCY CONSIDERATION

43.     Emergency consideration of this Motion is warranted because the current schedule set forth in the Interim DIP Order, including the evidentiary hearing scheduled for September 8 and corresponding briefing schedule (commencing on September 1 and providing a response deadline for the Committee on September 6) does not provide the Committee with a sufficient timeframe in which to undertake its investigatory duties. Emergency relief is further justified as the Committee's ability to undertake its review and analysis of the transactions at issue has been delayed by virtue of the Debtors' failure to provide the Committee with information relevant to these transactions and the Debtors' investigation.

**NO PRIOR REQUEST**

44.     No prior request for the relief sought in this Motion has been made to this or any other

Court.

**CONCLUSION**

WHEREFORE, the Committee respectfully requests that this Court: (i) enter an order

granting the relief sought herein in substantially the form attached hereto as **Exhibit A**; and (ii) grant

such other and further relief to the Committee as the Court may deem proper.

Dated:   August 30, 2022           By:     */s/ Michael D. Warner*

Michael D. Warner (TX Bar No. 00792304)
**PACHULSKI STANG ZIEHL & JONES LLP**
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone:  (713) 691-9385
Facsimile:  (713) 691-9407
Email: mwarner@pszjlaw.com

Richard M. Pachulski (admitted *pro hac vice*)
Alan J. Kornfeld (admitted *pro hac vice*)
Malhar S. Pagay (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:  rpachulski@pszjlaw.com
            akornfeld@pszjlaw.com
            mpagay@pszjlaw.com

-and-

**FRIEDMAN KAPLAN SEILER & ADELMAN LLP**
Lawrence S. Robbins (admitted *pro hac vice*)
Robert J. Lack (admitted *pro hac vice*)
7 Times Square
New York, NY 10036-6516
Telephone: (212) 833-1100
Facsimile:  (212) 833-1250
Email:  lrobbins@fklaw.com
            rlack@fklaw.com

*Proposed Counsel for the Official Committee of
Unsecured Creditors*

## CERTIFICATE OF SERVICE

I certify that on August 30, 2022, a true and correct copy of the foregoing document was served by the Bankruptcy Court's CM/ECF noticing system to all parties that are registered to receive such notice in the above cases.

/s/ Michael D. Warner
Michael D. Warner

## CERTIFICATE OF ACCURACY

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

/s/ Michael D. Warner
Michael D. Warner

DOCS_LA:345020.10 03002/002