**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ALTERA INFRASTRUCTURE L.P., *et al.*,[1] | ) | Case No. 22-90130 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. __** |

**ORDER (I) CONDITIONALLY APPROVING THE ADEQUACY OF
THE DISCLOSURE STATEMENT; (II) APPROVING THE SOLICITATION
AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE
DEBTOR'S PROPOSED PLAN OF REORGANIZATION; (III) APPROVING
THE FORM OF BALLOTS AND NOTICES IN CONNECTION THEREWITH;
AND (IV) SCHEDULING CERTAIN DATES WITH RESPECT THERETO**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) conditionally approving the adequacy of the *Second Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and Its Debtor Affiliates* (the "Disclosure Statement,"), (b) approving the Solicitation and Voting Procedures, (c) approving the form of Ballots and notices in connection therewith, (d) approving the Non-Voting Status Notices, (e) approving the manner and form of the Solicitation Packages and the materials contained therein, (f) approving the Cover Letter, (g) approving the Combined Hearing Notice, (h) approving the Plan Supplement Notice, (i) approving the form of notices to counterparties to Executory

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/Altera.  The location of Debtor Altera Infrastructure L.P.'s principal place of business and the Debtors' service address in these chapter 11 cases is Altera House, Unit 3, Prospect Park, Prospect Road, Arnhall Business Park, Westhill, AB32 6FJ, United Kingdom.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Contracts and Unexpired Leases that will be assumed or rejected pursuant to the Plan, (j) approving the Voting and Tabulation Procedures, and (k) scheduling certain dates and deadlines related thereto, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court, if any (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

## I.     Conditional Approval of the Disclosure Statement.

1.      The Disclosure Statement, attached hereto as **Schedule 1**, is hereby conditionally approved as providing holders of Claims entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with section 1125(a)(1) of the Bankruptcy Code.

2.      The Disclosure Statement (including all applicable exhibits thereto) provides holders of Claims, holders of Interests, and other parties in interest with sufficient notice of the

injunction, exculpation, and release provisions contained in Article VIII of the Plan, in satisfaction of the requirements of Bankruptcy Rules 2002(c)(3) and 3016(b) and (c).

## II.    Approval of the Solicitation and Voting Procedures.

3.    The Debtors are authorized to solicit, receive, and tabulate votes to accept the Plan in accordance with the Solicitation and Voting Procedures attached hereto as **Schedule 2**, which are hereby approved in their entirety.

## III.    Approval of the Materials and Timeline for Soliciting Votes, the Procedures for Confirming the Plan, and for the Disclosure Statement on a Final Basis.

### A.    Approval of Certain Dates and Deadlines with Respect to the Plan and Disclosure Statement.

4.    The following dates are hereby established (subject to modification as necessary) with respect to the solicitation of votes to accept or reject the Plan, as well as to file objections to the Plan and Disclosure Statement and approve the Disclosure Statement and confirm the Plan, respectively:

| Event | Date |
|---|---|
| Voting Record Date | September 30, 2022 |
| Solicitation Deadline | October 12, 2022 |
| Publication Deadline | October 14, 2022 |
| Plan Supplement Deadline | October 25, 2022 |
| Voting Deadline | November 1, 2022, at 4:00 p.m., prevailing Central Time |
| Plan and Disclosure Statement Objection Deadline | November 1, 2022, at 4:00 p.m., prevailing Central Time |
| Deadline to File Voting Report | November 3, 2022, at 4:00 p.m., prevailing Central Time |
| Combined Hearing Date | [November 4], 2022, at [10:00]a.m., prevailing Central Time |

**B.** **Approval of the Form of, and Distribution of, Solicitation Packages to Parties Entitled to Vote on the Plan.**

5.      The Solicitation Packages to be transmitted on or before the Solicitation Deadline to those holders of Claims in the Voting Classes entitled to vote on the Plan as of the Voting Record Date, shall include the following, the form of each of which is hereby approved:

   a.      this Order (excluding the schedules hereto, except as set forth below);

   b.      the Disclosure Statement attached hereto as **Schedule 1** and the exhibits attached thereto, including the Plan;

   c.      the Solicitation and Voting Procedures attached hereto as **Schedule 2**;

   d.      the applicable form of Ballots, substantially in the form of the Ballots attached hereto as **Schedule 3A**, **3B**, **3C**, **3D**, and **3E** for each Voting Class in which such holder holds a Claim;[3]

   e.      a Cover Letter, substantially in the form attached hereto as **Schedule 7**, describing the contents of the Solicitation Package and urging the holders of Claims in each of the Voting Classes to vote to accept the Plan;

   f.      the Combined Hearing Notice, substantially in the form attached hereto as **Schedule 8**; and

   g.      a pre-addressed, postage prepaid reply envelope.

6.      The Solicitation Packages provide the holders of Claims entitled to vote on the Plan with adequate information to make informed decisions with respect to voting on the Plan in accordance with Bankruptcy Rules 2002(b) and 3017(d), the Bankruptcy Code, and the Bankruptcy Local Rules.

---

[3]   The Debtors will make every reasonable effort to ensure that any holder of a Claim who has filed duplicate Claims against the Debtors (whether against the same or multiple Debtors) that are classified under the Plan in the same Voting Class is only entitled to submit one Ballot on account of such Claim and with respect to that Class.

7.     The Debtors shall distribute Solicitation Packages to all holders of Claims entitled to vote on the Plan on or before the Solicitation Deadline.  Such service shall satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

8.     The Debtors are authorized to distribute the Plan, the Disclosure Statement, and this Order to holders of Claims entitled to vote on the Plan in electronic format.  The Ballots as well as the Cover Letter and the Combined Hearing Notice will ***only*** be provided in paper form. On or before the Solicitation Deadline, the Debtors shall provide (a) complete Solicitation Packages to the U.S. Trustee and (b) the Order (in electronic format) and the Combined Hearing Notice to all parties on the 2002 List as of the Voting Record Date.

9.     Any party that receives materials in electronic format, but would prefer to receive materials in paper format, may contact the Notice and Claims Agent and request paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense).

10.     The Notice and Claims Agent is authorized to assist the Debtors in (a) distributing the Solicitation Packages, (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by holders of Claims entitled to vote on the Plan, (c) responding to inquiries from holders of Claims, holders of Interests, and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, (d) soliciting votes on the Plan, and (e) if necessary, contacting creditors and equity holders regarding the Plan.

11.     The Notice and Claims Agent is also authorized to accept Ballots via electronic online transmission through a customized online portal on the Debtors' case website.  The

encrypted Ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot Form submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

        **C.**      **Approval of the Combined Hearing Notice.**

12.     The Combined Hearing Notice, in the form attached hereto as **Schedule 8** filed by the Debtors and served upon parties in interest in the chapter 11 cases by no later October 12, 2022, constitutes adequate and sufficient notice of the hearing to consider approval of the Plan, the manner in which a copy of the Plan could be obtained, and the time fixed for filing objections thereto, in satisfaction of the requirements of the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.  The Debtors shall publish the Combined Hearing Notice (in a format modified for publication) one time each in *The New York Times* (national edition) and the *Financial Times* (global edition), on or as soon as reasonably practicable after the Publication Deadline.

13.     The Combined Hearing Notice provides holders of Claims, holders of Interests, and other parties in interest with sufficient notice of the release provisions contained in Article VIII of the Plan and the effect thereof.

        **D.**      **Approval of Notice of Filing of the Plan Supplement.**

14.     The Debtors shall send notice of the filing of the Plan Supplement, the initial version of which will be filed and served no later than seven (7) days prior to the Voting Deadline (or such later date as may be approved by the Court on notice to parties in interest in the chapter 11 cases), substantially in the form attached hereto as **Schedule 9**, on the date the Plan Supplement is filed pursuant to the terms of the Plan.  Notwithstanding the foregoing, the Debtors may amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date in accordance with the Plan.

**E.      Approval of the Form of Notices to Non-Voting Classes.**

15.      Except to the extent that the Debtors determine otherwise, the Debtors are not required to provide Solicitation Packages to holders of Claims or Interests in Non-Voting Classes, as such holders are not entitled to vote on the Plan.  Instead, on or before the Solicitation Deadline, the Notice and Claims Agent shall mail (first-class postage prepaid) a Non-Voting Status Notice in lieu of Solicitation Packages, the form of each of which is hereby approved, to those parties, outlined below, who are not entitled to vote on the Plan:

| Class(es) | Status | Treatment |
|---|---|---|
| 1, 2, 9, 10, 11 | Unimpaired—Deemed to Accept | Will receive a notice, substantially in the form attached hereto as **Schedule 4**, in lieu of a Solicitation Package. |
| 12, 13, 14 | Impaired—Deemed to Reject | Will receive a notice, substantially in the form attached hereto as **Schedule 5**, in lieu of a Solicitation Package. |
| N/A | Disputed Claims | Holders of Claims that are subject to a pending objection by the Debtors are not entitled to vote the disputed portion of their Claim.  As such, holders of such Claims will receive a notice, substantially in the form attached hereto as **Schedule 6** (which notice shall be served together with such objection). |

16.      The Debtors are not required to mail Solicitation Packages or other solicitation materials to:  (a) holders of Claims that have already been paid in full during the Debtors' chapter 11 cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court; (b) any party to whom the Disclosure Statement Hearing Notice was sent but was subsequently returned as undeliverable; or (c) holders of Class 10 Intercompany Claims or Class 11 Intercompany Interests.

**F.      Approval of Notices to Contract and Lease Counterparties.**

17.      The Debtors shall mail a notice of assumption or rejection of any Executory Contracts or Unexpired Leases (and any corresponding Cure Claims), substantially in the forms

attached hereto as **Schedule 10** and **Schedule 11**, to the applicable counterparties to the Executory Contracts and Unexpired Leases that will be assumed or rejected pursuant to the Plan (as the case may be), within the time periods specified in the Plan.

### G.   Approval of the Procedures for Filing Objections to the Adequacy of the Disclosure Statement or the Confirmation of the Plan.

18.     Objections to the final approval of the Disclosure Statement or confirmation of the Plan will not be considered by the Court unless such objections are timely filed and properly served in accordance with this Order.   Specifically, all objections to final approval of the Disclosure Statement or confirmation of the Plan or requests for modifications to the Plan, if any, **must**:  (a) be in writing; (b) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Court; (c) state, with particularity, the legal and factual bases for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) upon the applicable notice parties, so as to be ***actually received*** on or before the Plan and Disclosure Statement Objection Deadline.

### H.   Noteholder Settlement

19.     During an in-person mediation, the Debtors, Brookfield, and the Consenting Noteholders reached a settlement (the "Noteholder Settlement"), the key terms of which are included in the Noteholder Settlement Term Sheet, which is attached hereto as **Schedule 12**.  For the avoidance of doubt, the provisions of the Noteholder Settlement are not being approved by this Order, but rather shall be incorporated into the Plan and subject to confirmation of the Plan.

### I.   Restructuring Transactions.

20.     Subject to the Restructuring Support Agreement, the Plan, and the Definitive Documents and any consent rights therein, the Debtors are authorized to take all actions as may be

necessary or appropriate to effect the Restructuring Transactions, subject to confirmation of the Plan.

**J.      Miscellaneous.**

21.      The Debtors are authorized, subject to any consent rights set forth in the Restructuring Support Agreement, the Noteholder Plan Support Agreement, and the DIP Credit Agreement, to make non-substantive changes to the Disclosure Statement, Plan, Combined Hearing Notice, Solicitation Packages, Non-Voting Status Notices, Ballots, Publication Notice, Cover Letter, Solicitation and Voting Procedures, Plan Supplement Notice, Assumption and Rejection Notices, Voting and Tabulation Procedures, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before distribution.

22.      The Debtors reserve the right to modify the Plan, in accordance with the terms thereof and the consent rights set forth in the Restructuring Support Agreement and the Noteholder Plan Support Agreement, without further order of the Court in accordance with Article X of the Plan, including the right to withdraw the Plan as to an individual Debtor at any time before the Confirmation Date, subject to any consent rights set forth in the Restructuring Support Agreement, the Noteholder Plan Support Agreement, and the DIP Credit Agreement.

23.      Nothing in this Order shall be construed as a waiver of the right of the Debtors or any other party in interest, as applicable, to object to a proof of claim after the Voting Record Date.

24.      All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

25.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules and the Bankruptcy Local Rules are satisfied by such notice.

26.     The terms and conditions of this Order are immediately effective and enforceable upon its entry.

27.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

28.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Houston, Texas
Dated: _____, 2022

_____
THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

## Schedule 1

**Disclosure Statement**

Filed at Docket No. [●]

## <u>Schedule 2</u>

**Form of Solicitation and Voting Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ALTERA INFRASTRUCTURE L.P., *et al.*,[1] | ) | Case No. 22-90130 (MI) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

## SOLICITATION AND VOTING PROCEDURES

**PLEASE TAKE NOTICE THAT** on [●], 2022, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order (the "Disclosure Statement Order"): (a) authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit votes on the *First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and Its Debtor Affiliates* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Second Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and Its Debtor Affiliates* (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

### A.    The Voting Record Date.

The Court has established **[September 30], 2022**, as the record date for purposes of determining which holders of Claims in Classes 3 (IntermediateCo Notes Claims), 4 (IntermediateCo RCF Claims), 5(a)–(g) (Credit Agreement Claims Against Subsidiary Debtors), 6(a)–(g) (Credit Agreement Claims Against Altera), 7 (IntermediateCo Guarantee Claims), and 8 (Altera Unsecured Notes Claims and other General Unsecured Claims at Altera and Altera Finance Corp.) are entitled to vote on the Plan (the "Voting Record Date").

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/Altera.  The location of Debtor Altera Infrastructure L.P.'s principal place of business and the Debtors' service address in these chapter 11 cases is Altera House, Unit 3, Prospect Park, Prospect Road, Arnhall Business Park, Westhill, AB32 6FJ, United Kingdom.

[2]    Capitalized terms used but not otherwise defined herein shall have the same meaning as set forth in the Plan.

**B.**     **The Voting Deadline.**

The Court has established **[November 1], 2022, at 4:00 p.m.**, prevailing Central Time, as the voting deadline (the "Voting Deadline") for the Plan.  The Debtors may extend the Voting Deadline, in their discretion, without further order of the Court.  To be counted as votes to accept or reject the Plan, all ballots (collectively, the "Ballots") must be properly executed, completed, and delivered in accordance with the instructions provided on or with the Ballot.

To have their votes to accept or reject the Plan counted, Beneficial Holders must properly execute, complete, and deliver their Ballots to their appropriate broker, bank, or other nominee (a "Nominee"), in sufficient time so that such Nominee can verify, tabulate, and include such Ballots in a Master Ballot (as defined herein) and timely return such Master Ballot, so that it is *actually received* no later than the Voting Deadline by the Notice and Claims Agent.[3]

**C.**     **Form, Content, and Manner of Notices.**

**1.**     **The Solicitation Package.**

The following materials shall constitute the solicitation package (the "Solicitation Package"):

>   a.     a copy of these Solicitation and Voting Procedures, appended as Schedule 2 to the Disclosure Statement Order;
>
>   b.     the *Notice of Hearing to Consider (I) the Adequacy of the Second Amended Disclosure Statement and (II) Confirmation of the First Amended Joint Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines*, in substantially the form annexed as Schedule 8 to the Disclosure Statement Order (the "Combined Hearing Notice");
>
>   c.     a cover letter, in substantially the form annexed as Schedule 7 to the Disclosure Statement Order, describing the contents of the Solicitation Package and urging the holders of Claims in each of the Voting Classes to vote to accept the Plan;
>
>   d.     the applicable form of Ballot for each Voting Class in which such holder holds a Claim, in substantially the form of the Ballots annexed as Schedules 3A, 3B, 3C, 3D, and 3E to the Disclosure Statement Order, as applicable;

---

3    For any Ballot cast via electronic mail, the format of the attachment must be found in the common workplace and industry standard format (*i.e.*, industry-standard PDF file) and the received date and time in the Notice and Claims Agent's inbox will be used as the timestamp for receipt.  For the avoidance of doubt, the only acceptable method of electronic Ballot submission is through the Notice and Claims Agent's electronic online portal; *provided* that the Notice and Claims Agent will only accept Master Ballots or pre-validated Beneficial Holder Ballots via email.

e.      the approved Disclosure Statement, annexed as <u>Schedule 1</u> to the Disclosure Statement Order (and exhibits thereto, including the Plan);

f.      a pre-addressed, postage prepaid reply envelope, if applicable; and

g.      any additional documents that the Court has ordered to be made available.

2.      **Distribution of the Solicitation Package.**

The Solicitation Package shall provide the Plan, the Disclosure Statement, and the Disclosure Statement Order (without exhibits except the Solicitation and Voting Procedures) in electronic format (*i.e.*, flash drive format). Only the Ballots, the Cover Letter, and the Combined Hearing Notice will be provided in paper format. Any party that receives the materials in electronic format but would prefer paper format may contact Stretto, Inc. (the "<u>Notice and Claims Agent</u>") by: (a) writing to Altera Ballot Processing, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, CA 92602; (b) emailing <u>AlteraBallots@stretto.com</u> and requesting paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense); or (c) calling the Debtors' restructuring hotline at (855) 300-3407 (US toll free) or (949) 266-0151 (international).

The Debtors shall serve, or cause to be served, all of the materials in the Solicitation Package (excluding the Ballots) on the U.S. Trustee and all parties required to be notified under Bankruptcy Rule 2002 and Bankruptcy Local Rule 2002-1 (the "<u>2002 List</u>") as of the Voting Record Date. In addition, the Debtors shall mail, or cause to be mailed, the Solicitation Package to all holders of Claims in the Voting Classes by no later than October 12, 2022, who are entitled to vote, as described in section D below.

For purposes of serving the Solicitation Packages, the Debtors may rely on the address information for Voting Classes as compiled, updated, and maintained by the Notice and Claims Agent as of the Voting Record Date. The Debtors and the Notice and Claims Agent are not required to conduct any additional research for updated addresses based on undeliverable Solicitation Packages (including Ballots) or Non-Voting Status Notices.

To avoid duplication and reduce expenses, the Debtors will use commercially reasonable efforts to ensure that each holder of a Claim entitled to vote on the Plan receives no more than one Solicitation Package (and, therefore, one Ballot) and is only entitled to submit one Ballot on account of such holder's Claim.

3.      **Resolution of Disputed Claims for Voting Purposes; Resolution Event.**

a.      The Debtors shall have until two days prior to the the Voting Deadline to object to Proofs of Claims for purposes of voting on the Plan (the "<u>Voting Claims Objection Deadline</u>"). To the extent the Debtors wish to object to a Proof of Claim that is timely filed following the Voting Claims Objection Deadline but prior to the Voting Deadline, the Debtors shall promptly file such objection. Any such objection that that remains pending as of the Combined Hearing Date will be heard on an emergency basis at the Combined Hearing.

b.  Absent a further order of the Court, the holder of a Claim in a Voting Class that is either (a) the subject of a pending objection on a "reduce and allow" basis or (b) listed in the Schedules in an amount lower than the amount listed on the holder's Proof of Claim shall be entitled to vote such Claim in the reduced amount contained in such objection or Schedules.

c.  If a Claim in a Voting Class is subject to an objection other than a "reduce and allow" objection that is filed with the Court on or prior to the Voting Deadline:  (i) the Debtors shall cause the applicable holder to be served with a Non-Voting Status Notice substantially in the form annexed as <u>Schedule 6</u> to the Disclosure Statement Order (which notice shall be served together with such objection); and (ii) the applicable holder shall not be entitled to vote to accept or reject the Plan on account of such claim unless a Resolution Event (as defined herein) occurs as provided herein.

d.  A "<u>Resolution Event</u>" means the occurrence of one or more of the following events no later than two business days prior to the Voting Deadline:

    i.  an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

    ii.  an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

    iii.  a stipulation or other agreement is executed between the holder and the Debtors resolving the objection and allowing such Claim in an agreed upon amount; or

    iv.  the pending objection is voluntarily withdrawn by the objecting party.

e.  No later than one business day following the occurrence of a Resolution Event, or as soon as reasonably practicable thereafter, the Debtors shall cause the Notice and Claims Agent to distribute via email, hand delivery, or overnight courier service a Solicitation Package and a pre-addressed, postage pre-paid envelope, if applicable, to the relevant holder to the extent such holder has not already received a Solicitation Package.

**4.  <u>Non-Voting Status Notices for Unimpaired Classes and Classes Deemed to Reject the Plan.</u>**

Certain holders of Claims and Interests that are not classified in accordance with section 1123(a)(1) of the Bankruptcy Code, or who are not entitled to vote because they are Unimpaired or otherwise presumed to accept the Plan under section 1126(f) of the Bankruptcy Code, will receive only the *Notice of Non-Voting Status and Opt Out of Releases to Holders of Unimpaired Claims or Interests Conclusively Presumed to Accept the Plan*, substantially in the form annexed as <u>Schedule 4</u> to the Disclosure Statement Order.  Certain holders of Claims who

4

are not entitled to vote because they are deemed to reject the Plan under section 1126(g) of the Bankruptcy Code will receive the *Notice of Non-Voting Status and Opt Out of Releases to Holders of Impaired Claims or Interests Conclusively Deemed to Reject the Plan*, substantially in the form annexed as <u>Schedule 5</u> to the Disclosure Statement Order.  Such notice will instruct these holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).

     **5.**    <u>**Notices in Respect of Executory Contracts and Unexpired Leases**</u>.

Counterparties to Executory Contracts or Unexpired Leases that receive an Assumption Notice or a Rejection Notice, substantially in the forms attached as <u>Schedule 10</u> and <u>Schedule 11</u> to the Disclosure Statement Order, respectively, may file an objection to the Debtors' proposed assumption, rejection, and/or cure amount, as applicable.  Such objections must be filed with the Court on or before the later of (a) **[●], 2022, at [TIME].m., prevailing Central Time**, or (b) [TIME].m., prevailing Central Time, on the date that is 14 days after the Debtors file the first applicable schedule proposing to assume or reject such Executory Contract or Unexpired Lease. For the avoidance of doubt, a holder will only be entitled to receive a Solicitation Package on account of a Claim arising from the rejection of an Executory Contract or Unexpired Lease if the Claim is filed by the Voting Record Date.

     **D.**    **Voting and Tabulation Procedures.**

     **1.**    <u>**Holders of Claims Entitled to Vote**</u>.

Only the following holders of Claims in the Voting Classes shall be entitled to vote with regard to such Claims:

    a.    holders of Claims who, on or before the Voting Record Date, have timely filed a Proof of Claim prior to the Voting Deadline that (i) has not been expunged, disallowed, disqualified, withdrawn, or superseded prior to the Voting Record Date and (ii) is not the subject of a pending objection, other than a "reduce and allow" objection, filed with the Court prior to the Voting Deadline, pending a Resolution Event as provided herein; *provided* that a holder of a Claim that is either (a) the subject of a pending objection on a "reduce and allow" basis or (b) listed in the Schedules in an amount lower than the amount listed on the holder's Proof of Claim shall receive a Solicitation Package and be entitled to vote such Claim in the reduced amount contained in such objection or Schedules absent a further order of the Court;

    b.    holders of Claims that are listed in the Schedules; *provided* that Claims that are scheduled as contingent, unliquidated, or disputed (excluding such scheduled disputed, contingent, or unliquidated Claims that have been paid or superseded by a timely Filed Proof of Claim prior to the Voting Deadline) shall be disallowed for voting purposes (unless the applicable Claims Bar Date has not yet expired, in which case such scheduled claims would be allowed to vote in the amount of $1.00);

c.      holders of Claims that arise (i) pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Court, (ii) in an order entered by the Court, or (iii) in a document executed by the Debtors pursuant to authority granted by the Court, in each case regardless of whether a Proof of Claim has been filed;

d.      holders of Disputed Claims that have been temporarily allowed to vote on the Plan pursuant to Bankruptcy Rule 3018; and

e.      the assignee of any Claim that was transferred on or before the Voting Record Date by any Entity described in subparagraphs (a) through (d) above; *provided* that such transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register on the Voting Record Date.

2.      **Establishing Claim Amounts for Voting Purposes.**

**Claims in Classes 3, 4, and 7**.  The Claims amounts of Classes 3, 4, and 7 are based on IntermediateCo Notes, IntermediateCo RCF Claims, and IntermediateCo Guarantee Claims, and for voting purposes only will be established by reference to (a) the Debtors' applicable books and records and (b) the list of record holders maintained by the applicable Agent, dated as of the Voting Record Date, which shall reflect all outstanding amounts of the applicable positions held by such registered holders as of the Voting Record Date, as evidenced by the applicable records provided by the applicable Agent to the Debtors or the Notice and Claims Agent, which records shall be provided no later than one Business Day following the Voting Record Date.

**Claims in Classes 5 and 6**.  The Claims amounts of Classes 5 and 6 are based on the Credit Agreement Claims, and for voting purposes only will be established by reference to (a) the DIP Order and the Debtors' applicable books and records and (b) the list of record holders maintained by the applicable Agent, dated as of the Voting Record Date, which shall reflect all outstanding amounts of the applicable positions held by such registered holders as of the Voting Record Date, as evidenced by the applicable records provided by the applicable Agent to the Debtors or the Notice and Claims Agent, which records shall be provided no later than one Business Day following the Voting Record Date.

**Class 8 Claims**.  Each holder of a Class 8 Claim as of the Voting Record Date shall be entitled to vote the amount of its Claim established in accordance with the procedures set forth below for Filed and Scheduled Claims.  The Claims amount of Class 8 Claims based on Claims arising under the Altera Unsecured Notes Claims or other General Unsecured Claims of directly registered and Beneficial Holders[4] for voting purposes only will be established through the

---

[4]   A "Beneficial Holder" means a beneficial owner of publicly-traded securities whose claims have not been satisfied prior to the Voting Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the applicable broker, bank, or other Nominee holding through the Depository Trust Company or other relevant security depository and/or the respective indenture trustee.

indenture trustees or applicable Nominees, as the case may be, in the amount of the applicable positions held by such registered holders as of the Voting Record Date, as evidenced by the securities position report(s) from the Depository Trust Company, the applicable indenture trustee, or other applicable depository firm.

**Filed and Scheduled Claims**.  The Claim amount established herein shall control for voting purposes only and shall not constitute the Allowed amount of any Claim.  Moreover, any amounts filled in on Ballots by the Debtors through the Notice and Claims Agent, as applicable, are not binding for purposes of allowance and distribution.  In tabulating votes, the following hierarchy shall be used to determine the amount of the Claim associated with each claimant's vote:

a.   the Claim amount (i) settled and/or agreed upon by the Debtors, as reflected in a document filed with the Court, (ii) set forth in an order of the Court, or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Court;

b.   the Claim amount Allowed (temporarily or otherwise) pursuant to a Resolution Event under these Solicitation and Voting Procedures;

c.   the Claim amount contained in a Proof of Claim that has been timely filed by the Voting Deadline (or deemed timely filed by the Court under applicable law), except for any amounts asserted on account of any interest accrued after the Petition Date; *provided*, that any Ballot cast by a holder of a Claim who timely files a Proof of Claim prior to the Voting Deadline in respect of (a) a contingent Claim or a Claim in a wholly unliquidated or unknown amount (based on a reasonable review by the Debtors and/or the Notice and Claims Agent) that is not the subject of an objection will count toward satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and will count as a Ballot for a Claim in the amount of $1.00 solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code, and (b) a partially liquidated and partially unliquidated Claim, such Claim will be Allowed for voting purposes only in the liquidated amount; *provided further* that to the extent the Claim amount contained in the Proof of Claim is different from the Claim amount set forth in a document filed with the Court as referenced in subparagraph (a) above, the Claim amount in the document filed with the Court shall supersede the Claim amount set forth on the respective Proof of Claim for voting purposes; *provided further* that to the extent a holder of a Claim in a Voting Class or a Governmental Claim in a Voting Class that is not listed in the Schedules files a Proof of Claim after the Voting Record Date but before the Voting Deadline, such holder shall receive a Solicitation Package and a Ballot as soon as reasonably practicable following submission of the Proof of Claim form;

d.   the Claim amount listed in the Schedules (to the extent such Claim is not superseded by a timely filed Proof of Claim by the Voting Deadline); *provided* that such Claim is not scheduled as contingent, disputed, or

unliquidated and/or has not been paid; *provided further* that a Governmental Claim listed in the Schedules as contingent, disputed, or unliquidated shall be allowed to vote in the amount of $1.00;

e.       in the absence of any of the foregoing, such Claim shall be disallowed for voting purposes unless otherwise ordered by the Court; and

f.       notwithstanding anything to the contrary herein, any duplicate Claim, any Claim that is substantiated by an invoice that is invalid or previously rejected,  or any Claim that has been paid, satisfied, amended, or superseded, may be adjusted or expunged on the Claims Register by the Debtors without the Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim and without any further notice to or action, order, or approval of the Bankruptcy Court.

## 3.      Voting and Ballot Tabulation Procedures.

The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtors' right to waive any of the below specified requirements for completion and submission of Ballots so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Local Rules:

a.       except as otherwise provided in the Solicitation and Voting Procedures, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline (as the same may be extended by the Debtors), the Debtors, in their sole discretion, shall be entitled to reject such Ballot as invalid and, therefore, not count it in connection with Confirmation of the Plan;

b.       the Debtors will file with the Court by no later than one (1) business day before the Combined Hearing a voting report (the "Voting Report").  The Voting Report shall, among other things, delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity including, but not limited to, those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures, or lacking necessary information, received via facsimile, or damaged (in each case, an "Irregular Ballot").  The Voting Report shall indicate the Debtors' intentions with regard to each Irregular Ballot;

c.       the method of delivery of Ballots to be sent to the Notice and Claims Agent is at the election and risk of each holder.  Except as otherwise provided, a Ballot will be deemed delivered only when the Notice and Claims Agent actually receives the properly executed Ballot;

d.       an executed Ballot is required to be submitted by the Entity submitting such Ballot.  Delivery of a Ballot to the Notice and Claims Agent by facsimile, telecopy, electronic mail, or any electronic means other than the Notice and Claims Agent's online portal will not be valid; *provided* that Nominees (as

defined below) may return Master Ballots and Beneficial Holders may return pre-validated Beneficial Holder Ballots via electronic mail to AlteraSecurityVote@Stretto.com;

e.      no Ballot should be sent to the Debtors, the Debtors' agents (other than the Notice and Claims Agent), or the Debtors' financial or legal advisors, and if so sent will not be counted;

f.      if multiple Ballots are received from the same holder with respect to the same Claim prior to the Voting Deadline, the last properly executed Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior received Ballot;

g.      holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any votes.  Accordingly, a Ballot (other than a Master Ballot) that partially rejects and partially accepts the Plan will not be counted.  Further, to the extent there are multiple Claims within the same Class, the applicable Debtor may, in its discretion, aggregate the Claims of any particular holder within a Class for the purpose of counting votes;

h.      holders of Claims that may be asserted against multiple Debtors must vote such Claims either to accept or reject the Plan at each such Debtor and may not vote any such Claim to accept at one Debtor and reject at another Debtor.  Accordingly, a Ballot (other than a Master Ballot) that rejects the Plan for a Claim at one Debtor and accepts the Plan for the same Claim at another Debtor will not be counted;

i.      a person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a holder of Claims must indicate such capacity when signing;

j.      the Debtors, subject to a contrary order of the Court, may waive any defects or irregularities as to any particular Irregular Ballot at any time, either before or after the close of voting, and any such waivers will be documented in the Voting Report or a supplemental voting report, as applicable;

k.      neither the Debtors, nor any other Entity, will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Report, nor will any of them incur any liability for failure to provide such notification;

l.      unless waived or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured by the holder of Claims or their Nominee prior to the Voting Deadline or such Ballots will not be counted;

m.      in the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected;

n.      subject to any order of the Court, the Debtors reserve the right to reject any and all Ballots not in proper form, the acceptance of which, in the opinion of the Debtors, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; *provided* that any such rejections will be documented in the Voting Report;

o.      if a Claim has been estimated or a Claim has otherwise been Allowed only for voting purposes by order of the Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

p.      if an objection to a Claim is filed, such Claim shall be treated in accordance with the procedures set forth herein;

q.      the following Ballots shall not be counted in determining the acceptance or rejection of the Plan:  (i) any Ballot that is illegible or contains insufficient information to permit the identification of the holder of such Claim; (ii) any Ballot cast by any Entity that does not hold a Claim in a Voting Class; (iii) any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed by the Voting Record Date (unless the applicable bar date has not yet passed, in which case such Claim shall be entitled to vote in the amount of $1.00); (iv) any unsigned Ballot or Ballot lacking an original signature (for the avoidance of doubt, a Ballot cast via the online balloting portal or a Master Ballot received from a Nominee by electronic mail will be deemed to contain an original signature); (v) any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan; and (vi) any Ballot submitted by any Entity not entitled to vote pursuant to the procedures described herein;

r.      after the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Debtors; *provided*, for the avoidance of doubt, upon the occurrence of a Termination Date (as defined in the Restructuring Support Agreement) prior to the Confirmation Order being entered by the Court, any and all consents or ballots tendered by the parties subject to such termination before the Termination Date shall be deemed, for all purposes, to be null and void from the first instance and shall be allowed to be withdrawn or modified pursuant to the Restructuring Support Agreement;

s.      the Debtors are authorized to enter into stipulations with the holder of any Claim agreeing to the amount of a Claim for voting purposes.  The Debtors

will provide notice to the Committee of any such stipulation as soon as reasonably practicable following entry into the stipulation;

t.      where any portion of a single Claim has been transferred to a transferee, all holders of any portion of such single Claim will be (i) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code (and for the other voting and solicitation procedures set forth herein), and (ii) required to vote every portion of such Claim collectively to accept or reject the Plan.  In the event that (i) a Ballot, (ii) a group of Ballots within a Voting Class received from a single creditor, or (iii) a group of Ballots received from the various holders of multiple portions of a single Claim partially reject and partially accept the Plan, such Ballots shall not be counted; and

u.      for purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class will be aggregated and treated as if such creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided* that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

4.      **Procedures for Beneficial Holders of Class 8 Claims Who Hold Their Position through a Nominee.**

The following additional procedures shall apply to Claims of Beneficial Holders of Class 8 Claims who hold their position through a Nominee:

a.      **[September 30], 2022**, is the record date for determining the identity of Beneficial Holders eligible to vote on the Plan;

b.      the Notice and Claims Agent shall distribute or cause to be distributed the appropriate number of copies of Ballots to Nominees[5] identified by the Notice and Claims Agent as Entities through which Beneficial Holders hold Class 8 Claims as of the Voting Record Date;

c.      any Nominee who is a holder of record with respect to Class 8 Claims shall solicit votes from Beneficial Holders of such Class 8 Claims by: (i) immediately distributing the Solicitation Package, including Ballots, it

---

[5]     A nominee ("Nominee") is the broker, dealer, commercial bank, trust company, savings and loan, financial institution, or other such party in whose name a Beneficial Holder's beneficial ownership in a Class 8 Claim is registered or held of record on the Beneficial Holder's behalf as of the Voting Record Date.

receives from the Notice and Claims Agent to all such Beneficial Holders;[6] (ii) providing such Beneficial Holders with a return address and envelope to send Ballots; (iii) promptly collecting Ballots from such Beneficial Holders that cast votes on the Plan; (iv) compiling and validating the votes and other relevant information of all such Beneficial Holders on the applicable Master Ballot; and (v) transmitting the applicable Master Ballot to the Notice and Claims Agent by the Voting Deadline. Alternatively, a Nominee may pre-validate[7] a Beneficial Holder Ballot (*i.e.*, execute the Beneficial Owner Ballot, forward the Solicitation Package and executed Beneficial Owner Ballot to the Beneficial Holder as of the Voting Record Date and instruct the Beneficial Holder to indicate its vote to accept or reject the Plan and return the executed Beneficial Holder Ballot directly to the Notice and Claims Agent);

d.      any Beneficial Holder holding the Class 8 Claims as a record holder in its own name shall vote on the Plan by completing and signing a Ballot and returning it directly to the Notice and Claims Agent (including via electronic mail) on or before the Voting Deadline;

e.      any Beneficial Holder holding Class 8 Claims in a "street name" through a Nominee must vote on the Plan through such Nominee by completing and signing the applicable Ballot and returning such Ballot to the appropriate Nominee as promptly as possible and in sufficient time to allow such Nominee to process the Ballot and return the applicable Master Ballot to the Notice and Claims Agent prior to the Voting Deadline. Any Beneficial Holder holding Class 8 Claims in a "street name" that submits a Ballot to the Debtors, the Debtors' agents, or the Debtors' financial or legal advisors will not have such Ballot counted for purposes of accepting or rejecting the Plan;

f.      any Ballot returned to a Nominee by a Beneficial Holder shall not be counted for purposes of accepting or rejecting the Plan until such Nominee properly completes and delivers to the Notice and Claims Agent the

---

[6]   Solicitation Packages may be sent in paper format or via electronic transmission in accordance with the customary requirements of each Nominee. Each Nominee will then distribute the Solicitation Packages, as appropriate, in accordance with their customary practices and obtain votes to accept or to reject the Plan also in accordance with their customary practices. If it is the Nominee's customary and accepted practice to submit a "voting instruction form" to the Beneficial Holders for the purpose of recording the Beneficial Holder's vote, the Nominee will be authorized to send the voting instruction form in lieu of, or in addition to, a Beneficial Holder Ballot.

[7]   A Nominee "pre-validates" a Beneficial Holder Ballot by (i) signing the Beneficial Holder Ballot and including its Depository Trust Company participant number and a medallion guarantee stamp validating the Beneficial Holder's position as of the Record Date in respect of the Class 8 Claims, and (ii) indicating the account number of the Beneficial Holder and the principal amount of Class 8 Claims held by the Nominee for such Beneficial Holder as of the Voting Record Date.

applicable Master Ballot that reflects the vote of such Beneficial Holders by the Voting Deadline or otherwise validates the Ballot in a manner acceptable to the Notice and Claims Agent. Nominees shall retain all Ballots returned by Beneficial Holders for a period of one year after the Effective Date of the Plan;

g.      if a Beneficial Holder holds Class 8 Claims through more than one Nominee or through multiple accounts, such Beneficial Holder may receive more than one Ballot, and each such Beneficial Holder should execute a separate Ballot for each block of Class 8 Claims that it holds through any Nominee and must return each such Ballot to the appropriate Nominee;

h.      if a Beneficial Holder holds a portion of its Class 8 Claims through a Nominee or Nominees and another portion in its own name as the record holder, such Beneficial Holder should follow the procedures described herein to vote the portion held in its own name and the procedures described in the rest of this section to vote the portion held by the Nominee(s); and

i.      Beneficial Holders holding Class 8 Claims through a Nominee must return their paper Ballot to their Nominee, unless, at the option of the Nominee, the Nominee instructs their Beneficial Holders that they may relay votes or voting instructions electronically to the Nominee or the entity preparing the Master Ballot on such Nominee's behalf, and Nominees may use their customary procedures for obtaining such votes electronically.

### 5.      **Master Ballot Voting Procedures**.

These rules will apply with respect to the tabulation of master ballots cast by Nominees for Beneficial Holders of Class 8 Claims (each, a "Master Ballot"):

a.      votes cast by Beneficial Holders through Nominees will be applied to the applicable positions held by such Nominees in Class 8 as of the Voting Record Date, as evidenced by the applicable records. Votes submitted by a Nominee (or its agent) will not be counted in excess of the amount of such Claims held by such Nominee as of the Voting Record Date;

b.      if conflicting votes or "over-votes" are submitted by a Nominee, the Debtors will use reasonable efforts to reconcile discrepancies with the Nominees;

c.      if over-votes on a Master Ballot are not reconciled prior to the preparation of the Voting Report, the Debtors shall apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted on the Master Ballot that contained the over-vote, but only to the extent of the Nominee's position in Class 8, as evidenced by the Depository Trust Company's securities position report as of the Voting Record Date;

d.      For purposes of tabulating votes, each Nominee or Beneficial Holder will be deemed to have voted the principal amount of its Class 8 Claims; although, any principal amounts of Class 8 Claims may be adjusted by the Notice and Claims Agent to reflect the amount of the Claim actually voted;

e.      a single Nominee may complete and deliver to the Notice and Claims Agent multiple Master Ballots.  Votes reflected on multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots.  If two or more Master Ballots are inconsistent, the last-dated valid Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior dated Master Ballot. Likewise, if a Beneficial Holder submits more than one Beneficial Holder Ballot to its Nominee, (i) the latest received Beneficial Holder Ballot received before the submission deadline imposed by the Nominee shall be deemed to supersede any prior Beneficial Holder Ballot submitted by the Beneficial Holder, and (ii) the Nominee shall complete the Master Ballot accordingly; and

f.      the Debtors will, upon written request, reimburse Nominees for customary mailing and handling expenses incurred by them in forwarding the Beneficial Holder Ballot and other enclosed materials to the Beneficial Holders for which they are the Nominee.  No fees or commissions or other remuneration will be payable to any broker, dealer, or other person for soliciting Beneficial Holder Ballot with respect to the Plan.

### E.      Amendments to the Plan and Solicitation and Voting Procedures.

The Debtors reserve the right to make non-substantive or immaterial changes to the Disclosure Statement, Plan (including, for the avoidance of doubt, the Plan Supplement), Ballots, Combined Hearing Notice, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors, if any, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Package before their distribution; *provided* that all such modifications shall be made in accordance with the terms of the document being modified, the Plan and the consent requirements contained in the Restructuring Support Agreement and the DIP Credit Agreement.

**<u>Schedule 3A</u>**

**Classes 3, 4, and 7 Claims (Joint General Ballot)**

Joint Ballot for Class 3, 4, and 7 Claims

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ALTERA INFRASTRUCTURE L.P., *et al.*,[1] | ) | Case No. 22-90130 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**JOINT BALLOT FOR ACCEPTING OR REJECTING THE DEBTORS' FIRST**
**AMENDED JOINT PLAN OF REORGANIZATION AND OPT OUT OF RELEASES**

- IF YOU HAVE ANY QUESTIONS REGARDING THIS JOINT BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE DEBTORS' NOTICE AND CLAIMS AGENT, STRETTO, INC. (THE "NOTICE AND CLAIMS AGENT" OR THE "SOLICITATION AGENT") AT ALTERABALLOTS@STRETTO.COM AND REFERENCE "ALTERA" IN THE SUBJECT LINE, OR CALL (855) 300-3407 OR (949) 266-0151 (INTERNATIONAL) AND REQUEST TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM.

- PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS JOINT BALLOT.  THIS JOINT BALLOT IS BEING SUBMITTED TO YOU TO SOLICIT YOUR VOTE ON THE DEBTORS' PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN).

- THIS JOINT BALLOT MUST BE **ACTUALLY RECEIVED** BY THE NOTICE AND CLAIMS AGENT BEFORE **4:00 P.M., PREVAILING CENTRAL TIME, ON [NOVEMBER 1], 2022** (THE "VOTING DEADLINE").

- IF THE COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS JOINT BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS JOINT BALLOT.

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/Altera.  The location of Debtor Altera Infrastructure L.P.'s principal place of business and the Debtors' service address in these chapter 11 cases is Altera House, Unit 3, Prospect Park, Prospect Road, Arnhall Business Park, Westhill, AB32 6FJ, United Kingdom.

PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS JOINT BALLOT RELATING TO THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF ALTERA INFRASTRUCTURE L.P. AND ITS DEBTOR AFFILIATES (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN")[2] BEFORE COMPLETING THIS JOINT BALLOT.  THIS JOINT BALLOT PERMITS YOU TO VOTE ON THE PLAN, WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION (THE "TRANSACTION") UPON THE EMERGENCE OF THE DEBTORS FROM CHAPTER 11.

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes with respect to the Plan as set forth in the *Second Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and its Debtor Affiliates* and all exhibits related thereto (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  The Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement on a conditional basis, as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on [●], 2022 (the "Disclosure Statement Order").  Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this joint ballot (the "Joint Ballot") because records indicate that you are the holder of a Claim in Class(es)  3, 4, and/or 7 (each a "Voting Class" and collectively, the "Voting Classes") as of **[September 30], 2022** (the "Voting Record Date").  Accordingly, you may have a right to vote to accept or reject the Plan on account of those Claims.

The Disclosure Statement describes the rights and treatment for each Class.  The Disclosure Statement, the Plan, and certain other materials are also included in the packet you are receiving with this Joint Ballot (the "Solicitation Package").  This Joint Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto, including with respect to releases by holders of Claims and Interests. Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.

**YOUR VOTE ON THIS JOINT BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOU HAVE SUCH A CLAIM.**

*You should carefully and thoroughly review the Disclosure Statement and Plan before you vote to accept or reject the Plan.  You may wish to seek legal advice concerning the Plan and classification and treatment of your Claim under the Plan.*

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON [NOVEMBER 1], 2022.**

**Item 1.  Voting - Complete This Section.**

| | |
|---|---|
| **ITEM 1**:<br>**PRINCIPAL**<br>**AMOUNT**<br>**OF**<br>**CLAIMS** | The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory for a holder) of Claim(s) in a Voting Class as set forth below (your "Claim").  You may vote to accept or reject the Plan.  You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan for each Voting Class in order to have your vote in that particular Voting Class counted.<br><br>Please note that you are voting all of your Claims in each particular Voting Class either to accept or reject the Plan.  You may not split your vote in any particular Voting Class.  If you do not indicate that you either accept or reject the Plan in each particular Voting Class by checking the applicable |

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

box(es) below, your vote in that particular Voting Class will not be counted.  If you indicate that you both accept and reject the Plan for a particular Voting Class by checking both boxes below, your vote in that particular Voting Class will not be counted.

The holder of the Claims in the Voting Classes set forth below votes to (*please check one and only one box per applicable Voting Claim*):

| Voting Class | Description | Amount | Vote to Accept or Reject Plan |
|---|---|---|---|
| Class 3 | IntermediateCo Notes Claims | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br><br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 4 | IntermediateCo RCF Claims | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br><br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 7 | IntermediateCo Guarantee Claims | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br><br>☐ REJECT (VOTE AGAINST) THE PLAN |

**Item 2.  Important Information Regarding Releases under the Plan.**[3]

Article VIII.C of the Plan provides for a release by the Debtors (the "**Debtor Release**"):

> Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed released and discharged by each and all of the Debtors, the Reorganized Debtors, and their estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Causes of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their estates that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or any other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their estates (including the management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the DIP Facility, the Prepetition Credit Agreements, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, the Amended and Restated Bank Facilities, the Chapter 11 Cases, the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, the DIP Facility, the Amended and Restated Bank Facilities, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration

---

[3]   The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  Please read the Plan carefully before completing this Joint Ballot.

and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

> Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party (other than the Debtors or the Reorganized Debtors) is hereby deemed released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Causes of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the DIP Facility, the Prepetition Credit Agreements, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, the Amended and Restated Bank Facilities, the Chapter 11 Cases, the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, the DIP Facility, the Amended and Restated Bank Facilities, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, the Restructuring Transactions, the Amended and Restated Bank Facilities, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or obligations under any guarantee granted or insurance policy issued by an export credit agency or similar entity.

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "*RELEASED PARTY*" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH OF THE DEBTORS; (B) EACH OF THE REORGANIZED DEBTORS; (C) EACH CONSENTING STAKEHOLDER; (D) EACH CONSENTING NOTEHOLDER; (E) THE COCOM AND EACH MEMBER OF THE COCOM; (F) THE COMMITTEE AND EACH MEMBER OF THE COMMITTEE; (G) EACH AGENT UNDER A CONSENTING BANK LENDERS CREDIT AGREEMENT, THE DIP AGENT, AND THE INTERMEDIATECO AGENTS/TRUSTEES; (H) EACH OF THE CONSENTING SPONSOR ENTITIES, (I) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (J); AND (J) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (J); *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT:  (X) ELECTS TO OPT OUT OF THE RELEASE CONTAINED IN THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN THE PLAN, EITHER THROUGH (I) A FORMAL OBJECTION FILED ON THE DOCKET OF THE CHAPTER 11 CASES OR (II) AN INFORMAL OBJECTION PROVIDED TO THE DEBTORS IN WRITING, INCLUDING BY ELECTRONIC MAIL, AND SUCH OBJECTION IS NOT WITHDRAWN ON THE DOCKET OF THE CHAPTER 11 CASES OR IN WRITING, INCLUDING VIA ELECTRONIC MAIL, AS APPLICABLE, BEFORE CONFIRMATION.

UNDER THE PLAN, "*RELEASING PARTIES*" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH COMPANY

PARTY; (D) EACH DIP LENDER; (E) EACH AGENT/TRUSTEE; (F) EACH CONSENTING STAKEHOLDER; (G) EACH CONSENTING NOTEHOLDER; (H) THE COCOM; (I) THE COMMITTEE AND EACH MEMBER OF THE COMMITTEE; (J) THE CONSENTING SPONSOR ENTITIES; (K) ALL HOLDERS OF CLAIMS THAT VOTE TO ACCEPT THE PLAN; (L) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (M) ALL HOLDERS OF CLAIMS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (N) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (O) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (N); AND (P) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (O) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE LAW; *PROVIDED, HOWEVER*, THAT NO AFFILIATE OR RELATED PARTY OF A RELEASING PARTY SHALL BE A RELEASING PARTY IF SUCH AFFILIATE OR RELATED PARTY, IN ITS CAPACITY AS A HOLDER OF CREDIT AGREEMENT CLAIMS, AFFIRMATIVELY OPTS OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT IT OPTS NOT TO GRANT SUCH RELEASES.

## IMPORTANT INFORMATION REGARDING THE RELEASES:

AS A HOLDER OF THE CLAIMS IN THE VOTING CLASSES IDENTIFIED IN ITEM 1, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN IF YOU CHECK THE BOX BELOW AND SUBMIT THE OPT OUT BY THE VOTING DEADLINE.  YOU MAY ALSO VALIDLY OPT OUT OF THE RELEASES BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WITH THE BANKRUPTCY COURT PRIOR TO THE PLAN AND DISCLOSURE STATEMENT OBJECTION DEADLINE.  THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION, SUBJECT TO ANY OBLIGATION YOU MAY HAVE UNDER THE RESTRUCTURING SUPPORT AGREEMENT.  **PLEASE TAKE NOTICE THAT IF YOU VOTE IN FAVOR OF THE PLAN, YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN AND CANNOT OPT OUT OF THE RELEASES CONTAINED THEREIN.  ANY OPT OUT OF THE RELEASES CONTAINED IN THE PLAN SUBMITTED ON YOUR BEHALF WILL NOT BE COUNTED.**

YOU WILL RECEIVE THE SAME TREATMENT ON ACCOUNT OF YOUR CLAIM(S) UNDER THE PLAN REGARDLESS OF WHETHER YOU ELECT TO NOT GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.

☐     **By checking this box, the holder of the Claims identified in Item 1 elects to opt out of the Third-Party Releases.**

Article VIII.E of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement and related prepetition transactions, the Noteholder Plan Support Agreement, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of**

confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such distributions made pursuant to the Plan.  The Exculpated Parties and other parties set forth above have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Article VIII.F of the Plan establishes an injunction (the "**Injunction**"):

Except as otherwise expressly provided in the Plan, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order (including the Amended and Restated Bank Facilities), all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, and Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

**Item 3.  Certifications.**

Upon execution of this Joint Ballot, the undersigned certifies that:

a.      as of the Voting Record Date, the undersigned was the holder (or authorized signatory for a Holder) of the Claims in the Voting Class(es) as set forth in Item 1;

b.      the holder has reviewed a copy of the Disclosure Statement, the Plan, and the remainder of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.      the holder has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

d.      the holder has cast the same vote with respect to all of the holder's Claims in each particular Voting Class;

e.      the holder understands and acknowledges that if multiple Joint Ballots are submitted voting the Claims set forth in Item 1, only the last properly completed Joint Ballot voting the Claims and received by the Notice and Claims Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Joint Ballots received by the Notice and Claims Agent; and

f.      the holder understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Joint Ballot, and every obligation of the holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the holder and shall not be affected by, and shall survive, the death or incapacity of the holder.

**Item 4. Holder Information and Signature.**

Name of Holder:_____
<div align="center">(*print or type*)</div>

Signature:_____


Name of Signatory:_____
<div align="center">(*if other than Holder*)</div>

Title: _____

Address:_____

   _____

   _____

Date Completed:_____


<div align="center">

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON [NOVEMBER 1], 2022.**

</div>

**PLEASE COMPLETE AND DATE THE JOINT BALLOT AND RETURN IT PROMPTLY WITH AN ORIGINAL SIGNED COPY IN THE ENVELOPE PROVIDED, BY USING ONE OF THE ADDRESSES BELOW, OR BY VOTING ELECTRONICALLY (INSTRUCTIONS BELOW) SO THAT IT IS ACTUALLY RECEIVED BY THE NOTICE AND CLAIMS AGENT (STRETTO, INC.) BY THE VOTING DEADLINE.**

---

**By first class mail, overnight courier, or hand delivery to:**

Altera Ballot Processing
c/o Stretto, Inc.
410 Exchange, Suite 100
Irvine, CA 92602

**If you would like to coordinate hand delivery of your Ballot, please email AlteraBallots@stretto.com and provide the anticipated date and time of your delivery.**

---

**By electronic, online submission:**

Please visit https://balloting.stretto.com (the "E-Ballot Portal").  Click on the "File a Ballot" section of the website after entering your Unique E-Ballot ID# as provided below and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:**  You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot ID#:**

The Notice and Claims Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

---

<div align="center">8</div>

> Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.
>
> Creditors who cast a Ballot using the Notice and Claims Agent's online portal should NOT also submit a paper Ballot.

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT TOLL FREE AT (855) 300-3407 (US TOLL FREE) OR (949) 266-0151 (INTERNATIONAL) OR ALTERABALLOTS@STRETTO.COM.  ANY JOINT BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.**

## <u>VOTING INSTRUCTIONS</u>

1. As described in the Disclosure Statement, the Debtors are soliciting the votes of holders of Class 3, 4, and 7 Claims with respect to the Plan referred to in the Disclosure Statement.  The Plan and Disclosure Statement are included in the Solicitation Package you received with the Joint Ballot.  Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan.  **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS JOINT BALLOT.**  You may wish to seek legal advice concerning the Plan and the treatment of your Claim under the Plan.

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon holders of Claims and Interests if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims or at least two thirds in amount of Interests in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.

3. To ensure that your vote is counted, you must:  (a) complete the Joint Ballot; (b) indicate your decision either to accept or reject the Plan in Item 1 of the Joint Ballot; and (c) **<u>sign and return the Joint Ballot</u> in accordance with the instructions received so the Joint Ballot <u>is actually received by the Notice and Claims Agent by the Voting Deadline</u>  Joint Ballots will not be accepted by email, facsimile or other electronic means (other than through the Notice and Claims Agent's online portal).**

4. The time by which a Joint Ballot including your vote is **<u>actually received</u>** by the Notice and Claims Agent shall be the time used to determine whether a Joint Ballot has been submitted by the Voting Deadline.  **<u>The Voting Deadline is [November 1], 2022, at 4:00 P.M., prevailing Central Time</u>**.

5. If a Joint Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by applicable law or court order.  In all cases, holders should allow sufficient time to assure timely delivery.  No Joint Ballot should be sent to the Debtors or the Debtors' financial or legal advisors.  A Joint Ballot will not be counted unless received by the Notice and Claims Agent.

6. The holder understands and acknowledges that if multiple Joint Ballots are submitted voting the Claims set forth in Item 1, only the last properly completed Joint Ballot voting the Claims and received by the Notice and Claims Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Joint Ballots received by the Notice and Claims Agent.

7. If a holder holds a Claim or Interest, as applicable, in a Voting Class against multiple Debtors, a vote on their Joint Ballot will apply to all Debtors against whom such holder or Nominee has a Claim or Interest, as applicable, in that Voting Class.

8. If a holder simultaneously casts inconsistent duplicate Joint Ballots, with respect to the same Claim, such Joint Ballots will not be counted.

9.      The Joint Ballot does not constitute, and shall not be deemed to be:  (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim.  The Joint Ballot may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto.

10.     Please be sure to sign and date your Joint Ballot.  If you are completing the Joint Ballot on behalf of an Entity, indicate your relationship with that Entity and the capacity in which you are signing.

11.     You must vote your entire Claim in each Voting Class either to accept or reject the Plan and may not split your vote.  Accordingly, a Joint Ballot that partially rejects and partially accepts the Plan as to a particular Voting Class will not be counted as a vote to accept or reject the Plan as to that Class.

12.     Any Joint Ballot that is properly completed, executed, and timely returned to the Debtors that fails to indicate acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

13.     The following Joint Ballots will not be counted in determining the acceptance or rejection of the Plan:  (a) any Joint Ballot that is illegible or contains insufficient information to permit the identification of the holder; (b) any Joint Ballot cast by a Person or Entity that does not hold a Claim or Interest in a Class that is entitled to vote on the Plan; (c) any unsigned Joint Ballot; (d) any Joint Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; and/or (e) any Joint Ballot submitted by a party not entitled to cast a vote with respect to the Plan.

14.     If you hold Claims or Interests in more than one Class under the Plan, you may receive more than one Joint Ballot.  Each Joint Ballot votes only your Claims or Interests as indicated on that Joint Ballot.  Please complete and return each Joint Ballot you receive.

**If you have any questions regarding this Joint Ballot, or if you did not receive a copy of the Disclosure Statement or Plan, or if you need additional copies of the enclosed materials, please contact the Notice and Claims Agent at <ins>AlteraInquiries@stretto.com</ins> OR call (855) 300-3407 (US toll free) OR (949) 266-0151 (international).**

**<ins>PLEASE SUBMIT YOUR JOINT BALLOT PROMPTLY!</ins>**

## Schedule 3B

**Classes 5 and 6 Claims (Joint General Ballot)**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ALTERA INFRASTRUCTURE L.P., *et al.*,[1] | ) | Case No. 22-90130 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### JOINT BALLOT FOR ACCEPTING OR REJECTING THE DEBTORS'
### FIRST AMENDED JOINT PLAN OF REORGANIZATION AND OPT OUT OF RELEASES

- IF YOU HAVE ANY QUESTIONS REGARDING THIS JOINT BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE DEBTORS' NOTICE AND CLAIMS AGENT, STRETTO, INC. (THE "NOTICE AND CLAIMS AGENT" OR THE "SOLICITATION AGENT") AT ALTERABALLOTS@STRETTO.COM AND REFERENCE "ALTERA" IN THE SUBJECT LINE, OR CALL (855) 300-3407 OR (949) 266-0151 (INTERNATIONAL) AND REQUEST TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM.

- PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS JOINT BALLOT.  THIS JOINT BALLOT IS BEING SUBMITTED TO YOU TO SOLICIT YOUR VOTE ON THE DEBTORS' PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN).

- THIS JOINT BALLOT MUST BE **ACTUALLY RECEIVED** BY THE NOTICE AND CLAIMS AGENT BEFORE **4:00 P.M., PREVAILING CENTRAL TIME, ON [NOVEMBER 1], 2022** (THE "VOTING DEADLINE").

- IF THE COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS JOINT BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS JOINT BALLOT.

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/Altera.  The location of Debtor Altera Infrastructure L.P.'s principal place of business and the Debtors' service address in these chapter 11 cases is Altera House, Unit 3, Prospect Park, Prospect Road, Arnhall Business Park, Westhill, AB32 6FJ, United Kingdom.

PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS JOINT BALLOT RELATING TO THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF ALTERA INFRASTRUCTURE L.P. AND ITS DEBTOR AFFILIATES (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN")[2] BEFORE COMPLETING THIS JOINT BALLOT.  THIS JOINT BALLOT PERMITS YOU TO VOTE ON THE PLAN, WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION (THE "TRANSACTION") UPON THE EMERGENCE OF THE DEBTORS FROM CHAPTER 11.

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes with respect to the Plan as set forth in the *Second Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and its Debtor Affiliates* and all exhibits related thereto (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  The Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement on a conditional basis, as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on [●], 2022 (the "Disclosure Statement Order").  Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this joint ballot (the "Joint Ballot") because records indicate that you are the holder of a Claim in Class(es) 5(a)–(g) and/or 6(a)–(g) (each a "Voting Class" and collectively, the "Voting Classes") as of **[September 30], 2022** (the "Voting Record Date").  Accordingly, you may have a right to vote to accept or reject the Plan on account of those Claims.

The Disclosure Statement describes the rights and treatment for each Class.  The Disclosure Statement, the Plan, and certain other materials are also included in the packet you are receiving with this Joint Ballot (the "Solicitation Package").  This Joint Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto, including with respect to releases by holders of Claims and Interests.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.

**YOUR VOTE ON THIS JOINT BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOU HAVE SUCH A CLAIM.**

*You should carefully and thoroughly review the Disclosure Statement and Plan before you vote to accept or reject the Plan.  You may wish to seek legal advice concerning the Plan and classification and treatment of your Claim under the Plan.*

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON [NOVEMBER 1], 2022.**

**Item 1.  Voting - Complete This Section.**

| **ITEM 1**: **PRINCIPAL AMOUNT OF CLAIMS** | The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory for a holder) of Claim(s) in a Voting Class in the aggregate principal amount as of the Petition Date as set forth below (your "Claim").  You may vote to accept or reject the Plan.  You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan for each Voting Class in order to have your vote in that particular Voting Class counted.

Please note that you are voting all of your Claims in each particular Voting Class either to accept or reject the Plan.  You may not split your vote in any particular Voting Class.  If you do not indicate that you either accept or reject the Plan in each particular Voting Class by checking the applicable |

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

box(es) below, your vote in that particular Voting Class will not be counted.  If you indicate that you both accept and reject the Plan for a particular Voting Class by checking both boxes below, your vote in that particular Voting Class will not be counted.

The holder of the Claims in the Voting Classes set forth below votes to (*please check* <u>*one and only one box per applicable Voting Claim*</u>):

| Voting Class | Description | Principal Amount | Vote to Accept or Reject Plan |
|---|---|---|---|
| Class 5(a) | Credit Agreement Claims Against Subsidiary Debtors:  Knarr Facility | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 5(b) | Credit Agreement Claims Against Subsidiary Debtors:  Petrojarl I Facility | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 5(c) | Credit Agreement Claims Against Subsidiary Debtors:  Gina Krog Facility | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 5(d) | Credit Agreement Claims Against Subsidiary Debtors:  Suksan Salamander Facility | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 5(e) | Credit Agreement Claims Against Subsidiary Debtors:  Arendal Facility | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 5(f) | Credit Agreement Claims Against Subsidiary Debtors:  6x ALP Facility | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 5(g) | Credit Agreement Claims Against Subsidiary Debtors:  4x ALP Facility | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 6(a) | Credit Agreement Claims Against Altera:  Knarr Facility | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 6(b) | Credit Agreement Claims Against Altera:  Petrojarl I Facility | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |

| Voting Class | Description | Principal Amount | Vote to Accept or Reject Plan |
|---|---|---|---|
| 6(c) | Credit Agreement Claims Against Altera:  Gina Krog Facility | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br><br>☐ REJECT (VOTE AGAINST) THE PLAN |
| 6(d) | Credit Agreement Claims Against Altera:  Suksan Salamander Facility | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br><br>☐ REJECT (VOTE AGAINST) THE PLAN |
| 6(e) | Credit Agreement Claims Against Altera:  Arendal Facility | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br><br>☐ REJECT (VOTE AGAINST) THE PLAN |
| 6(f) | Credit Agreement Claims Against Altera:  6x ALP Facility | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br><br>☐ REJECT (VOTE AGAINST) THE PLAN |
| 6(g) | Credit Agreement Claims Against Altera:  4x ALP Facility | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br><br>☐ REJECT (VOTE AGAINST) THE PLAN |

**Item 2.  Important Information Regarding Releases under the Plan.**[3]

Article VIII.C of the Plan provides for a release by the Debtors (the "**Debtor Release**"):

Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed released and discharged by each and all of the Debtors, the Reorganized Debtors, and their estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Causes of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their estates that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or any other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their estates (including the management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the DIP Facility, the Prepetition Credit Agreements, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, the Amended and Restated Bank Facilities, the Chapter 11 Cases, the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Noteholder

---

[3]   The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  Please read the Plan carefully before completing this Joint Ballot.

Plan Support Agreement, the Definitive Documents, the DIP Facility, the Amended and Restated Bank Facilities, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party (other than the Debtors or the Reorganized Debtors) is hereby deemed released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Causes of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the DIP Facility, the Prepetition Credit Agreements, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, the Amended and Restated Bank Facilities, the Chapter 11 Cases, the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, the DIP Facility, the Amended and Restated Bank Facilities, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, the Restructuring Transactions, the Amended and Restated Bank Facilities, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or obligations under any guarantee granted or insurance policy issued by an export credit agency or similar entity.

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "*RELEASED PARTY*" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH OF THE DEBTORS; (B) EACH OF THE REORGANIZED DEBTORS; (C) EACH CONSENTING STAKEHOLDER; (D) EACH CONSENTING NOTEHOLDER; (E) THE COCOM AND EACH MEMBER OF THE COCOM; (F) THE COMMITTEE AND EACH MEMBER OF THE COMMITTEE; (G) EACH AGENT UNDER A CONSENTING BANK LENDERS CREDIT AGREEMENT, THE DIP AGENT, AND THE INTERMEDIATECO AGENTS/TRUSTEES; (H) EACH OF THE CONSENTING SPONSOR ENTITIES, (I) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (J); AND (J) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (J); *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT:  (X) ELECTS TO OPT OUT OF THE RELEASE CONTAINED IN THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN THE PLAN, EITHER THROUGH (I) A FORMAL OBJECTION FILED ON THE DOCKET OF THE CHAPTER 11 CASES OR (II) AN INFORMAL OBJECTION PROVIDED TO THE DEBTORS IN WRITING, INCLUDING BY ELECTRONIC MAIL, AND SUCH OBJECTION IS NOT WITHDRAWN ON THE DOCKET OF THE CHAPTER 11 CASES OR IN WRITING, INCLUDING VIA ELECTRONIC MAIL, AS APPLICABLE, BEFORE CONFIRMATION.

UNDER THE PLAN, "**_RELEASING PARTIES_**" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH COMPANY PARTY; (D) EACH DIP LENDER; (E) EACH AGENT/TRUSTEE; (F) EACH CONSENTING STAKEHOLDER; (G) EACH CONSENTING NOTEHOLDER; (H) THE COCOM; (I) THE COMMITTEE AND EACH MEMBER OF THE COMMITTEE; (J) THE CONSENTING SPONSOR ENTITIES; (K) ALL HOLDERS OF CLAIMS THAT VOTE TO ACCEPT THE PLAN; (L) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (M) ALL HOLDERS OF CLAIMS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (N) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (O) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (N); AND (P) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (O) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE LAW; _PROVIDED_, _HOWEVER_, THAT NO AFFILIATE OR RELATED PARTY OF A RELEASING PARTY SHALL BE A RELEASING PARTY IF SUCH AFFILIATE OR RELATED PARTY, IN ITS CAPACITY AS A HOLDER OF CREDIT AGREEMENT CLAIMS, AFFIRMATIVELY OPTS OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT IT OPTS NOT TO GRANT SUCH RELEASES.

## IMPORTANT INFORMATION REGARDING THE RELEASES:

AS A HOLDER OF THE CLAIMS IN THE VOTING CLASSES IDENTIFIED IN ITEM 1, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN IF YOU CHECK THE BOX BELOW AND SUBMIT THE OPT OUT BY THE VOTING DEADLINE.  YOU MAY ALSO VALIDLY OPT OUT OF THE RELEASES BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WITH THE BANKRUPTCY COURT PRIOR TO THE PLAN AND DISCLOSURE STATEMENT OBJECTION DEADLINE.  THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION, SUBJECT TO ANY OBLIGATION YOU MAY HAVE UNDER THE RESTRUCTURING SUPPORT AGREEMENT.  **PLEASE TAKE NOTICE THAT IF YOU VOTE IN FAVOR OF THE PLAN, YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN AND CANNOT OPT OUT OF THE RELEASES CONTAINED THEREIN.  ANY OPT OUT OF THE RELEASES CONTAINED IN THE PLAN SUBMITTED ON YOUR BEHALF WILL NOT BE COUNTED.**

YOU WILL RECEIVE THE SAME TREATMENT ON ACCOUNT OF YOUR CLAIM(S) UNDER THE PLAN REGARDLESS OF WHETHER YOU ELECT TO NOT GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.

☐   **By checking this box, the holder of the Claims identified in Item 1 elects to opt out of the Third-Party Releases.**

Article VIII.E of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement and related prepetition transactions, the Noteholder Plan Support Agreement, the Disclosure Statement, the Plan, or any**

Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such distributions made pursuant to the Plan.  The Exculpated Parties and other parties set forth above have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Article VIII.F of the Plan establishes an injunction (the "**Injunction**"):

Except as otherwise expressly provided in the Plan, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order (including the Amended and Restated Bank Facilities), all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, and Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

**Item 3.  Certifications.**

Upon execution of this Joint Ballot, the undersigned certifies that:

a.      as of the Voting Record Date, the undersigned was the holder (or authorized signatory for a Holder) of the Claims in the Voting Class(es) as set forth in Item 1;

b.      the holder has reviewed a copy of the Disclosure Statement, the Plan, and the remainder of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.      the holder has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

d.      the holder has cast the same vote with respect to all of the holder's Claims in each particular Voting Class;

e.      the holder understands and acknowledges that if multiple Joint Ballots are submitted voting the Claims set forth in Item 1, only the last properly completed Joint Ballot voting the Claims and received by the Notice and Claims Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Joint Ballots received by the Notice and Claims Agent; and

f.      the holder understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Joint Ballot, and every obligation of the holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the holder and shall not be affected by, and shall survive, the death or incapacity of the holder.

**Item 4.  Holder Information and Signature.**

Name of Holder:_____

*(print or type)*

Signature:_____

Name of Signatory:_____

*(if other than Holder)*

Title: _____

Address:_____

_____

_____

Date Completed:_____

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON [NOVEMBER 1], 2022.**

**PLEASE COMPLETE AND DATE THE JOINT BALLOT AND RETURN IT PROMPTLY WITH AN ORIGINAL SIGNED COPY IN THE ENVELOPE PROVIDED, BY USING ONE OF THE ADDRESSES BELOW, OR BY VOTING ELECTRONICALLY (INSTRUCTIONS BELOW) SO THAT IT IS ACTUALLY RECEIVED BY THE NOTICE AND CLAIMS AGENT (STRETTO, INC.) BY THE VOTING DEADLINE.**

---

**By first class mail, overnight courier, or hand delivery to:**

Altera Ballot Processing
c/o Stretto, Inc.
410 Exchange, Suite 100
Irvine, CA 92602

**If you would like to coordinate hand delivery of your Opt Out Form, please email AlteraBallots@stretto.com and provide the anticipated date and time of your delivery.**

---

**By electronic, online submission:**

Please visit https://balloting.stretto.com (the "E-Ballot Portal").  Click on the "File a Ballot" section of the website after entering your Unique E-Ballot ID# as provided below and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:**  You will need the following information to retrieve and submit your customized electronic Opt Out Form:

**Unique E-Ballot ID#:**

The Notice and Claims Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

---

> Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.
>
> Creditors who cast a Ballot using the Notice and Claims Agent's online portal should NOT also submit a paper Ballot.

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT TOLL FREE AT (855) 300-3407 (US TOLL FREE) OR (949) 266-0151 (INTERNATIONAL) OR ALTERABALLOTS@STRETTO.COM.  ANY JOINT BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.**

## VOTING INSTRUCTIONS

1.   As described in the Disclosure Statement, the Debtors are soliciting the votes of holders of Class 5(a)–(g) and 6(a)–(g) Claims with respect to the Plan referred to in the Disclosure Statement.  The Plan and Disclosure Statement are included in the Solicitation Package you received with the Joint Ballot.  Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan.  **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS JOINT BALLOT.**  You may wish to seek legal advice concerning the Plan and the treatment of your Claim under the Plan.

2.   The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon holders of Claims and Interests if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims or at least two thirds in amount of Interests in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.

3.   To ensure that your vote is counted, you must:  (a) complete the Joint Ballot; (b) indicate your decision either to accept or reject the Plan in Item 1 of the Joint Ballot; and (c) **sign and return the Joint Ballot in accordance with the instructions received so the Joint Ballot is actually received by the Notice and Claims Agent by the Voting Deadline**  Joint Ballots will not be accepted by email, facsimile or other electronic means (other than through the Notice and Claims Agent's online portal).

4.   The time by which a Joint Ballot including your vote is **actually received** by the Notice and Claims Agent shall be the time used to determine whether a Joint Ballot has been submitted by the Voting Deadline.  **The Voting Deadline is [November 1], 2022, at 4:00 P.M., prevailing Central Time**.

5.   If a Joint Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by applicable law or court order.  In all cases, holders should allow sufficient time to assure timely delivery.  No Joint Ballot should be sent to the Debtors or the Debtors' financial or legal advisors.  A Joint Ballot will not be counted unless received by the Notice and Claims Agent.

6.   The holder understands and acknowledges that if multiple Joint Ballots are submitted voting the Claims set forth in Item 1, only the last properly completed Joint Ballot voting the Claims and received by the Notice and Claims Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Joint Ballots received by the Notice and Claims Agent.

7.   If a holder holds a Claim or Interest, as applicable, in a Voting Class against multiple Debtors, a vote on their Joint Ballot will apply to all Debtors against whom such holder or Nominee has a Claim or Interest, as applicable, in that Voting Class.

8.   If a holder simultaneously casts inconsistent duplicate Joint Ballots, with respect to the same Claim, such Joint Ballots will not be counted.

9.      The Joint Ballot does not constitute, and shall not be deemed to be:  (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim.  The Joint Ballot may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto.

10.     Please be sure to sign and date your Joint Ballot.  If you are completing the Joint Ballot on behalf of an Entity, indicate your relationship with that Entity and the capacity in which you are signing.

11.     You must vote your entire Claim in each Voting Class either to accept or reject the Plan and may not split your vote.  Accordingly, a Joint Ballot that partially rejects and partially accepts the Plan as to a particular Voting Class will not be counted as a vote to accept or reject the Plan as to that Class.

12.     Any Joint Ballot that is properly completed, executed, and timely returned to the Debtors that fails to indicate acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

13.     The following Joint Ballots will not be counted in determining the acceptance or rejection of the Plan:  (a) any Joint Ballot that is illegible or contains insufficient information to permit the identification of the holder; (b) any Joint Ballot cast by a Person or Entity that does not hold a Claim or Interest in a Class that is entitled to vote on the Plan; (c) any unsigned Joint Ballot; (d) any Joint Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; and/or (e) any Joint Ballot submitted by a party not entitled to cast a vote with respect to the Plan.

14.     If you hold Claims or Interests in more than one Class under the Plan, you may receive more than one Joint Ballot.  Each Joint Ballot votes only your Claims or Interests as indicated on that Joint Ballot.  Please complete and return each Joint Ballot you receive.

**If you have any questions regarding this Joint Ballot, or if you did not receive a copy of the Disclosure Statement or Plan, or if you need additional copies of the enclosed materials, please contact the Notice and Claims Agent at <u>AlteraBallots@stretto.com</u> OR call (855) 300-3407 (US toll free) OR (949) 266-0151 (international).**

## <u>PLEASE SUBMIT YOUR JOINT BALLOT PROMPTLY!</u>

**<u>Schedule 3C</u>**

**Class 8 Claims (Master Ballot)**

Master Ballot for Class 8 Claims

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ALTERA INFRASTRUCTURE L.P., *et al.*,[1] | ) | Case No. 22-90130 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**MASTER BALLOT FOR ACCEPTING OR REJECTING THE DEBTORS'
FIRST AMENDED JOINT PLAN OF REORGANIZATION AND OPT OUT OF RELEASES**

**Altera Unsecured Notes Claims and Other General Unsecured Claims at Altera and Altera Finance Corp.**

- IF YOU HAVE ANY QUESTIONS REGARDING THIS JOINT BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE DEBTORS' NOTICE AND CLAIMS AGENT, STRETTO, INC. (THE "NOTICE AND CLAIMS AGENT" OR THE "SOLICITATION AGENT") AT ALTERASECURITYVOTE@STRETTO.COM AND REFERENCE "ALTERA" IN THE SUBJECT LINE, OR CALL (855) 300-3407 (US TOLL FREE) OR (949) 266-0151 (INTERNATIONAL) AND REQUEST TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM.

- PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS MASTER BALLOT. THIS BALLOT IS BEING SUBMITTED TO YOU TO SOLICIT YOUR VOTE ON THE DEBTORS' PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN).

- THIS MASTER BALLOT MUST BE **ACTUALLY RECEIVED** BY THE NOTICE AND CLAIMS AGENT BEFORE **4:00 P.M., PREVAILING CENTRAL TIME, ON [NOVEMBER 1], 2022** (THE "VOTING DEADLINE").

- IF THE COURT CONFIRMS THE PLAN, IT WILL BIND HOLDERS OF CLAIMS AND INTERESTS REGARDLESS OF WHETHER THEY HAVE VOTED.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS MASTER BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES. THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 3 OF THIS BALLOT.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/Altera. The location of Debtor Altera Infrastructure L.P.'s principal place of business and the Debtors' service address in these chapter 11 cases is Altera House, Unit 3, Prospect Park, Prospect Road, Arnhall Business Park, Westhill, AB32 6FJ, United Kingdom.

PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF ALTERA INFRASTRUCTURE L.P. AND ITS DEBTOR AFFILIATES (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN")[2] BEFORE COMPLETING THIS BALLOT.  THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN, WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION (THE "TRANSACTION") UPON THE EMERGENCE OF THE DEBTORS FROM CHAPTER 11.

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes with respect to the Plan as set forth in the *Second Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and its Debtor Affiliates* and all exhibits related thereto (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  The Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement on a conditional basis, as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on [●], 2022 (the "Disclosure Statement Order").  Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

You are receiving this master ballot (this "Master Ballot") because you are the Nominee (as defined below) of a Beneficial Holder[3] of a Claim in Class 8 (the "Voting Class") as of **[September 30], 2022** (the "Voting Record Date").

**This Master Ballot is to be used by you as a broker, bank, or other nominee; or as the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"); or as the proxy holder of a Nominee for certain Beneficial Holders' Class 8 Claims to transmit to the Notice and Claims Agent the votes of such Beneficial Holders in respect of their Class 8 Claims to accept or reject the Plan.  The CUSIP numbers (the "CUSIP") for Class 8 Claims entitled to vote and of which you are the Nominee are set forth on Exhibit A attached hereto.  THE VOTES ON THIS BALLOT FOR BENEFICIAL HOLDERS OF CLAIMS IN CLASS 8 SHALL BE APPLIED TO EACH DEBTOR AGAINST WHOM SUCH BENEFICIAL HOLDERS HAVE A CLASS 8 CLAIM.**

The Disclosure Statement describes the rights and treatment for each Class.  The Disclosure Statement, the Plan, and certain other materials (the "Solicitation Package") have been distributed under separate cover from this Master Ballot.  This Master Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto.  Once completed and returned in accordance with the attached instructions, the votes on the Plan will be counted as set forth herein.

You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

The Court may confirm the Plan and thereby bind all Beneficial Holders of Claims and Interests.  To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan, you must complete and return this Master Ballot so that the Notice and Claims Agent **actually receives** it on or before the Voting Deadline.

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON [NOVEMBER 1], 2022.**

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[3]   "Beneficial Holder" is a beneficial owner of Class 8 Claims whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the Depository Trust Company or other relevant security depository and/or the applicable indenture trustee, as of the Voting Record Date.

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

Altera Infrastructure L.P., *et al.*
Master Ballot for Class 8 Claims

**Item 1.  Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐   is a broker, bank, or other nominee for the beneficial owners of the aggregate principal amount of the Claims listed in Item 2 below, and is the record holder of such bonds; or

☐   is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee that is the registered holder of the aggregate principal amount of the Claims listed in Item 2 below; or

☐   has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a beneficial owner, that is the registered holder of the aggregate principal amount of the Claims listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan, on behalf of the beneficial owners of the Claims described in Item 2.

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

**Item 2.  Claims in the Voting Class Vote on Plan and Item 3.  Releases.**

The undersigned transmits the following votes and releases of Beneficial Holders of Claims against the Debtors in the Voting Class as set forth below and certifies that the following Beneficial Holders of the Classes of Claims, as identified by their respective customer account numbers set forth below, are Beneficial Holders of such securities as of the Voting Record Date, and have delivered to the undersigned, as Nominee, Ballots casting such votes.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table.  Please note that each Beneficial Holder must vote all of their Claims in the Voting Class either to accept or reject the Plan and may not split such vote. Any Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan in the Voting Class will not be counted.  If the Beneficial Holder has checked the box on Item 2 of the Beneficial Holder Ballot pertaining to the releases by holders of Claims, as detailed in Article VIII.D of the Plan, please place an X in the Item 3 column of the Voting Class below. The full text of Article VIII.D is duplicated in the Master Ballot Instructions.

| CUSIP AS INDICATED ON EXHIBIT A ATTACHED HERETO | | | | |
|---|---|---|---|---|
| **Your Customer Account Number for Each Beneficial Holder Who Voted in this Plan Class** | **Principal Amount Held as of the Voting Record Date** | **Item 2**<br><br>**Indicate the vote cast on the Beneficial Holder Ballot by placing an "X" in the appropriate column below.** | | **Item 3**<br><br>**If the box in Item 2 of the Beneficial Holder Ballot was completed, place an "X" in the column below.** |
| | | **Accept the Plan** | **or** / **Reject the Plan** | |
| Class 8 - Altera Unsecured Notes Claims and other General Unsecured Claims at Altera and Altera Finance Corp. | | | | |
| 1. | $ | | | |
| 2. | $ | | | |
| 3. | $ | | | |
| 4. | $ | | | |
| 5. | $ | | | |
| 6. | $ | | | |
| **TOTALS** | $ | | | |

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

Altera Infrastructure L.P., *et al.*
Master Ballot for Class 8 Claims

**Item 4.  Certification as to Transcription of Information from Item 3 of the Ballots as to Claims in Voting Classes Voted Through Other Ballots.**

The undersigned certifies that the following information is a true and accurate schedule on which the undersigned has transcribed the information, if any, provided in Item 3 of each Ballot received from a Beneficial Holder.  Please use additional sheets of paper if necessary.

| Your Customer Account Number for Each Beneficial Holder Who Completed Item 3 of the Ballots | TRANSCRIBE FROM ITEM 3 OF THE BENEFICIAL HOLDER BALLOTS: | | | |
|---|---|---|---|---|
| | Account Number of Other Claims Voted | DTC Participant Name and Number | Principal Amount of Other Claims Voted | CUSIP of Other Claims Voted |
| **Class 8 - Altera Unsecured Notes Claims and other General Unsecured Claims at Altera and Altera Finance Corp.** | | | | |
| 1. | | | $ | |
| 2. | | | $ | |
| 3. | | | $ | |
| 4. | | | $ | |
| 5. | | | $ | |
| 6. | | | $ | |
| 7. | | | $ | |
| 8. | | | $ | |
| 9. | | | $ | |
| 10. | | | $ | |

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

Altera Infrastructure L.P., *et al.*
Master Ballot for Class 8 Claims

**Item 5.  Certifications.**

Upon execution of this Master Ballot, the undersigned certifies that:

1.      it has received a copy of the Disclosure Statement, the Plan, the Ballots, and the remainder of the Solicitation Package and has delivered the same to the Beneficial Holders of the Claims in the Voting Class listed in Item 2 above or delivered materials via other customary communications used to solicit or collect votes;

2.      it has received appropriate voting instructions from each Beneficial Holder listed in Item 2 of this Master Ballot; or

3.      it is the registered Beneficial Holder of the securities being voted, or

4.      it has been authorized by each such Beneficial Holder to vote on the Plan;

5.      it has properly disclosed:  (a) the number of Beneficial Holders who completed Ballots; (b) the respective amounts of the Claims in the Voting Class as set forth in Item 2, as the case may be, by each Beneficial Holder who completed a Ballot; (c) each such Beneficial Holder's respective vote concerning the Plan; (d) each such Beneficial Holder's certification as to other Claims voted; and (e) the customer account or other identification number for each such Beneficial Holder; and

6.      it will maintain Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one year after the Effective Date and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered.

Name of Nominee:           _____
                                                  (Print or type)

DTC Participant Number:  _____

Name of Proxy Holder or Agent
for Nominee (if applicable):
                                          _____
                                                  (Print or type)

Signature:                        _____


Name of Signatory:         _____

Title:                                _____

Address:                          _____

                                          _____

                                          _____

Date Completed:              _____

Email Address:                _____

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

6

**THIS MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS 4:00 P.M., PREVAILING CENTRAL TIME, ON [NOVEMBER 1], 2022.**

**PLEASE COMPLETE AND DATE THE BALLOT AND RETURN IT PROMPTLY WITH AN ORIGINAL SIGNED COPY IN THE ENVELOPE PROVIDED, OR BY REGULAR MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO THE ADDRESS BELOW, OR BY EMAIL (INSTRUCTIONS BELOW) SO THAT IT IS ACTUALLY RECEIVED BY THE NOTICE AND CLAIMS AGENT (STRETTO, INC.) BY THE VOTING DEADLINE.**

---

**By first class mail, overnight courier, or hand delivery to:**

Altera Ballot Processing
c/o Stretto, Inc.
410 Exchange, Suite 100
Irvine, CA 92602

**If you would like to coordinate hand delivery of your Master Ballot, please email AlteraSecurityVote@stretto.com and provide the anticipated date and time of your delivery.**

---

**OR**

---

**By electronic mail:**

Submit your Master Ballot via electronic mail to AlteraSecurityVote@stretto.com with "Altera Master Ballot" in the subject line.

**IMPORTANT NOTE: For any ballot cast via electronic mail, a format of the attachment must be found in the common workplace and industry standard format (*i.e.*, industry-standard pdf file) and the received date and time in the solicitation agent's inbox will be used as a timestamp for receipt.**

Nominees that cast a Master Ballot via electronic mail should NOT also submit a paper Master Ballot.

---

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT TOLL FREE AT (855) 300-3407 OR (949) 266-0151 (INTERNATIONAL) OR ALTERASECURITYVOTE@STRETTO.COM.  ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.**

**MASTER BALLOTS WILL NOT BE ACCEPTED BY TELECOPY, FACSIMILE, OR OTHER ELECTRONIC MEANS OF TRANSMISSION (OTHER THAN BY EMAIL TO ALTERASECURITYVOTE@STRETTO.COM WITH A REFERENCE TO "ALTERA MASTER BALLOT" IN THE SUBJECT LINE OR SUBMISSION THROUGH THE NOTICE AND CLAIMS AGENT'S ONLINE PORTAL).**

**THE MASTER BALLOT SHOULD NOT BE SENT TO THE DEBTORS, THE BANKRUPTCY COURT, OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS.**

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

## **VOTING INSTRUCTIONS**

1.  As described in the Disclosure Statement, the Debtors are soliciting the votes of Beneficial Holders of Class 8 Claims with respect to the Plan referred to in the Disclosure Statement.  The Plan and Disclosure Statement are included in the Solicitation Package.  Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan.

2.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon holders of Claims and Interests if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims or at least two thirds in amount of Interests in at least one Class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.

3.  You should immediately distribute the Ballots (or other customary material used to collect votes in lieu of the Ballots) and Solicitation Package to all Beneficial Holders of Class 8 Claims and take any action required to enable each such Beneficial Holder to timely vote the Claims that it holds.  You may distribute the Solicitation Packages to Beneficial Holders, as appropriate, in accordance with your customary practices.  You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.  Any Ballot returned to you by a Beneficial Holder of a Claim shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Notice and Claims Agent, a Master Ballot that reflects the vote of such Beneficial Holders by 4:00 P.M., prevailing Central Time, on [November 1], 2022, or otherwise validate the Ballot in a manner acceptable to the Notice and Claims Agent.

    If you are transmitting the votes of any beneficial owners of Claims in Voting Classes, you may <u>either</u>:

    (a)    "Pre-validate" the individual Beneficial Holder Ballot contained in the Solicitation Package and then forward the Solicitation Package to the Beneficial Holder of the Class 8 Claim for voting within five Business Days after the receipt by such Nominee of the Solicitation Package, with the Beneficial Holder then returning the individual Beneficial Holder Ballot directly to the Notice and Claims Agent in the return envelope to be provided in the Solicitation Package.  A Nominee "pre-validates" a Beneficial Holder Ballot by signing the Ballot and including their DTC participant name and DTC participant number; indicating the account number of the Beneficial Holder and the principal amount of the Class 8 Claim held by the Nominee for such Beneficial Holder, applying a medallion guarantee stamp to the ballot to certify the principal amount of the Class 8 Claim owned by the Beneficial Holder as of the Voting Record Date and then forwarding the Ballot together with the Solicitation Package to the Beneficial Holder. The Beneficial Holder then completes the information requested on the Ballot and returns the Ballot directly to the Notice and Claims Agent.  A list of the Beneficial Holders to whom "pre-validated" Ballots were delivered should be maintained by Nominees for inspection for at least one year from the Effective Date; OR

    (b)    Within five Business Days after receipt by such Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Holder of the Class 8 Claim for voting (along with a return envelope provided by and addressed to the Nominee, if applicable), with the beneficial owner then returning the individual Beneficial Holder Ballot to the Nominee.  In such case, the Nominee will tabulate the votes of its respective Beneficial Holders on a Master Ballot that will be provided to the Nominee separately by the Notice and Claims Agent, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Notice and Claims Agent.  The Nominee should advise the Beneficial Holders to return their individual Beneficial Holder Ballots to the Nominee by a date calculated by the Nominee to allow it to prepare

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

and return the Master Ballot to the Notice and Claims Agent so that the Master Ballot is **actually received** by the Notice and Claims Agent on or before the Voting Deadline.

4.  With regard to any Ballots returned to you by a Beneficial Holder, you must:  (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Ballot; (c) transmit such Master Ballot to the Notice and Claims Agent by the Voting Deadline; and (d) retain such Ballots from Beneficial Holders, whether in hard copy or by electronic direction, in your files for a period of one year after the Effective Date.  You may be ordered to produce the Ballots to the Debtors or the Bankruptcy Court.

5.  The time by which a Ballot is **actually received** by the Notice and Claims Agent shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline.  **The Voting Deadline is [November 1], 2022, at 4:00 P.M., prevailing Central Time**.

6.  If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by applicable law or court order.  In all cases, Nominees should allow sufficient time to ensure timely delivery.  No Ballot should be sent to the Debtors or the Debtors' financial or legal advisors.  A Ballot will not be counted unless received by the Notice and Claims Agent.

7.  If multiple Master Ballots are received prior to the Voting Deadline from the same Nominee with respect to the same Ballot belonging to a Beneficial Holder of a Claim, the vote on the last properly completed Master Ballot timely received will supersede and revoke the vote of such Beneficial Holder on any earlier received Master Ballot.

8.  If a holder holds a Claim or Interest, as applicable, in a Voting Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such holder or Nominee has a Claim or Interest, as applicable, in that Voting Class.

9.  If a voter simultaneously casts inconsistent duplicate Ballots, with respect to the same Claim, such Ballots shall not be counted.

10. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto.  Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and the Debtors will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

11. The Ballot does not constitute, and shall not be deemed to be:  (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim.

12. Please be sure to sign and date your Master Ballot.  You should indicate that you are signing a Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity and, if required or requested by the Notice and Claims Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.  For the avoidance of doubt, a Ballot cast via the online balloting portal or a Master Ballot received from a Nominee by electronic mail will be deemed to contain an original signature.

13. If you are both the Nominee and the Beneficial Holder of any of the Claims in the Voting Class and you wish to vote such Claims in the Voting Class, you may return a Master Ballot for such Claims in the Voting Class and you must vote your entire Claim in the Voting Class to either to accept or reject the Plan and may not split your vote.  Accordingly, a Ballot, other than a Master Ballot with the votes of multiple holders, that partially rejects and partially accepts the Plan will not be counted.

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

14.     The following Ballots and Master Ballots shall not be counted in determining the acceptance or rejection of the Plan:  (a) any Ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder of the Claim; (b) any Ballot or Master Ballot cast by a Party that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot or Master Ballot; (d) any Ballot or Master Ballot not marked to accept or reject the Plan; and (e) any Ballot or Master Ballot submitted by any party not entitled to cast a vote with respect to the Plan.

15.     For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Creditor in a particular Class will be aggregated and treated as if such Creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided*, *however*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such Creditor held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

        <u>The following additional rules shall apply to Master Ballots:</u>

16.     Votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such entities in the Claims in the Voting Class as of the Record Date, as evidenced by the record and depository listings;

17.     Votes submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, will not be counted in excess of the record amount of the Claims in the Voting Class held by such Nominee;

18.     To the extent that conflicting votes or "overvotes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, the Notice and Claims Agent will attempt to reconcile discrepancies with the Nominee;

19.     To the extent that overvotes on a Master Ballot or pre-validated Beneficial Holder Ballots are not reconcilable prior to the preparation of the vote certification, the Notice and Claims Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Beneficial Holder Ballots that contained the overvote, but only to the extent of the Nominee's position in the relevant Claims in the Voting Classes; and

20.     For purposes of tabulating votes, each Beneficial Holder holding through a particular account will be deemed to have voted the principal amount relating to its holding in that particular account, although the Notice and Claims Agent may be asked to adjust such principal amount to reflect the Claim amount.

**Important Information Regarding Releases under the Plan**:

The Plan includes the following release provisions:[4]

Article VIII.C of the Plan provides for a release by the Debtors (the "**<u>Debtor Release</u>**"):

        **Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed released and discharged by each and all of the Debtors, the Reorganized Debtors, and their estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Causes of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, whether known or unknown, including**

---

[4]     The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Master Ballot.

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their estates that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or any other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their estates (including the management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the DIP Facility, the Prepetition Credit Agreements, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, the Amended and Restated Bank Facilities, the Chapter 11 Cases, the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, the DIP Facility, the Amended and Restated Bank Facilities, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party (other than the Debtors or the Reorganized Debtors) is hereby deemed released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Causes of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the DIP Facility, the Prepetition Credit Agreements, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, the Amended and Restated Bank Facilities, the Chapter 11 Cases, the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, the DIP Facility, the Amended and Restated Bank Facilities, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, the Restructuring Transactions, the Amended and Restated Bank Facilities, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or obligations under any guarantee granted or insurance policy issued by an export credit agency or similar entity.

CUSIPs / ISINs as indicated on Exhibit A attached hereto

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "RELEASED PARTY" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH OF THE DEBTORS; (B) EACH OF THE REORGANIZED DEBTORS; (C) EACH CONSENTING STAKEHOLDER; (D) EACH CONSENTING NOTEHOLDER; (E) THE COCOM AND EACH MEMBER OF THE COCOM; (F) THE COMMITTEE AND EACH MEMBER OF THE COMMITTEE; (G) EACH AGENT UNDER A CONSENTING BANK LENDERS CREDIT AGREEMENT, THE DIP AGENT, AND THE INTERMEDIATECO AGENTS/TRUSTEES; (H) EACH OF THE CONSENTING SPONSOR ENTITIES, (I) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (J); AND (J) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (J); *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASE CONTAINED IN THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN THE PLAN, EITHER THROUGH (I) A FORMAL OBJECTION FILED ON THE DOCKET OF THE CHAPTER 11 CASES OR (II) AN INFORMAL OBJECTION PROVIDED TO THE DEBTORS IN WRITING, INCLUDING BY ELECTRONIC MAIL, AND SUCH OBJECTION IS NOT WITHDRAWN ON THE DOCKET OF THE CHAPTER 11 CASES OR IN WRITING, INCLUDING VIA ELECTRONIC MAIL, AS APPLICABLE, BEFORE CONFIRMATION.

UNDER THE PLAN, "***RELEASING PARTIES***" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH COMPANY PARTY; (D) EACH DIP LENDER; (E) EACH AGENT/TRUSTEE; (F) EACH CONSENTING STAKEHOLDER; (G) EACH CONSENTING NOTEHOLDER; (H) THE COCOM; (I) THE COMMITTEE AND EACH MEMBER OF THE COMMITTEE; (J) THE CONSENTING SPONSOR ENTITIES; (K) ALL HOLDERS OF CLAIMS THAT VOTE TO ACCEPT THE PLAN; (L) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (M) ALL HOLDERS OF CLAIMS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (N) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (O) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (N); AND (P) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (O) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE LAW; *PROVIDED*, *HOWEVER*, THAT NO AFFILIATE OR RELATED PARTY OF A RELEASING PARTY SHALL BE A RELEASING PARTY IF SUCH AFFILIATE OR RELATED PARTY, IN ITS CAPACITY AS A HOLDER OF CREDIT AGREEMENT CLAIMS, AFFIRMATIVELY OPTS OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT IT OPTS NOT TO GRANT SUCH RELEASES.

Article VIII.E of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement and related prepetition transactions, the Noteholder Plan Support Agreement, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct or gross negligence, but in all respects such Entities shall be

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such distributions made pursuant to the Plan. The Exculpated Parties and other parties set forth above have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Article VIII.F of the Plan establishes an injunction (the "**Injunction**"):

Except as otherwise expressly provided in the Plan, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order (including the Amended and Restated Bank Facilities), all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, and Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

## PLEASE SUBMIT YOUR MASTER BALLOT PROMPTLY!

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS,**

PLEASE CONTACT THE SOLICITATION AGENT TOLL FREE AT (855) 300-3407 (US TOLL FREE) OR (949) 266-0151 (INTERNATIONAL) OR ALTERASECURITYVOTE@STRETTO.COM. ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

Altera Infrastructure L.P., *et al.*
Master Ballot for Class 8 Claims

## Exhibit A

***Please check ONLY ONE box below to indicate the CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on the Master Ballot or on a schedule thereto). If you check more than one box below, the Beneficial Holder votes submitted on this Master Ballot may be invalidated:***

| | BOND DESCRIPTION | CUSIP / ISIN |
|---|---|---|
| | **Class 8 (Altera Unsecured Notes Claims and Other General Unsecured Claims at Altera and Altera Finance Corp.)** | |
| ☐ | | |
| ☐ | | |
| ☐ | | |

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

14

## Schedule 3D

**Class 8 Claims (Beneficial Holder Ballot)**

Beneficial Holder Ballot for Class 8 Claims

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ALTERA INFRASTRUCTURE L.P., *et al.*,[1] | ) | Case No. 22-90130 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### BENEFICIAL HOLDER BALLOT FOR ACCEPTING OR REJECTING THE DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION AND OPT OUT OF RELEASES

**Altera Unsecured Notes Claims and Other General Unsecured Claims at Altera and Altera Finance Corp.**

- IF YOU HAVE ANY QUESTIONS REGARDING THIS JOINT BALLOT OR NEED ADDITIONAL COPIES OF THE SOLICITATION DOCUMENTS, PLEASE CONTACT THE DEBTORS' NOTICE AND CLAIMS AGENT, STRETTO, INC. (THE "NOTICE AND CLAIMS AGENT" OR THE "SOLICITATION AGENT") AT ALTERASECURITYVOTE@STRETTO.COM AND REFERENCE "ALTERA" IN THE SUBJECT LINE, OR CALL (855) 300-3407 (US TOLL FREE) OR (949) 266-0151 (INTERNATIONAL) AND REQUEST TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM.

- PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT. THIS BALLOT IS BEING SUBMITTED TO YOU TO SOLICIT YOUR VOTE ON THE DEBTORS' PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN). IF YOU HAVE QUESTIONS ABOUT THE VOTING PROCEDURES, PLEASE CONTACT YOUR NOMINEE.

- THIS BALLOT (OR THE MASTER BALLOT REFLECTING THE VOTE CAST ON THIS BALLOT) MUST BE **ACTUALLY RECEIVED** BY THE NOTICE AND CLAIMS AGENT BEFORE **4:00 P.M., PREVAILING CENTRAL TIME, ON [NOVEMBER 1], 2022** (THE "VOTING DEADLINE").

- IF A BENEFICIAL HOLDER[2] HOLDS CLASS 8 CLAIMS THROUGH ONE OR MORE NOMINEES,[3] SUCH BENEFICIAL HOLDER MUST IDENTIFY ALL CLASS 8 CLAIMS HELD IN ACCORDANCE WITH ITEM 3 OF THIS BALLOT, AND MUST INDICATE THE SAME VOTE TO ACCEPT OR REJECT THE PLAN ON ALL BALLOTS SUBMITTED.

- IF THE COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/Altera.  The location of Debtor Altera Infrastructure L.P.'s principal place of business and the Debtors' service address in these chapter 11 cases is Altera House, Unit 3, Prospect Park, Prospect Road, Arnhall Business Park, Westhill, AB32 6FJ, United Kingdom.

[2]   "Beneficial Holder" is a beneficial owner of Class 8 Claims whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through The Depository Trust Company and/or the applicable indenture trustee, as of the Voting Record Date.

[3]   "Nominee" means a broker, dealer, commercial bank, trust company, or other nominee who holds Class 8 Claims, or such firm's agent.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES. THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS BALLOT.

PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF ALTERA INFRASTRUCTURE L.P. AND ITS DEBTOR AFFILIATES (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN")[4] BEFORE COMPLETING THIS BALLOT. THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN, WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION (THE "TRANSACTION") UPON THE EMERGENCE OF THE DEBTORS FROM CHAPTER 11.

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes with respect to the Plan as set forth in the *Second Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and its Debtor Affiliates* and all exhibits related thereto (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). The Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement on a conditional basis, as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on **[●], 2022** (the "Disclosure Statement Order"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this ballot (the "Ballot") because records indicate that you are the holder of a Claim in Class 8 (the "Voting Class") as of **[September 30], 2022** (the "Voting Record Date"). Accordingly, you may have a right to vote to accept or reject the Plan.

The Disclosure Statement describes the rights and treatment for each Class. The Disclosure Statement, the Plan, and certain other materials are also included in the packet you are receiving with this Ballot (the "Solicitation Package"). This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto, including with respect to releases by holders of Claims and Interests. Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.

**YOUR VOTE ON THIS BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOU HAVE SUCH CLAIM(S).**

*You should carefully and thoroughly review the Disclosure Statement and Plan before you vote to accept or reject the Plan. You may wish to seek legal advice concerning the Plan and classification and treatment of your Claim under the Plan.*

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON [NOVEMBER 1], 2022.**

---

4   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

**Item 1.  Voting - Complete This Section.**

| ITEM 1: PRINCIPAL AMOUNT OF CLAIMS | The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory for a Beneficial Holder), of Claim(s) in the Voting Class as set forth below (your "Claims").  You may vote to accept or reject the Plan.  You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan for the Voting Class in order to have your vote in the Voting Class counted. Please note that you are voting all of your Claims in the Voting Class either to accept or reject the Plan.  You may not split your vote in the Voting Class.  If you do not indicate that you either accept or reject the Plan in the Voting Class by checking the applicable box below, your vote in the Voting Class will not be counted.  If you indicate that you both accept and reject the Plan for the Voting Class by checking both boxes below, your vote in the Voting Class will not be counted. The Beneficial Holder of the Claim(s) in the Voting Classes set forth below votes to (*please check one and only one box per applicable Voting Claim or Interest*): |
|---|---|

| Voting Class | Description | Amount | Vote to Accept or Reject Plan |
|---|---|---|---|
| Class 8 | Altera Unsecured Notes Claims and other General Unsecured Claims at Altera and Altera Finance Corp. | $ _____ | ☐ ACCEPT (VOTE FOR) THE PLAN ☐ REJECT (VOTE AGAINST) THE PLAN |

**Item 2.  Important Information Regarding Releases under the Plan.[5]**

Article VIII.C of the Plan provides for a release by the Debtors (the "**Debtor Release**"):

**Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed released and discharged by each and all of the Debtors, the Reorganized Debtors, and their estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Causes of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their estates that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or any other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their estates (including the management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the DIP Facility, the Prepetition Credit Agreements, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, the Amended and Restated Bank Facilities, the Chapter 11 Cases, the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, the DIP Facility, the Amended and Restated Bank Facilities, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the**

---

[5]   The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Ballot.

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

**pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Datev.**

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

> **Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party (other than the Debtors or the Reorganized Debtors) is hereby deemed released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Causes of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the DIP Facility, the Prepetition Credit Agreements, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, the Amended and Restated Bank Facilities, the Chapter 11 Cases, the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, the DIP Facility, the Amended and Restated Bank Facilities, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, the Restructuring Transactions, the Amended and Restated Bank Facilities, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or obligations under any guarantee granted or insurance policy issued by an export credit agency or similar entity.**

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "*RELEASED PARTY*" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH OF THE DEBTORS; (B) EACH OF THE REORGANIZED DEBTORS; (C) EACH CONSENTING STAKEHOLDER; (D) EACH CONSENTING NOTEHOLDER; (E) THE COCOM AND EACH MEMBER OF THE COCOM; (F) THE COMMITTEE AND EACH MEMBER OF THE COMMITTEE; (G) EACH AGENT UNDER A CONSENTING BANK LENDERS CREDIT AGREEMENT, THE DIP AGENT, AND THE INTERMEDIATECO AGENTS/TRUSTEES; (H) EACH OF THE CONSENTING SPONSOR ENTITIES, (I) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (J); AND (J) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (J); *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT:  (X) ELECTS TO OPT OUT OF THE RELEASE CONTAINED IN THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN THE PLAN, EITHER THROUGH (I) A FORMAL OBJECTION FILED ON THE DOCKET OF THE CHAPTER 11 CASES OR (II) AN INFORMAL OBJECTION PROVIDED TO THE DEBTORS IN WRITING, INCLUDING BY ELECTRONIC MAIL, AND SUCH OBJECTION IS NOT WITHDRAWN ON THE DOCKET OF THE CHAPTER 11 CASES OR IN WRITING, INCLUDING VIA ELECTRONIC MAIL, AS APPLICABLE, BEFORE CONFIRMATION.

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

UNDER THE PLAN, "***RELEASING PARTIES***" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH COMPANY PARTY; (D) EACH DIP LENDER; (E) EACH AGENT/TRUSTEE; (F) EACH CONSENTING STAKEHOLDER; (G) EACH CONSENTING NOTEHOLDER; (H) THE COCOM; (I) THE COMMITTEE AND EACH MEMBER OF THE COMMITTEE; (J) THE CONSENTING SPONSOR ENTITIES; (K) ALL HOLDERS OF CLAIMS THAT VOTE TO ACCEPT THE PLAN; (L) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (M) ALL HOLDERS OF CLAIMS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (N) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (O) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (N); AND (P) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (O) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE LAW; *PROVIDED*, *HOWEVER*, THAT NO AFFILIATE OR RELATED PARTY OF A RELEASING PARTY SHALL BE A RELEASING PARTY IF SUCH AFFILIATE OR RELATED PARTY, IN ITS CAPACITY AS A HOLDER OF CREDIT AGREEMENT CLAIMS, AFFIRMATIVELY OPTS OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT IT OPTS NOT TO GRANT SUCH RELEASES.

**<u>IMPORTANT INFORMATION REGARDING THE RELEASES:</u>**

AS A HOLDER OF THE CLAIMS IN THE VOTING CLASS IDENTIFIED IN ITEM 1, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.C OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN IF YOU CHECK THE BOX BELOW AND SUBMIT THE OPT OUT BY THE VOTING DEADLINE.  YOU MAY ALSO VALIDLY OPT OUT OF THE RELEASES BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WITH THE BANKRUPTCY COURT PRIOR TO THE PLAN AND DISCLOSURE STATEMENT OBJECTION DEADLINE. THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION, SUBJECT TO ANY OBLIGATION YOU MAY HAVE UNDER THE RESTRUCTURING SUPPORT AGREEMENT.  **PLEASE TAKE NOTICE THAT IF YOU VOTE IN FAVOR OF THE PLAN, YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN AND CANNOT OPT OUT OF THE RELEASES CONTAINED THEREIN.  ANY OPT OUT OF THE RELEASES CONTAINED IN THE PLAN SUBMITTED ON YOUR BEHALF WILL NOT BE COUNTED.**

YOU WILL RECEIVE THE SAME TREATMENT ON ACCOUNT OF YOUR CLAIM(S) UNDER THE PLAN REGARDLESS OF WHETHER YOU ELECT TO NOT GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.

☐     **By checking this box, the holder of the Claims identified in Item 1 elects to opt out of the Third-Party Releases.**

Article VIII.E of the Plan provides for an exculpation of certain parties (the "**<u>Exculpation</u>**"):

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement and related prepetition

<div align="center">5</div>

transactions, the Noteholder Plan Support Agreement, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such distributions made pursuant to the Plan.  The Exculpated Parties and other parties set forth above have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Article VIII.F of the Plan establishes an injunction (the "**Injunction**"):

Except as otherwise expressly provided in the Plan, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order (including the Amended and Restated Bank Facilities), all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, and Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

**Item 3.  Certification of Claims in the Voting Class Held in Additional Accounts.**

By completing and returning this Ballot, the Beneficial Holder of the Claims identified in Item 1 certifies that this Ballot is the only Ballot submitted for the Claims in the Voting Class identified in Item 1 owned by such Beneficial Holder as indicated in Item 1, except for the Claims identified in the following table.  **To be clear, if any Beneficial**

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

Altera Infrastructure L.P., *et al.*
Beneficial Holder Ballot for Class 8 Claims

**Holder holds Claims in a Voting Class through one or more Nominees, such Beneficial Holder must identify all Claims in the Voting Class held through its own name and/or each Nominee in the following table, and must indicate the same vote to accept or reject the Plan on all Ballots submitted.**

ONLY COMPLETE ITEM 3 IF YOU HAVE SUBMITTED OTHER BALLOTS ON ACCOUNT OF
THE SAME VOTING CLASS

| Account Number of Other Claims Voted in the Voting Class | Name of Owner or DTC Participant Name and Number[6] | Principal Amount of Other Claims Voted in the Voting Class | CUSIP of Other Claims Voted in the Voting Class |
|---|---|---|---|
| **Class 8 (Altera Unsecured Notes Claims and Other General Unsecured Claims at Altera and Altera Finance Corp.)** | | | |
| | | | |
| | | | |
| | | | |
| | | | |

---

[6] **Insert your name if the Claims in the respective Voting Class are held by you in your own name or, if held in a street name through a Nominee, insert the name of your broker or bank and their DTC Participant Number.**

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

**Item 4.  Certifications.**

Upon execution of this Ballot, the undersigned certifies that:

a.     as of the Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory for a Beneficial Holder) of the Claims in the Voting Class set forth in Item 1;

b.     the Beneficial Holder has reviewed a copy of the Disclosure Statement, the Plan, and the remainder of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.     the Beneficial Holder has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

d.     the Beneficial Holder has cast the same vote with respect to all of the Beneficial Holder's Claims in the Voting Class;

e.     the Beneficial Holder understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot or Master Ballot voting the Claim and received by the Notice and Claims Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Notice and Claims Agent;

f.     the Beneficial Holder understands and acknowledges that the Notice and Claims Agent may verify the amount of the Claims in the Voting Class set forth in Item 1 held by the Beneficial Holder as of the Voting Record Date with any Nominee through which the Beneficial Holder holds its the Claims in the Voting Classes set forth in Item 1 and by returning an executed Ballot the Beneficial Holder directs any such Nominee to provide any information or comply with any actions requested by the Notice and Claims Agent to verify the amount set forth in Item 1 hereof.  In the event of a discrepancy regarding such amount that cannot be timely reconciled without undue effort on the part of the Notice and Claims Agent, the amount shown on the records of the Nominee, if applicable, or the Debtors' records shall control; and

g.     the Beneficial Holder understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Beneficial Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Beneficial Holder and shall not be affected by, and shall survive, the death or incapacity of the Beneficial Holder.

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

**Item 5. Beneficial Holder Information and Signature.**

Name of Beneficial Holder:_____

(*print or type*)

DTC Participant Number:_____

Signature:_____

Name of Signatory:_____

(*if other than Beneficial Holder*)

Title: _____

Address:_____

_____

_____

Date Completed:_____

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON [NOVEMBER 1], 2022.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO THE NOTICE AND CLAIMS AGENT (STRETTO, INC.), PLEASE COMPLETE AND DATE THE BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED SO THAT IT IS ACTUALLY RECEIVED BY THE NOTICE AND CLAIMS AGENT BY THE VOTING DEADLINE.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE. PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE. THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE NOTICE AND CLAIMS AGENT ON OR BEFORE THE VOTING DEADLINE.**

**IF YOU HAVE ANY QUESTIONS ABOUT THIS BALLOT OR THE PLAN SOLICITATION OR YOU NEED ADDITIONAL VOTING MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT TOLL FREE AT (855) 300-3407 OR (949) 266-0151 (INTERNATIONAL). IF YOU HAVE QUESTIONS ABOUT THE VOTING PROCEDURES, PLEASE CONTACT YOUR NOMINEE. ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.**

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

## VOTING INSTRUCTIONS

1.  As described in the Disclosure Statement, the Debtors are soliciting the votes of Beneficial Holders of Class 8 Claims with respect to the Plan referred to in the Disclosure Statement. The Plan and Disclosure Statement are included in the Solicitation Package you received with the Ballot. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BENEFICIAL HOLDER BALLOT.** You may wish to seek legal advice concerning the Plan and the treatment of your Claim under the Plan.

2.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon holders of Claims and Interests if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims or at least two thirds in amount of Interests in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.

3.  To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in Item 1 of the Ballot; and (c) **sign and return the Ballot in accordance with the instructions received, so that this Ballot (if "pre-validated" by your Nominee) or a Master Ballot cast on your behalf is actually received by the Notice and Claims Agent by the Voting Deadline**. If you are returning your Ballot to the Nominee that provided you with this Ballot, your completed Ballot must be sent to your Nominee, allowing sufficient time for your Nominee to receive your Ballot, complete a Master Ballot, and transmit the Master Ballot to the Notice and Claims Agent so that it is <u>actually received</u> by the Voting Deadline. Your Nominee is authorized to disseminate Solicitation Packages and voting instructions to, and collect voting information from, Beneficial Holders according to its customary practices.

    **The Notice and Claims Agent will not accept beneficial ballots by facsimile or other electronic means (other than by email at AlteraSecurityVote@stretto.com for pre-validated beneficial ballots and Master Ballots only).** If you are directed by your Nominee to submit the Beneficial Holder Ballot to the Nominee via electronic means, such instructions to your Nominee shall have the same effect as if you had completed and returned a physical Beneficial Holder Ballot, including all certifications.

4.  The time by which a Ballot or Master Ballot including your vote is **actually received** by the Notice and Claims Agent shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline. **The Voting Deadline is [November 1], 2022, at 4:00 P.M., prevailing Central Time**.

5.  If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by applicable law or court order. In all cases, Beneficial Holders should allow sufficient time to assure timely delivery. No Ballot should be sent to the Debtors or the Debtors' financial or legal advisors. A Ballot will not be counted unless received by the Notice and Claims Agent.

6.  The Beneficial Holder understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot or Master Ballot voting the Claim and received by the Notice and Claims Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Notice and Claims Agent.

7.  If a holder holds a Claim or Interest, as applicable, in a Voting Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such holder or Nominee has a Claim or Interest, as applicable, in that Voting Class.

8.  If a Beneficial Holder simultaneously casts inconsistent duplicate Ballots, with respect to the same Claim, such Ballots will not be counted.

9.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto. Accordingly, at this time, creditors

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

Altera Infrastructure L.P., *et al.*
Beneficial Holder Ballot for Class 8 Claims

should not surrender certificates or instruments representing or evidencing their Claims, and the Debtors will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

10.     The Ballot does not constitute, and shall not be deemed to be:  (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim.

11.     Please be sure to sign and date your Ballot.  If you are completing the Ballot on behalf of an Entity, indicate your relationship with that Entity and the capacity in which you are signing.

12.     You must vote your entire Claim in the Voting Class either to accept or reject the Plan and may not split your vote.  Accordingly, a Ballot that partially rejects and partially accepts the Plan as to the Voting Class will not be counted as a vote to accept or reject the Plan as to that Class.

13.     Any Ballot that is properly completed, executed, and timely returned to the Debtors that fails to indicate acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

14.     The following Ballots will not be counted in determining the acceptance or rejection of the Plan:  (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder; (b) any Ballot cast by a Person or Entity that does not hold a Claim or Interest in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot; (d) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; and/or (e) any Ballot submitted by a party not entitled to cast a vote with respect to the Plan.

15.     If you hold Claims or Interests in more than one Class under the Plan or for different Claims within a Class you may receive more than one Ballot.  Each Ballot votes only your Claims or Interests indicated on that Ballot. Please complete and return each Ballot you receive.

16.     For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class will be aggregated and treated as if such creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided*, *however*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such Creditor held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

————————————————

**If you have any questions regarding this Ballot, or if you did not receive a copy of the Disclosure Statement or Plan, or if you need additional copies of the enclosed materials, please contact the Notice and Claims Agent at AlteraSecurityVote@stretto.com OR call (855) 300-3407 (US toll free) OR (949) 266-0151 (international).**

**<u>PLEASE SUBMIT YOUR BALLOT PROMPTLY</u>**

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

**Exhibit A**

*Please check one box below to indicate the CUSIP Number to which this Master Ballot pertains.*

| | BOND DESCRIPTION | CUSIP |
|---|---|---|
| | **Class 8 (Altera Unsecured Notes Claims and Other General Unsecured Claims at Altera and Altera Finance Corp.)** | |
| ☐ | | |
| ☐ | | |
| ☐ | | |

**<u>Schedule 3E</u>**

**Class 8 Claims (General Ballot)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ALTERA INFRASTRUCTURE L.P., *et al.*,[1] | ) | Case No. 22-90130 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**BALLOT FOR ACCEPTING OR REJECTING THE DEBTORS'**
**FIRST AMENDED JOINT PLAN OF REORGANIZATION AND OPT OUT OF RELEASES**

- IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE DEBTORS' NOTICE AND CLAIMS AGENT, STRETTO, INC. (THE "NOTICE AND CLAIMS AGENT" OR THE "SOLICITATION AGENT") AT ALTERABALLOTS@STRETTO.COM AND REFERENCE "ALTERA" IN THE SUBJECT LINE, OR CALL (855) 300-3407 OR (949) 266-0151 (INTERNATIONAL) AND REQUEST TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM.

- PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.  THIS BALLOT IS BEING SUBMITTED TO YOU TO SOLICIT YOUR VOTE ON THE DEBTORS' PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN).

- THIS BALLOT MUST BE **ACTUALLY RECEIVED** BY THE NOTICE AND CLAIMS AGENT BEFORE **4:00 P.M., PREVAILING CENTRAL TIME, ON [NOVEMBER 1], 2022** (THE "VOTING DEADLINE").

- IF THE COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS BALLOT.

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/Altera.  The location of Debtor Altera Infrastructure L.P.'s principal place of business and the Debtors' service address in these chapter 11 cases is Altera House, Unit 3, Prospect Park, Prospect Road, Arnhall Business Park, Westhill, AB32 6FJ, United Kingdom.

PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE *FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF ALTERA INFRASTRUCTURE L.P. AND ITS DEBTOR AFFILIATES* (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN")[2] BEFORE COMPLETING THIS BALLOT.  THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN, WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION (THE "TRANSACTION") UPON THE EMERGENCE OF THE DEBTORS FROM CHAPTER 11.

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes with respect to the Plan as set forth in the *Second Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and its Debtor Affiliates* and all exhibits related thereto (as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  The Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement on a conditional basis, as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on [●], 2022 (the "Disclosure Statement Order").  Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this ballot (the "Ballot") because records indicate that you are the holder of a Claim in Class 8 (the "Voting Class") as of [September 30], 2022 (the "Voting Record Date").  Accordingly, you may have a right to vote to accept or reject the Plan on account of those Claims.

The Disclosure Statement describes the rights and treatment for Class 8.  The Disclosure Statement, the Plan, and certain other materials are also included in the packet you are receiving with this Ballot (the "Solicitation Package").  This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto, including with respect to releases by holders of Claims and Interests.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.

**YOUR VOTE ON THIS BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOU HAVE SUCH A CLAIM.**

*You should carefully and thoroughly review the Disclosure Statement and Plan before you vote to accept or reject the Plan.  You may wish to seek legal advice concerning the Plan and classification and treatment of your Claim under the Plan.*

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON [NOVEMBER 1], 2022.**

**Item 1.  Voting - Complete This Section.**

| **ITEM 1**: **PRINCIPAL AMOUNT OF CLAIMS** | The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory for a holder) of Claim(s) in the Voting Class as set forth below (your "Claim").  You may vote to accept or reject the Plan.  You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan in order to have your vote in the Voting Class counted. |
|---|---|
| | Please note that you are voting all of your Claims in the Voting Class either to accept or reject the Plan.  You may not split your vote in the Voting Class.  If you do not indicate that you either accept or reject the Plan in the Voting Class by checking the applicable box below, your vote in the Voting |

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

| | Class will not be counted.  If you indicate that you both accept and reject the Plan for the Voting Class by checking both boxes below, your vote in the Voting Class will not be counted. |
| | |
| | The holder of the Claims in the Voting Class set forth below votes to (*please check <u>one and only one box per applicable Voting Claim</u>*): |

| Voting Class | Description | Amount | Vote to Accept or Reject Plan |
|---|---|---|---|
| Class 8 | General Unsecured Claims at Altera and Altera Finance Corp. | $_____<br><br>Debtor: _____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br><br>☐ REJECT (VOTE AGAINST) THE PLAN |

**Item 2.  Important Information Regarding Releases under the Plan.**[3]

Article VIII.C of the Plan provides for a release by the Debtors (the "**Debtor Release**"):

Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed released and discharged by each and all of the Debtors, the Reorganized Debtors, and their estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Causes of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their estates that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or any other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their estates (including the management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the DIP Facility, the Prepetition Credit Agreements, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, the Amended and Restated Bank Facilities, the Chapter 11 Cases, the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, the DIP Facility, the Amended and Restated Bank Facilities, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party (other than the Debtors or the Reorganized Debtors) is hereby deemed released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert

---

[3] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  Please read the Plan carefully before completing this Ballot.

any Causes of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the DIP Facility, the Prepetition Credit Agreements, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, the Amended and Restated Bank Facilities, the Chapter 11 Cases, the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, the DIP Facility, the Amended and Restated Bank Facilities, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, the Restructuring Transactions, the Amended and Restated Bank Facilities, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or obligations under any guarantee granted or insurance policy issued by an export credit agency or similar entity.

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "***RELEASED PARTY***" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH OF THE DEBTORS; (B) EACH OF THE REORGANIZED DEBTORS; (C) EACH CONSENTING STAKEHOLDER; (D) EACH CONSENTING NOTEHOLDER; (E) THE COCOM AND EACH MEMBER OF THE COCOM; (F) THE COMMITTEE AND EACH MEMBER OF THE COMMITTEE; (G) EACH AGENT UNDER A CONSENTING BANK LENDERS CREDIT AGREEMENT, THE DIP AGENT, AND THE INTERMEDIATECO AGENTS/TRUSTEES; (H) EACH OF THE CONSENTING SPONSOR ENTITIES, (I) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (J); AND (J) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (J); *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT:  (X) ELECTS TO OPT OUT OF THE RELEASE CONTAINED IN THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN THE PLAN, EITHER THROUGH (I) A FORMAL OBJECTION FILED ON THE DOCKET OF THE CHAPTER 11 CASES OR (II) AN INFORMAL OBJECTION PROVIDED TO THE DEBTORS IN WRITING, INCLUDING BY ELECTRONIC MAIL, AND SUCH OBJECTION IS NOT WITHDRAWN ON THE DOCKET OF THE CHAPTER 11 CASES OR IN WRITING, INCLUDING VIA ELECTRONIC MAIL, AS APPLICABLE, BEFORE CONFIRMATION.

UNDER THE PLAN, "***RELEASING PARTIES***" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH COMPANY PARTY; (D) EACH DIP LENDER; (E) EACH AGENT/TRUSTEE; (F) EACH CONSENTING STAKEHOLDER; (G) EACH CONSENTING NOTEHOLDER; (H) THE COCOM; (I) THE COMMITTEE AND EACH MEMBER OF THE COMMITTEE; (J) THE CONSENTING SPONSOR ENTITIES; (K) ALL HOLDERS OF CLAIMS THAT VOTE TO ACCEPT THE PLAN; (L) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (M) ALL HOLDERS OF CLAIMS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (N) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT

THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (O) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (N); AND (P) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (O) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE LAW; *PROVIDED, HOWEVER*, THAT NO AFFILIATE OR RELATED PARTY OF A RELEASING PARTY SHALL BE A RELEASING PARTY IF SUCH AFFILIATE OR RELATED PARTY, IN ITS CAPACITY AS A HOLDER OF CREDIT AGREEMENT CLAIMS, AFFIRMATIVELY OPTS OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT IT OPTS NOT TO GRANT SUCH RELEASES.

### IMPORTANT INFORMATION REGARDING THE RELEASES:

AS A HOLDER OF THE CLAIMS IN THE VOTING CLASSES IDENTIFIED IN ITEM 1, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN IF YOU CHECK THE BOX BELOW AND SUBMIT THE OPT OUT BY THE VOTING DEADLINE.  YOU MAY ALSO VALIDLY OPT OUT OF THE RELEASES BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WITH THE BANKRUPTCY COURT PRIOR TO THE PLAN AND DISCLOSURE STATEMENT OBJECTION DEADLINE.  THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION, SUBJECT TO ANY OBLIGATION YOU MAY HAVE UNDER THE RESTRUCTURING SUPPORT AGREEMENT.  **PLEASE TAKE NOTICE THAT IF YOU VOTE IN FAVOR OF THE PLAN, YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN AND CANNOT OPT OUT OF THE RELEASES CONTAINED THEREIN.  ANY OPT OUT OF THE RELEASES CONTAINED IN THE PLAN SUBMITTED ON YOUR BEHALF WILL NOT BE COUNTED.**

YOU WILL RECEIVE THE SAME TREATMENT ON ACCOUNT OF YOUR CLAIM(S) UNDER THE PLAN REGARDLESS OF WHETHER YOU ELECT TO NOT GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.

☐     **By checking this box, the holder of the Claims identified in Item 1 elects to opt out of the Third-Party Releases.**

Article VIII.E of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement and related prepetition transactions, the Noteholder Plan Support Agreement, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such distributions made pursuant to the Plan.  The Exculpated Parties and other parties set forth above have, and upon confirmation of the Plan shall be deemed to have, participated

in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Article VIII.F of the Plan establishes an injunction (the "**Injunction**"):

**Except as otherwise expressly provided in the Plan, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order (including the Amended and Restated Bank Facilities), all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.**

**No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, and Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.**

**The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.**

**Item 3.  Certifications.**

Upon execution of this Ballot, the undersigned certifies that:

a.      as of the Voting Record Date, the undersigned was the holder (or authorized signatory for a Holder) of the Claims in the Voting Class as set forth in Item 1;

b.      the holder has reviewed a copy of the Disclosure Statement, the Plan, and the remainder of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.      the holder has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

d.      the holder has cast the same vote with respect to all of the holder's Claims in the Voting Class;

e.    the holder understands and acknowledges that if multiple Ballots are submitted voting the Claims set forth in Item 1, only the last properly completed Ballot voting the Claims and received by the Notice and Claims Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Notice and Claims Agent; and

f.    the holder understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the holder and shall not be affected by, and shall survive, the death or incapacity of the holder.

**Item 4.  Holder Information and Signature.**

Name of Holder:_____

<div align="center">(<em>print or type</em>)</div>

Signature:_____

Name of Signatory:_____

<div align="center">(<em>if other than Holder</em>)</div>

Title: _____

Address:_____

_____

_____

Date Completed:_____


<div align="center"><strong>THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON [NOVEMBER 1], 2022.</strong></div>

**PLEASE COMPLETE AND DATE THE BALLOT AND RETURN IT PROMPTLY WITH AN ORIGINAL SIGNED COPY IN THE ENVELOPE PROVIDED, BY USING ONE OF THE ADDRESSES BELOW, OR BY VOTING ELECTRONICALLY (INSTRUCTIONS BELOW) SO THAT IT IS ACTUALLY RECEIVED BY THE NOTICE AND CLAIMS AGENT (STRETTO, INC.) BY THE VOTING DEADLINE.**

---

**By first class mail, overnight courier, or hand delivery to:**

Altera Ballot Processing
c/o Stretto, Inc.
410 Exchange, Suite 100
Irvine, CA 92602

**If you would like to coordinate hand delivery of your Ballot, please email AlteraBallots@stretto.com and provide the anticipated date and time of your delivery.**

---

**By electronic, online submission:**

Please visit https://balloting.stretto.com (the "E-Ballot Portal").  Click on the "File a Ballot" section of the website after entering your Unique E-Ballot ID# as provided below and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:**  You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot ID#:**

The Notice and Claims Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

---

> Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.
>
> Creditors who cast a Ballot using the Notice and Claims Agent's online portal should NOT also submit a paper Ballot.

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT TOLL FREE AT (855) 300-3407 (US TOLL FREE) OR (949) 266-0151 (INTERNATIONAL) OR ALTERABALLOTS@STRETTO.COM.  ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.**

### <u>VOTING INSTRUCTIONS</u>

1. As described in the Disclosure Statement, the Debtors are soliciting the votes of holders of Class 8 Claims with respect to the Plan referred to in the Disclosure Statement.  The Plan and Disclosure Statement are included in the Solicitation Package you received with the Ballot.  Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan.  **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**  You may wish to seek legal advice concerning the Plan and the treatment of your Claim under the Plan.

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon holders of Claims and Interests if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims or at least two thirds in amount of Interests in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.

3. To ensure that your vote is counted, you must:  (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in Item 1 of the Ballot; and (c) **<u>sign and return the Ballot</u> in accordance with the instructions received so the Ballot <u>is actually received by the Notice and Claims Agent by the Voting Deadline</u>**.  **Ballots will not be accepted by email, facsimile or other electronic means (other than through the Notice and Claims Agent's online portal).**

4. The time by which a Ballot including your vote is **<u>actually received</u>** by the Notice and Claims Agent shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline.  **The Voting Deadline is [November 1], 2022, at 4:00 P.M., prevailing Central Time**.

5. If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by applicable law or court order.  In all cases, holders should allow sufficient time to assure timely delivery.  No Ballot should be sent to the Debtors or the Debtors' financial or legal advisors.  A Ballot will not be counted unless received by the Notice and Claims Agent.

6. The holder understands and acknowledges that if multiple Ballots are submitted voting the Claims set forth in Item 1, only the last properly completed Ballot voting the Claims and received by the Notice and Claims Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Notice and Claims Agent.

7. If a holder holds a Claim, as applicable, in a Voting Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such holder or Nominee has a Claim, as applicable, in that Voting Class.

8. If a holder simultaneously casts inconsistent duplicate Ballots, with respect to the same Claim, such Ballots will not be counted.

9.      The Ballot does not constitute, and shall not be deemed to be:  (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim.  The Ballot may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto.

10.     Please be sure to sign and date your Ballot.  If you are completing the Ballot on behalf of an Entity, indicate your relationship with that Entity and the capacity in which you are signing.

11.     You must vote your entire Claim in each Voting Class either to accept or reject the Plan and may not split your vote.  Accordingly, a Ballot that partially rejects and partially accepts the Plan as to a particular Voting Class will not be counted as a vote to accept or reject the Plan as to that Class.

12.     Any Ballot that is properly completed, executed, and timely returned to the Debtors that fails to indicate acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

13.     The following Ballots will not be counted in determining the acceptance or rejection of the Plan:  (a) any Ballot that is illegible or contains insufficient information to permit the identification of the holder; (b) any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot; (d) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; and/or (e) any Ballot submitted by a party not entitled to cast a vote with respect to the Plan.

14.     If you hold Claims in more than one Class under the Plan, you may receive more than one Ballot.  Each Ballot votes only your Claims as indicated on that Ballot.  Please complete and return each Ballot you receive.

**If you have any questions regarding this Ballot, or if you did not receive a copy of the Disclosure Statement or Plan, or if you need additional copies of the enclosed materials, please contact the Notice and Claims Agent at AlteraBallots@stretto.com OR call (855) 300-3407 (US toll free) OR (949) 266-0151 (international).**

**<u>PLEASE SUBMIT YOUR BALLOT PROMPTLY!</u>**

## <u>Schedule 4</u>

**Form of Unimpaired Non-Voting Status Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ALTERA INFRASTRUCTURE L.P., *et al.*,[1] | ) | Case No. 22-90130 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF NON-VOTING STATUS AND
OPT OUT OF RELEASES TO HOLDERS OF UNIMPAIRED
CLAIMS OR INTERESTS CONCLUSIVELY PRESUMED TO ACCEPT THE PLAN**

**PLEASE TAKE NOTICE THAT** on [●], 2022, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order (the "Disclosure Statement Order"): (a) authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit votes on the *First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and Its Debtor Affiliates* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Second Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and its Debtor Affiliates* (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; and (d) and approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim under the Plan, ***you are not entitled to vote on the Plan***.  Specifically, under the terms of the Plan, as a holder of a Claim (as currently asserted against the Debtors) in the Debtors that is not Impaired and conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, you are ***not*** entitled to vote on the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan and approval of the Disclosure Statement (the "Combined Hearing") will commence on **[November [4], at 10:00 a.]m.**, prevailing Central Time, before the

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/Altera.  The location of Debtor Altera Infrastructure L.P.'s principal place of business and the Debtors' service address in these chapter 11 cases is Altera House, Unit 3, Prospect Park, Prospect Road, Arnhall Business Park, Westhill, AB32 6FJ, United Kingdom.

[2]   Capitalized terms not otherwise defined herein have the same meaning as set forth in the Plan.

Honorable Marvin Isgur, in the United States Bankruptcy Court for the Southern District of Texas, located at 515 Rusk Street, Courtroom 404, Houston, Texas 77002.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan and Disclosure Statement is **[November 1], 2022, at 4:00 p.m.,** prevailing Central Time (the "Plan and Disclosure Statement Objection Deadline"). All objections to the relief sought at the Combined Hearing *must*: (a) be in writing; (b) conform to the Bankruptcy Code, Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan or Disclosure Statement and, if practicable, a proposed modification to the Plan or Disclosure Statement that would resolve such objection; and (d) be filed with the Court on or before the Plan and Disclosure Statement Objection Deadline.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Stretto, Inc., the notice and claims agent retained by the Debtors in these chapter 11 cases (the "Notice and Claims Agent"), by: (a) emailing AlteraInquiries@stretto.com; or (b) calling the Debtors' restructuring hotline at (855) 300-3407 (US toll free) or (949) 266-0151 (international). You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at: http://www.txs.uscourts.gov.

---

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN ARTICLE VIII OF THE PLAN USING THE ENCLOSED OPT OUT FORM OR BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES. BY ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

---

Houston, Texas
[●], 2022

/s/ *Draft*
_____

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Kristhy M. Peguero (TX Bar No. 24102776)
Rebecca Blake Chaikin (S.D. Bar No. 3394311)
Victoria N. Argeroplos (TX Bar No. 24105799)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:     (713) 752-4221
Email:     mcavenaugh@jw.com
Email:     kpeguero@jw.com
Email:     rchaikin@jw.com
Email:     vargeroplos@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Brian Schartz, P.C. (TX Bar No. 24099361)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:     joshua.sussberg@kirkland.com
          brian.schartz@kirkland.com

- and -

John R. Luze (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:     john.luze@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**OPTIONAL:  RELEASE OPT OUT FORM**

You are receiving this opt out form (the "<u>Opt Out Form</u>") because you are or may be a holder of a Claim or Interest that is not entitled to vote on the *First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and Its Debtor Affiliates* (as modified, amended, or supplemented from time to time, the "<u>Plan</u>").  Holders of Claims or Interests are deemed to grant the Third-Party Release set forth in this notice unless a holder affirmatively opts out by completing and returning this form in accordance with the directions herein or files an objection to the Third-Party Release with the Bankruptcy Court on or before **[November 1], 2022, at 4:00 p.m., prevailing Central Time** (the "<u>Voting Deadline</u>").

**If you believe you are a holder of a Claim or Interest with respect to the Debtors and choose to opt out of the Third-Party Release set forth in Article VIII.D of the Plan, please promptly complete, sign, and date this Opt Out Form and return it** via first class mail, overnight courier, the Notice and Claims Agent's online E-Ballot Portal, or hand delivery to Stretto, Inc. (the "<u>Notice and Claims Agent</u>") at the address set forth below.  Holders are strongly encouraged to submit their Opt Out Form through the Notice and Claims Agent's online E-Ballot Portal.  Parties that submit their Opt Out Form using the E-Ballot Portal should NOT also submit a paper Opt Out Form.

**THIS OPT OUT FORM MUST BE ACTUALLY RECEIVED BY THE NOTICE AND CLAIMS AGENT BY THE OPT OUT DEADLINE.  IF THE OPT OUT FORM IS RECEIVED AFTER THE OPT OUT DEADLINE, IT WILL NOT BE COUNTED.**

<u>Item 1</u>.            **Important information regarding the Third Party Release.[1]**

Article VIII.D of the Plan contains the following Third-Party Release:

> Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party (other than the Debtors or the Reorganized Debtors) is hereby deemed released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Causes of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the DIP Facility, the Prepetition Credit Agreements, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, the Amended and Restated Bank Facilities, the Chapter 11 Cases, the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, the DIP Facility, the Amended and Restated Bank Facilities, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other

---

[1]     The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  Please read the Plan carefully before completing this Opt Out Form.

occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, the Restructuring Transactions, the Amended and Restated Bank Facilities, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or obligations under any guarantee granted or insurance policy issued by an export credit agency or similar entity.

<p style="text-align:center">*      *      *</p>

UNDER THE PLAN, "***RELEASED PARTY***" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH OF THE DEBTORS; (B) EACH OF THE REORGANIZED DEBTORS; (C) EACH CONSENTING STAKEHOLDER; (D) EACH CONSENTING NOTEHOLDER; (E) THE COCOM AND EACH MEMBER OF THE COCOM; (F) THE COMMITTEE AND EACH MEMBER OF THE COMMITTEE; (G) EACH AGENT UNDER A CONSENTING BANK LENDERS CREDIT AGREEMENT, THE DIP AGENT, AND THE INTERMEDIATECO AGENTS/TRUSTEES; (H) EACH OF THE CONSENTING SPONSOR ENTITIES, (I) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (J); AND (J) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (J); *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT:  (X) ELECTS TO OPT OUT OF THE RELEASE CONTAINED IN THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN THE PLAN, EITHER THROUGH (I) A FORMAL OBJECTION FILED ON THE DOCKET OF THE CHAPTER 11 CASES OR (II) AN INFORMAL OBJECTION PROVIDED TO THE DEBTORS IN WRITING, INCLUDING BY ELECTRONIC MAIL, AND SUCH OBJECTION IS NOT WITHDRAWN ON THE DOCKET OF THE CHAPTER 11 CASES OR IN WRITING, INCLUDING VIA ELECTRONIC MAIL, AS APPLICABLE, BEFORE CONFIRMATION.

UNDER THE PLAN, "***RELEASING PARTIES***" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH COMPANY PARTY; (D) EACH DIP LENDER; (E) EACH AGENT/TRUSTEE; (F) EACH CONSENTING STAKEHOLDER; (G) EACH CONSENTING NOTEHOLDER; (H) THE COCOM; (I) THE COMMITTEE AND EACH MEMBER OF THE COMMITTEE; (J) THE CONSENTING SPONSOR ENTITIES; (K) ALL HOLDERS OF CLAIMS THAT VOTE TO ACCEPT THE PLAN; (L) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (M) ALL HOLDERS OF CLAIMS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (N) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (O) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (N); AND (P) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (O) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE LAW; *PROVIDED, HOWEVER*, THAT NO AFFILIATE OR RELATED PARTY OF A RELEASING PARTY SHALL BE A RELEASING PARTY IF SUCH AFFILIATE OR RELATED PARTY, IN ITS CAPACITY AS A HOLDER OF CREDIT AGREEMENT CLAIMS, AFFIRMATIVELY OPTS OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT IT OPTS NOT TO GRANT SUCH RELEASES.

NOTWITHSTANDING THE FOREGOING, **AN ENTITY SHALL BE NEITHER A RELEASING PARTY NOR A RELEASED PARTY IF IT:  (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY FILES WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION.**

<p style="text-align:center">2</p>

<u>**IMPORTANT INFORMATION REGARDING THE RELEASES:**</u>

AS A HOLDER OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH ABOVE. YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN. YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN IF YOU CHECK THE BOX BELOW AND SUBMIT THE OPT OUT BY THE VOTING DEADLINE. YOU MAY ALSO VALIDLY OPT OUT OF THE RELEASES BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WITH THE BANKRUPTCY COURT PRIOR TO THE PLAN AND DISCLOSURE STATEMENT OBJECTION DEADLINE THAT IS NOT RESOLVED BEFORE CONFIRMATION. THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION, SUBJECT TO ANY OBLIGATION YOU MAY HAVE UNDER THE PLAN SUPPORT AGREEMENT. BY OPTING OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

YOU WILL RECEIVE THE SAME TREATMENT ON ACCOUNT OF YOUR CLAIM(S) OR INTEREST(S) UNDER THE PLAN REGARDLESS OF WHETHER YOU ELECT TO NOT GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.

<u>**OPTIONAL RELEASE ELECTION**</u>. **YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN ONLY IF YOU CHECK THE BOX BELOW:**

☐ **The Undersigned holder of the Claim or Interest elects to <u>OPT OUT</u> of <u>the Third-Party Release</u>**

<u>**Item 2.**</u>　　　　**Certifications.**

By signing this Opt Out Form, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)　　　as of the Voting Record Date, either: (i) the Entity is the holder of a Claim or Interest; or (ii) the Entity is an authorized signatory for the Entity that is a holder of a Claim or Interest;

(b)　　　the Entity (or in the case of an authorized signatory, the holder) has received a copy of the *Notice of Non-Voting Status to Holders of Unimpaired Claims or Interests Conclusively Deemed to Accept the Plan* and that this Opt Out Form is made pursuant to the terms and conditions set forth therein;

(c)　　　the Entity has submitted the same respective election concerning the releases with respect to all Claims or Interests in a single Class; and

(d)　　　no other Opt Out Form has been submitted or, if any other Opt Out Forms have been submitted with respect to such Claims or Interests, then any such earlier Opt Out Forms are hereby revoked.

Name of Holder:_____
                                    (*print or type*)

Signature:_____

Name of Signatory:_____
                                    (*if other than Holder*)

Title: _____

Address:_____

        _____

        _____

Telephone Number:_____

Email:_____

Date Completed:_____

***IF YOU HAVE MADE THE OPTIONAL OPT OUT ELECTION*, PLEASE COMPLETE, SIGN, AND DATE THIS OPT OUT FORM AND RETURN IT PROMPTLY BY ONLY ONE OF THE METHODS BELOW.**

**By first class mail, overnight courier, or hand delivery to:**

Altera Ballot Processing
c/o Stretto, Inc.
410 Exchange, Suite 100
Irvine, CA 92602

**If you would like to coordinate hand delivery of your Opt Out Form, please email AlteraBallots@stretto.com and provide the anticipated date and time of your delivery.**

**OR**

**By electronic, online submission:**

Please visit https://balloting.stretto.com (the "E-Ballot Portal").  Click on the "File a Ballot" section of the website after entering your Unique E-Ballot ID# as provided below and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:**  You will need the following information to retrieve and submit your customized electronic Opt Out Form:

**Unique E-Ballot ID#:**            _____

**The Notice and Claims Agent's E-Ballot Portal is the sole manner in which Opt Out Forms will be accepted via electronic or online transmission.  Opt Out Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.**

Parties that submit their Opt Out Form using the E-Ballot Portal should **NOT** also submit a paper Opt Out Form.

---

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON [NOVEMBER 1], 2022.**

THE NOTICE AND CLAIMS AGENT MUST ACTUALLY RECEIVE YOUR OPT OUT ELECTION ON OR BEFORE THE VOTING DEADLINE. IF YOU HAVE ANY QUESTIONS REGARDING THIS OPT OUT FORM, PLEASE CONTACT ALTERABALLOTS@STRETTO.COM FOR FURTHER ASSISTANCE.

---

**Schedule 5**

**Form of Impaired Non-Voting Status Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ALTERA INFRASTRUCTURE L.P., *et al.*,[1] | ) | Case No. 22-90130 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF NON-VOTING STATUS AND OPT OUT
### OF RELEASES TO HOLDERS OF IMPAIRED CLAIMS OR
### INTERESTS CONCLUSIVELY DEEMED TO REJECT THE PLAN

**PLEASE TAKE NOTICE THAT** on [●], 2022, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order (the "Disclosure Statement Order"): (a) authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit votes on the *First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and Its Debtor Affiliates* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Second Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and its Debtor Affiliates* (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; and (d) and approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim under the Plan, ***you are not entitled to vote on the Plan***.  Specifically, under the terms of the Plan, as a holder of a Claim (as currently asserted against the Debtors) or Interest in the Debtors that is Impaired and conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, you are ***not*** entitled to vote on the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan and approval of the Disclosure Statement (the "Combined Hearing") will commence on **[November [4], at 10:00 a.m.**, prevailing Central Time, before the

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/Altera.  The location of Debtor Altera Infrastructure L.P.'s principal place of business and the Debtors' service address in these chapter 11 cases is Altera House, Unit 3, Prospect Park, Prospect Road, Arnhall Business Park, Westhill, AB32 6FJ, United Kingdom.

[2]   Capitalized terms not otherwise defined herein have the same meaning as set forth in the Plan.

Honorable Marvin Isgur, in the United States Bankruptcy Court for the Southern District of Texas, located at 515 Rusk Street, Courtroom 404, Houston, Texas 77002.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan and Disclosure Statement is **[November 1], 2022, at 4:00 p.m.,** prevailing Central Time (the "Plan and Disclosure Statement Objection Deadline"). All objections to the relief sought at the Combined Hearing *must*: (a) be in writing; (b) conform to the Bankruptcy Code, Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan or Disclosure Statement and, if practicable, a proposed modification to the Plan or Disclosure Statement that would resolve such objection; and (d) be filed with the Court on or before the Plan and Disclosure Statement Objection Deadline.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Stretto, Inc., the notice and claims agent retained by the Debtors in these chapter 11 cases (the "Notice and Claims Agent"), by: (a) emailing AlteraInquiries@stretto.com; or (b) calling the Debtors' restructuring hotline at (855) 300-3407 (US toll free) or (949) 266-0151 (international). You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at: http://www.txs.uscourts.gov.

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN ARTICLE VIII OF THE PLAN USING THE ENCLOSED OPT OUT FORM OR BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES. BY ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

Houston, Texas
[●], 2022

/s/ *Draft*

| | |
|---|---|
| **JACKSON WALKER LLP** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Kristhy M. Peguero (TX Bar No. 24102776) | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) |
| Rebecca Blake Chaikin (S.D. Bar No. 3394311) | Brian Schartz, P.C. (TX Bar No. 24099361) |

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Kristhy M. Peguero (TX Bar No. 24102776)
Rebecca Blake Chaikin (S.D. Bar No. 3394311)
Victoria N. Argeroplos (TX Bar No. 24105799)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:     (713) 752-4221
Email:          mcavenaugh@jw.com
Email:          kpeguero@jw.com
Email:          rchaikin@jw.com
Email:          vargeroplos@jw.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Brian Schartz, P.C. (TX Bar No. 24099361)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                 brian.schartz@kirkland.com

- and -

John R. Luze (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          john.luze@kirkland.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

**OPTIONAL:  RELEASE OPT OUT FORM**

You are receiving this opt out form (the "Opt Out Form") because you are or may be a holder of a Claim or Interest that is not entitled to vote on the *First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and Its Debtor Affiliates* (as modified, amended, or supplemented from time to time, the "Plan").  Holders of Claims or Interests are deemed to grant the Third-Party Release set forth in this notice unless a holder affirmatively opts out by completing and returning this form in accordance with the directions herein or files an objection to the Third-Party Release with the Bankruptcy Court on or before **[November 1], 2022, at 4:00 p.m., prevailing Central Time** (the "Voting Deadline").

**If you believe you are a holder of a Claim or Interest with respect to the Debtors and choose to opt out of the Third-Party Release set forth in Article VIII.D of the Plan, please promptly complete, sign, and date this Opt Out Form and return it** via first class mail, overnight courier, the Notice and Claims Agent's online E-Ballot Portal, or hand delivery to Stretto, Inc. (the "Notice and Claims Agent") at the address set forth below.  Holders are strongly encouraged to submit their Opt Out Form through the Notice and Claims Agent's online E-Ballot Portal.  Parties that submit their Opt Out Form using the E-Ballot Portal should NOT also submit a paper Opt Out Form.

**THIS OPT OUT FORM MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE OPT OUT DEADLINE.  IF THE OPT OUT FORM IS RECEIVED AFTER THE OPT OUT DEADLINE, IT WILL NOT BE COUNTED.**

<u>**Item 1**</u>.              **Important information regarding the Third Party Release.**[1]

Article VIII.D of the Plan contains the following Third-Party Release:

> **Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party (other than the Debtors or the Reorganized Debtors) is hereby deemed released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Causes of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the DIP Facility, the Prepetition Credit Agreements, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, the Amended and Restated Bank Facilities, the Chapter 11 Cases, the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, the DIP Facility, the Amended and Restated Bank Facilities, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other**

---

[1]     The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  Please read the Plan carefully before completing this Opt Out Form.

occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, the Restructuring Transactions, the Amended and Restated Bank Facilities, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or obligations under any guarantee granted or insurance policy issued by an export credit agency or similar entity.

\*       \*       \*

UNDER THE PLAN, "***RELEASED PARTY***" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH OF THE DEBTORS; (B) EACH OF THE REORGANIZED DEBTORS; (C) EACH CONSENTING STAKEHOLDER; (D) EACH CONSENTING NOTEHOLDER; (E) THE COCOM AND EACH MEMBER OF THE COCOM; (F) THE COMMITTEE AND EACH MEMBER OF THE COMMITTEE; (G) EACH AGENT UNDER A CONSENTING BANK LENDERS CREDIT AGREEMENT, THE DIP AGENT, AND THE INTERMEDIATECO AGENTS/TRUSTEES; (H) EACH OF THE CONSENTING SPONSOR ENTITIES, (I) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (J); AND (J) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (J); *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT:  (X) ELECTS TO OPT OUT OF THE RELEASE CONTAINED IN THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN THE PLAN, EITHER THROUGH (I) A FORMAL OBJECTION FILED ON THE DOCKET OF THE CHAPTER 11 CASES OR (II) AN INFORMAL OBJECTION PROVIDED TO THE DEBTORS IN WRITING, INCLUDING BY ELECTRONIC MAIL, AND SUCH OBJECTION IS NOT WITHDRAWN ON THE DOCKET OF THE CHAPTER 11 CASES OR IN WRITING, INCLUDING VIA ELECTRONIC MAIL, AS APPLICABLE, BEFORE CONFIRMATION.

UNDER THE PLAN, "***RELEASING PARTIES***" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR;  (B) EACH REORGANIZED DEBTOR; (C) EACH COMPANY PARTY; (D) EACH DIP LENDER; (E) EACH AGENT/TRUSTEE; (F) EACH CONSENTING STAKEHOLDER; (G) EACH CONSENTING NOTEHOLDER; (H) THE COCOM; (I) THE COMMITTEE AND EACH MEMBER OF THE COMMITTEE; (J) THE CONSENTING SPONSOR ENTITIES; (K) ALL HOLDERS OF CLAIMS THAT VOTE TO ACCEPT THE PLAN; (L) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (M) ALL HOLDERS OF CLAIMS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (N) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (O) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (N); AND (P) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (O) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE LAW; *PROVIDED, HOWEVER*, THAT NO AFFILIATE OR RELATED PARTY OF A RELEASING PARTY SHALL BE A RELEASING PARTY IF SUCH AFFILIATE OR RELATED PARTY, IN ITS CAPACITY AS A HOLDER OF CREDIT AGREEMENT CLAIMS, AFFIRMATIVELY OPTS OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT IT OPTS NOT TO GRANT SUCH RELEASES.

NOTWITHSTANDING THE FOREGOING, **AN ENTITY SHALL BE NEITHER A RELEASING PARTY NOR A RELEASED PARTY IF IT:  (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY FILES WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION.**

2

**IMPORTANT INFORMATION REGARDING THE RELEASES:**

AS A HOLDER OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN IF YOU CHECK THE BOX BELOW AND SUBMIT THE OPT OUT BY THE VOTING DEADLINE.  YOU MAY ALSO VALIDLY OPT OUT OF THE RELEASES BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WITH THE BANKRUPTCY COURT PRIOR TO THE PLAN AND DISCLOSURE STATEMENT OBJECTION DEADLINE THAT IS NOT RESOLVED BEFORE CONFIRMATION.  THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION, SUBJECT TO ANY OBLIGATION YOU MAY HAVE UNDER THE PLAN SUPPORT AGREEMENT.  BY OPTING OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

YOU WILL RECEIVE THE SAME TREATMENT ON ACCOUNT OF YOUR CLAIM(S) OR INTEREST(S) UNDER THE PLAN REGARDLESS OF WHETHER YOU ELECT TO NOT GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.

**OPTIONAL RELEASE ELECTION**.  **YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN ONLY IF YOU CHECK THE BOX BELOW:**

☐     **The Undersigned holder of the Claim or Interest elects to OPT OUT of the Third Party Release**

**Item 2.**          **Certifications.**

By signing this Opt Out Form, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)      as of the Voting Record Date, either:  (i) the Entity is the holder of a Claim or Interest; or (ii) the Entity is an authorized signatory for the Entity that is a holder of a Claim or Interest;

(b)      the Entity (or in the case of an authorized signatory, the holder) has received a copy of the *Notice of Non-Voting Status to Holders of Impaired Claims or Interests Conclusively Deemed to Reject the Plan* and that this Opt Out Form is made pursuant to the terms and conditions set forth therein;

(c)      the Entity has submitted the same respective election concerning the releases with respect to all Claims or Interests in a single Class; and

(d)      no other Opt Out Form has been submitted or, if any other Opt Out Forms have been submitted with respect to such Claims or Interests, then any such earlier Opt Out Forms are hereby revoked.

Name of Holder:_____
*(print or type)*

Signature:_____

Name of Signatory:_____
*(if other than holder)*

Title: _____

Address:_____

_____

_____

Telephone Number:_____

Email:_____

Date Completed:_____

***IF YOU HAVE MADE THE OPTIONAL OPT OUT ELECTION*, PLEASE COMPLETE, SIGN, AND DATE THIS OPT OUT FORM AND RETURN IT PROMPTLY BY ONLY ONE OF THE METHODS BELOW.**

**By first class mail, overnight courier, or hand delivery to:**

Altera Ballot Processing
c/o Stretto, Inc.
410 Exchange, Suite 100
Irvine, CA 92602

**If you would like to coordinate hand delivery of your Opt Out Form, please email AlteraSecurityVote@stretto.com and provide the anticipated date and time of your delivery.**

**OR**

**By electronic, online submission:**

Please visit https://cases.stretto.com/altera.  Click on the "E-Ballot" section of the Debtors' website and follow the directions to submit your Opt Out Form.  If you choose to submit your Opt Out Form via Stretto's E-Ballot system, you should not also return a hard copy of your Opt Out Form

**The Notice and Claims Agent's E-Ballot Portal is the sole manner in which Opt Out Forms will be accepted via electronic or online transmission.  Opt Out Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.**

Parties that submit their Opt Out Form using the E-Ballot Portal should **NOT** also submit a paper Opt Out Form.

4

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON [NOVEMBER 1], 2022.** THE NOTICE AND CLAIMS AGENT MUST ACTUALLY RECEIVE YOUR OPT OUT ELECTION ON OR BEFORE THE VOTING DEADLINE.  IF YOU HAVE ANY QUESTIONS REGARDING THIS OPT OUT FORM, PLEASE CONTACT ALTERAINQUIRIES@STRETTO.COM FOR FURTHER ASSISTANCE.

## Schedule 6

**Form of Notice to Disputed Claim or Interest Holders**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ALTERA INFRASTRUCTURE L.P., *et al.*,[1] | ) | Case No. 22-90130 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF NON-VOTING STATUS AND OPT OUT
OF RELEASES WITH RESPECT TO DISPUTED CLAIMS AND INTERESTS**

**PLEASE TAKE NOTICE THAT** on [●], 2022, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order (the "Disclosure Statement Order"): (a) authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit votes on the *First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and Its Debtor Affiliates* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Second Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and its Debtor Affiliates* (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; and (d) and approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because you are the holder of a Claim or Interest that is subject to a pending objection by the Debtors. **You are not entitled to vote any disputed portion of your Claim or Interest on the Plan unless one or more of the following events have taken place before [October 28], 2022 (the date that is two business days before the Voting Deadline)** (each, a "Resolution Event"):

1.  an order of the Court is entered allowing such Claim or Interest pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/Altera.  The location of Debtor Altera Infrastructure L.P.'s principal place of business and the Debtors' service address in these chapter 11 cases is Altera House, Unit 3, Prospect Park, Prospect Road, Arnhall Business Park, Westhill, AB32 6FJ, United Kingdom.

[2]   Capitalized terms not otherwise defined herein have the same meaning as set forth in the Plan.

2.      an order of the Court is entered temporarily allowing such Claim or Interest for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

3.      a stipulation or other agreement is executed between the holder of such Claim or Interest and the Debtors temporarily allowing the holder of such Claim or Interest to vote its Claim or Interest in an agreed upon amount; or

4.      the pending objection to such Claim or Interest is voluntarily withdrawn by the objecting party.

Accordingly, this notice is being sent to you for informational purposes only.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Stretto, Inc., the notice and claims agent retained by the Debtors in these chapter 11 cases (the "Notice and Claims Agent"), by:  (a) emailing AlteraBallots@stretto.com; or (b) calling the Debtors' restructuring hotline at (855) 300-3407 (US toll free) or (949) 266-0151 (international). You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at:  http://www.txs.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE THAT** if a Resolution Event occurs, then no later than one business day thereafter, the Notice and Claims Agent shall distribute a Ballot, and a pre-addressed, postage pre-paid envelope to you, which must be returned to the Notice and Claims Agent no later than the Voting Deadline, which is on **[November 1, 2022] at 4:00 p.m.**, prevailing Central Time.

**PLEASE TAKE FURTHER NOTICE THAT** if you have any questions about the status of any of your Claims or Interests, you should contact the Notice and Claims Agent in accordance with the instructions provided above.

---

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE**.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN ARTICLE VIII OF THE PLAN USING THE ENCLOSED OPT OUT FORM OR BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.  BY ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

---

Houston, Texas
[●], 2022

/s/
_____

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Kristhy M. Peguero (TX Bar No. 24102776)
Rebecca Blake Chaikin (S.D. Bar No. 3394311)
Victoria N. Argeroplos (TX Bar No. 24105799)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:    (713) 752-4200
Facsimile:    (713) 752-4221
Email:    mcavenaugh@jw.com
Email:    kpeguero@jw.com
Email:    rchaikin@jw.com
Email:    vargeroplos@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Brian Schartz, P.C. (TX Bar No. 24099361)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    joshua.sussberg@kirkland.com
    brian.schartz@kirkland.com

- and -

John R. Luze (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    john.luze@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**OPTIONAL:  RELEASE OPT OUT FORM**

You are receiving this opt out form (the "Opt Out Form") because you are or may be a holder of a Claim or Interest that is not entitled to vote on the *First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and Its Debtor Affiliates* (as modified, amended, or supplemented from time to time, the "Plan").  Holders of Claims or Interests are deemed to grant the Third-Party Release set forth in this notice unless a holder affirmatively opts out by completing and returning this form in accordance with the directions herein or files an objection to the Third-Party Release with the Bankruptcy Court on or before **[November 1], 2022, at 4:00 p.m., prevailing Central Time** (the "Voting Deadline").

**If you believe you are a holder of a Claim or Interest with respect to the Debtors and choose to opt out of the Third-Party Release set forth in Article VIII.D of the Plan, please promptly complete, sign, and date this Opt Out Form and return it** via first class mail, overnight courier, the Notice and Claims Agent's online E-Ballot Portal, or hand delivery to Stretto, Inc. (the "Notice and Claims Agent") at the address set forth below.  Holders are strongly encouraged to submit their Opt Out Form through the Notice and Claims Agent's online E-Ballot Portal.  Parties that submit their Opt Out Form using the E-Ballot Portal should NOT also submit a paper Opt Out Form.

**THIS OPT OUT FORM MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE OPT OUT DEADLINE.  IF THE OPT OUT FORM IS RECEIVED AFTER THE OPT OUT DEADLINE, IT WILL NOT BE COUNTED.**

<u>Item 1</u>.              **Important information regarding the Third Party Release.[1]**

Article VIII.D of the Plan contains the following Third-Party Release:

**Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party (other than the Debtors or the Reorganized Debtors) is hereby deemed released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Causes of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the DIP Facility, the Prepetition Credit Agreements, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, the Amended and Restated Bank Facilities, the Chapter 11 Cases, the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, the DIP Facility, the Amended and Restated Bank Facilities, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other**

---

[1]     The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  Please read the Plan carefully before completing this Opt Out Form.

**occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, the Restructuring Transactions, the Amended and Restated Bank Facilities, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or obligations under any guarantee granted or insurance policy issued by an export credit agency or similar entity.**

\*          \*          \*

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "***RELEASED PARTY***" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH OF THE DEBTORS; (B) EACH OF THE REORGANIZED DEBTORS; (C) EACH CONSENTING STAKEHOLDER; (D) EACH CONSENTING NOTEHOLDER; (E) THE COCOM AND EACH MEMBER OF THE COCOM; (F) THE COMMITTEE AND EACH MEMBER OF THE COMMITTEE; (G) EACH AGENT UNDER A CONSENTING BANK LENDERS CREDIT AGREEMENT, THE DIP AGENT, AND THE INTERMEDIATECO AGENTS/TRUSTEES; (H) EACH OF THE CONSENTING SPONSOR ENTITIES, (I) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (J); AND (J) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (J); *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT:  (X) ELECTS TO OPT OUT OF THE RELEASE CONTAINED IN THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN THE PLAN, EITHER THROUGH (I) A FORMAL OBJECTION FILED ON THE DOCKET OF THE CHAPTER 11 CASES OR (II) AN INFORMAL OBJECTION PROVIDED TO THE DEBTORS IN WRITING, INCLUDING BY ELECTRONIC MAIL, AND SUCH OBJECTION IS NOT WITHDRAWN ON THE DOCKET OF THE CHAPTER 11 CASES OR IN WRITING, INCLUDING VIA ELECTRONIC MAIL, AS APPLICABLE, BEFORE CONFIRMATION.

UNDER THE PLAN, "***RELEASING PARTIES***" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH COMPANY PARTY; (D) EACH DIP LENDER; (E) EACH AGENT/TRUSTEE; (F) EACH CONSENTING STAKEHOLDER; (G) EACH CONSENTING NOTEHOLDER; (H) THE COCOM; (I) THE COMMITTEE AND EACH MEMBER OF THE COMMITTEE; (J) THE CONSENTING SPONSOR ENTITIES; (K) ALL HOLDERS OF CLAIMS THAT VOTE TO ACCEPT THE PLAN; (L) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (M) ALL HOLDERS OF CLAIMS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (N) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (O) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (N); AND (P) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (O) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE LAW; *PROVIDED, HOWEVER*, THAT NO AFFILIATE OR RELATED PARTY OF A RELEASING PARTY SHALL BE A RELEASING PARTY IF SUCH AFFILIATE OR RELATED PARTY, IN ITS CAPACITY AS A HOLDER OF CREDIT AGREEMENT CLAIMS, AFFIRMATIVELY OPTS OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT IT OPTS NOT TO GRANT SUCH RELEASES.

NOTWITHSTANDING THE FOREGOING, **AN ENTITY SHALL BE NEITHER A RELEASING PARTY NOR A RELEASED PARTY IF IT:  (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY FILES WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION.**

**IMPORTANT INFORMATION REGARDING THE RELEASES:**

AS A HOLDER OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN IF YOU CHECK THE BOX BELOW AND SUBMIT THE OPT OUT BY THE VOTING DEADLINE.  YOU MAY ALSO VALIDLY OPT OUT OF THE RELEASES BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WITH THE BANKRUPTCY COURT PRIOR TO THE PLAN AND DISCLOSURE STATEMENT OBJECTION DEADLINE THAT IS NOT RESOLVED BEFORE CONFIRMATION.  THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION, SUBJECT TO ANY OBLIGATION YOU MAY HAVE UNDER THE PLAN SUPPORT AGREEMENT.  BY OPTING OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

YOU WILL RECEIVE THE SAME TREATMENT ON ACCOUNT OF YOUR CLAIM(S) OR INTEREST(S) UNDER THE PLAN REGARDLESS OF WHETHER YOU ELECT TO NOT GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.

**OPTIONAL RELEASE ELECTION**.  **YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN ONLY IF YOU CHECK THE BOX BELOW:**

☐     **The undersigned holder of the Claim or Interest elects to OPT OUT of the Third-Party Release**

**Item 2**.        **Certifications.**

By signing this Opt Out Form, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)      as of the Voting Record Date, either:  (i) the Entity is the holder of a Claim or Interest; or (ii) the Entity is an authorized signatory for the Entity that is a holder of a Claim or Interest;

(b)      the Entity (or in the case of an authorized signatory, the holder) has received a copy of the *Notice of Non-Voting Status With Respect to Disputed Claims and Interests* and that this Opt Out Form is made pursuant to the terms and conditions set forth therein;

(c)      the Entity has submitted the same respective election concerning the releases with respect to all Claims or Interests in a single Class; and

(d)      no other Opt Out Form has been submitted or, if any other Opt Out Forms have been submitted with respect to such Claims or Interests, then any such earlier Opt Out Forms are hereby revoked.

Name of Holder:_____
(*print or type*)

Signature:_____

Name of Signatory:_____
(*if other than holder*)

Title: _____

Address: _____

_____

_____

Telephone Number: _____

Email: _____

Date Completed: _____

*IF YOU HAVE MADE THE OPTIONAL OPT OUT ELECTION*, **PLEASE COMPLETE, SIGN, AND DATE THIS OPT OUT FORM AND RETURN IT PROMPTLY BY ONLY ONE OF THE METHODS BELOW.**

**By first class mail, overnight courier, or hand delivery to:**

Altera Ballot Processing
c/o Stretto, Inc.
410 Exchange, Suite 100
Irvine, CA 92602

**If you would like to coordinate hand delivery of your Opt Out Form, please email AlteraBallots@stretto.com and provide the anticipated date and time of your delivery.**

**OR**

**By electronic, online submission:**

Please visit https://balloting.stretto.com (the "E-Ballot Portal").  Click on the "File a Ballot" section of the website after entering your Unique E-Ballot ID# as provided below and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:**  You will need the following information to retrieve and submit your customized electronic Opt Out Form:

**Unique E-Ballot ID#:**

**The Notice and Claims Agent's E-Ballot Portal is the sole manner in which Opt Out Forms will be accepted via electronic or online transmission.  Opt Out Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.**

Parties that submit their Opt Out Form using the E-Ballot Portal should **NOT** also submit a paper Opt Out Form.

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON [NOVEMBER 1], 2022.**

THE NOTICE AND CLAIMS AGENT MUST ACTUALLY RECEIVE YOUR OPT OUT ELECTION ON OR BEFORE THE VOTING DEADLINE.  IF YOU HAVE ANY QUESTIONS REGARDING THIS OPT OUT FORM, PLEASE CONTACT ALTERABALLOTS@STRETTO.COM FOR FURTHER ASSISTANCE.

**<u>Schedule 7</u>**

**Form of Cover Letter**



**[●], 2022**

Via First Class Mail

**RE**:  **In re Altera Infrastructure L.P.,** *et al.,*
       **Chapter 11 Case No. 22-90130 (MI) (Jointly Administered)**

TO ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN:

Altera Infrastructure L.P. and its affiliated debtors and debtors in possession in the above captioned cases (collectively, the "Debtors")[1] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court") on August 12, 2022.

You have received this letter and the enclosed materials because you are entitled to vote on the *First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and Its Debtor Affiliates* (as modified, amended, or supplemented from time to time, the "Plan").[2]  On [●], 2022, the Court entered an order (the "Disclosure Statement Order"): (a) authorizing the Debtors to solicit acceptances for the Plan; (b) conditionally approving the *Second Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and Its Debtor Affiliates* (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/Altera.  The location of Debtor Altera Infrastructure L.P.'s principal place of business and the Debtors' service address in these chapter 11 cases is Altera House, Unit 3, Prospect Park, Prospect Road, Arnhall Business Park, Westhill, AB32 6FJ, United Kingdom.

[2]    Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan.

YOU ARE RECEIVING THIS LETTER BECAUSE YOU ARE ENTITLED TO VOTE ON THE PLAN.  THEREFORE, YOU SHOULD READ THIS LETTER CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY.  IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.

In addition to this cover letter, the enclosed materials comprise your Solicitation Package, and were approved by the Court for distribution to holders of Claims in connection with the solicitation of votes to accept or reject the Plan.  The Solicitation Package consists of the following:

    a.   a copy of the Solicitation and Voting Procedures (annexed to the Disclosure Statement Order as Schedule 2);

    b.   a Ballot (including, for the avoidance of doubt, Master Ballots and Beneficial Ballots, as applicable), together with detailed voting instructions and a pre-addressed, postage prepaid return envelope;

    c.   this letter;

    d.   the Disclosure Statement, as conditionally approved by the Bankruptcy Court (and exhibits thereto, including the Plan);

    e.   the Disclosure Statement Order (excluding the exhibits thereto, except the Solicitation and Voting Procedures);

    f.   the notice of the hearing to consider confirmation of the Plan and Disclosure Statement; and

    g.   such other materials as the Court may direct.

Altera Infrastructure L.P. (on behalf of itself and each of the other Debtors) has approved the filing of the Plan and the solicitation of votes to accept or reject the Plan.  The Debtors believe that the acceptance of the Plan is in the best interests of their estates and all other parties in interest. Moreover, the Debtors believe that any alternative other than Confirmation of the Plan could result in extensive delays and increased administrative expenses, which, in turn, likely would result in smaller distributions (or no distributions) or recoveries on account of Claims asserted in these chapter 11 cases.

THE DEBTORS STRONGLY URGE YOU TO PROPERLY AND TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE PLAN.  THE VOTING DEADLINE IS [4:00 P.M.], PREVAILING CENTRAL TIME, ON [NOVEMBER 1], 2022.

The materials in the Solicitation Package are intended to be self-explanatory.  If you should have any questions, however, please feel free to contact Stretto, Inc., the notice and claims agent retained by the Debtors in these chapter 11 cases (the "Notice and Claims Agent"), by:  (a) emailing AlteraBallots@stretto.com; or (b) calling the Debtors' restructuring hotline at (855) 300-3407 (US toll free) or (949) 266-0151 (international).  Stretto, Inc. cannot and will not provide legal advice.  If you need legal advice, you should consult an attorney.

Copies of certain orders, notices, and pleadings, as well as other information regarding these chapter 11 cases, are available for inspection free of charge on the Debtors' website at http://cases.stretto.com/Altera.  You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at:  http://www.txs.uscourts.gov.

Sincerely,

/s/

[NAME]
[TITLE]
Altera Infrastructure L.P.

3

**<u>Schedule 8</u>**

**Form of Combined Hearing Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) ) | Chapter 11 |
| ALTERA INFRASTRUCTURE L.P., *et al.*,[1] | ) ) ) | Case No. 22-90130 (MI) |
| Debtors. | ) ) ) | (Jointly Administered) |

**NOTICE OF HEARING TO CONSIDER (I) THE
ADEQUACY OF THE SECOND AMENDED DISCLOSURE STATEMENT
AND (II) CONFIRMATION OF THE FIRST AMENDED JOINT CHAPTER 11 PLAN
FILED BY THE DEBTORS AND RELATED VOTING AND OBJECTION DEADLINES**

**PLEASE TAKE NOTICE THAT** on [●], 2022, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order (the "Disclosure Statement Order"): (a) authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit votes on the *First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and Its Debtor Affiliates* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Second Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and its Debtor Affiliates* (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; (d) and approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider the adequacy of the Disclosure Statement and Confirmation of the Plan (the "Combined Hearing") will commence on **[November [4]], at [10:00]a.m.,** prevailing Central Time, before the Honorable Marvin Isgur, in the United States Bankruptcy Court for the Southern District of Texas, located at 515 Rusk Street, Courtroom 404, Houston, Texas 77002.

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/Altera.  The location of Debtor Altera Infrastructure L.P.'s principal place of business and the Debtors' service address in these chapter 11 cases is Altera House, Unit 3, Prospect Park, Prospect Road, Arnhall Business Park, Westhill, AB32 6FJ, United Kingdom.

[2]  Capitalized terms not otherwise defined herein have the same meaning as set forth in the Plan.

**PLEASE BE ADVISED**:  THE COMBINED HEARING MAY BE CONTINUED FROM TIME TO TIME BY THE COURT OR THE DEBTORS **WITHOUT FURTHER NOTICE** OTHER THAN BY SUCH ADJOURNMENT BEING ANNOUNCED IN OPEN COURT OR BY A NOTICE OF ADJOURNMENT FILED WITH THE COURT AND SERVED ON ALL PARTIES ENTITLED TO NOTICE.

## CRITICAL INFORMATION REGARDING VOTING ON THE PLAN

**Voting Record Date**.  The voting record date was **September 30, 2022**, which was the date for determining which holders of Claims in Classes 3, 4, 5(a)–(g), 6(a)–(g), 7, and 8, as applicable, are entitled to vote on the Plan.

**Voting Deadline**.   The deadline for voting on the Plan is **[November 1], 2022 at 4:00 p.m.,** prevailing Central Time (the "Voting Deadline").  If you received a Solicitation Package, including a Ballot and intend to vote on the Plan you ***must***:  (a) follow the instructions carefully; (b) complete ***all*** of the required information on the ballot; and (c) execute and return your completed Ballot according to and as set forth in detail in the voting instructions so that it is ***actually received*** by the Debtors' notice and claims agent, Stretto, Inc. (the "Notice and Claims Agent") on or before the Voting Deadline.  ***A failure to follow such instructions may disqualify your vote***.

## CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE**.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**Plan and Disclosure Statement Objection Deadline**.  The deadline for filing objections to the Plan or Disclosure Statement, as applicable, is **[November 1, 2022, at 4:00 p].m.,** prevailing Central Time (the "Plan and Disclusre Statement Objection Deadline").  All objections to the relief sought at the Combined Hearing ***must***:  (a) be in writing; (b) conform to the Bankruptcy Code, Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan or Disclosure Statement and, if practicable, a proposed modification to the Plan or Disclosure Statement that would resolve such objection; and (d) be filed with the Court on or before the Plan and Disclosure Statement Objection Deadline.

Please be advised that **Article VIII of the Plan contains the following release, exculpation, and injunction provisions:**[3]

Article VIII.C of the Plan provides for a release by the Debtors (the "<u>Debtor Release</u>"):

**Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed released and discharged by each and all of the Debtors, the Reorganized Debtors, and their estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Causes of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their estates that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or any other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their estates (including the management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the DIP Facility, the Prepetition Credit Agreements, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, the Amended and Restated Bank Facilities, the Chapter 11 Cases, the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, the DIP Facility, the Amended and Restated Bank Facilities, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "<u>Third-Party Release</u>"):

**Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each**

---

[3]   The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

Released Party (other than the Debtors or the Reorganized Debtors) is hereby deemed released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Causes of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the DIP Facility, the Prepetition Credit Agreements, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, the Amended and Restated Bank Facilities, the Chapter 11 Cases, the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Noteholder Plan Support Agreement, the Definitive Documents, the DIP Facility, the Amended and Restated Bank Facilities, the IntermediateCo Revolving Credit Facility, the IntermediateCo Notes Indenture, or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, the Restructuring Transactions, the Amended and Restated Bank Facilities, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or obligations under any guarantee granted or insurance policy issued by an export credit agency or similar entity.

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "***RELEASED PARTY***" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH OF THE DEBTORS; (B) EACH OF THE REORGANIZED DEBTORS; (C) EACH CONSENTING STAKEHOLDER; (D) EACH CONSENTING NOTEHOLDER; (E) THE COCOM AND EACH MEMBER OF THE COCOM; (F) THE COMMITTEE AND EACH MEMBER OF THE COMMITTEE; (G) EACH AGENT UNDER A CONSENTING BANK LENDERS CREDIT AGREEMENT, THE DIP AGENT, AND THE INTERMEDIATECO AGENTS/TRUSTEES; (H) EACH OF THE CONSENTING SPONSOR ENTITIES, (I) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (J); AND (J) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (J); *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT:

(X) ELECTS TO OPT OUT OF THE RELEASE CONTAINED IN THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN THE PLAN, EITHER THROUGH (I) A FORMAL OBJECTION FILED ON THE DOCKET OF THE CHAPTER 11 CASES OR (II) AN INFORMAL OBJECTION PROVIDED TO THE DEBTORS IN WRITING, INCLUDING BY ELECTRONIC MAIL, AND SUCH OBJECTION IS NOT WITHDRAWN ON THE DOCKET OF THE CHAPTER 11 CASES OR IN WRITING, INCLUDING VIA ELECTRONIC MAIL, AS APPLICABLE, BEFORE CONFIRMATION.

UNDER THE PLAN, "***RELEASING PARTIES***" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH COMPANY PARTY; (D) EACH DIP LENDER; (E) EACH AGENT/TRUSTEE; (F) EACH CONSENTING STAKEHOLDER; (G) EACH CONSENTING NOTEHOLDER; (H) THE COCOM; (I) THE COMMITTEE AND EACH MEMBER OF THE COMMITTEE; (J) THE CONSENTING SPONSOR ENTITIES; (K) ALL HOLDERS OF CLAIMS THAT VOTE TO ACCEPT THE PLAN; (L) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (M) ALL HOLDERS OF CLAIMS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (N) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (O) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (N); AND (P) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (O) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE LAW; *PROVIDED*, *HOWEVER*, THAT NO AFFILIATE OR RELATED PARTY OF A RELEASING PARTY SHALL BE A RELEASING PARTY IF SUCH AFFILIATE OR RELATED PARTY, IN ITS CAPACITY AS A HOLDER OF CREDIT AGREEMENT CLAIMS, AFFIRMATIVELY OPTS OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT IT OPTS NOT TO GRANT SUCH RELEASES.

Article VIII.E of the Plan provides for an exculpation of certain parties (the "Exculpation"):

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement and related prepetition transactions, the Noteholder Plan Support Agreement, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or**

entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such distributions made pursuant to the Plan.  The Exculpated Parties and other parties set forth above have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Article VIII.F of the Plan establishes an injunction (the "Injunction"):

Except as otherwise expressly provided in the Plan, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order (including the Amended and Restated Bank Facilities), all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released

Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to **Error! Reference source not found.**, **Error! Reference source not found.**, and **Error! Reference source not found.** hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

## ADDITIONAL INFORMATION

**Obtaining Solicitation Materials**.  The materials in the Solicitation Package are intended to be self-explanatory.  If you should have any questions or if you would like to obtain additional solicitation materials (or paper copies of solicitation materials if you received a flash drive), please feel free to contact the Debtors' Notice and Claims Agent, by: (a) emailing AlteraInquiries@stretto.com; or (b) calling the Debtors' restructuring hotline at (855) 300-3407 (US toll free) or (949) 266-0151 (international).  You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at:  http://www.txs.uscourts.gov.

Please be advised that the Notice and Claims Agent is authorized to answer questions about, and provide additional copies of, solicitation materials, but may ***not*** advise you as to whether you should vote to accept or reject the Plan.

**The Plan Supplement**.  The Debtors will file the Plan Supplement (as defined in the Plan) at least seven days prior to the Voting Deadline, and will serve notice on all holders of Claims and Interests entitled to vote on the Plan, which will:  (a) inform parties that the Debtors filed the Plan Supplement; (b) list the information contained in the Plan Supplement; and (c) explain how parties may obtain copies of the Plan Supplement.

<div style="border:1px solid">

**BINDING NATURE OF THE PLAN**:

**IF CONFIRMED, THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS OR INTERESTS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, HAS FILED A PROOF OF CLAIM OR INTEREST IN THESE CHAPTER 11 CASES, OR FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.**

</div>

Houston, Texas
[●], 2022

/s/
_____

**JACKSON WALKER LLP**

Matthew D. Cavenaugh (TX Bar No. 24062656)

Kristhy M. Peguero (TX Bar No. 24102776)

Rebecca Blake Chaikin (S.D. Bar No. 3394311)

Victoria N. Argeroplos (TX Bar No. 24105799)

1401 McKinney Street, Suite 1900

Houston, Texas 77010

Telephone:      (713) 752-4200

Facsimile:      (713) 752-4221

Email:          mcavenaugh@jw.com

Email:          kpeguero@jw.com

Email:          rchaikin@jw.com

Email:          vargeroplos@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**

**KIRKLAND & ELLIS INTERNATIONAL LLP**

Joshua A. Sussberg, P.C. (admitted *pro hac vice*)

Brian Schartz, P.C. (TX Bar No. 24099361)

601 Lexington Avenue

New York, New York 10022

Telephone:      (212) 446-4800

Facsimile:      (212) 446-4900

Email:          joshua.sussberg@kirkland.com
                brian.schartz@kirkland.com

- and -

John R. Luze (admitted *pro hac vice*)

300 North LaSalle

Chicago, Illinois 60654

Telephone:      (312) 862-2000

Facsimile:      (312) 862-2200

Email:          john.luze@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

## Schedule 9

**Form of Plan Supplement Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ALTERA INFRASTRUCTURE L.P., *et al.*,[1] | ) | Case No. 22-90130 (MI) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## NOTICE OF FILING OF PLAN SUPPLEMENT

**PLEASE TAKE NOTICE THAT** on [●], 2022, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order (the "Disclosure Statement Order"): (a) authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit votes on the *First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and Its Debtor Affiliates* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Second Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and its Debtor Affiliates* (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** as contemplated by the Plan and the Disclosure Statement Order, the Debtors filed the Plan Supplement with the Court on [●], 2022 [Docket No. [●]].  The Plan Supplement, as defined in the Plan, means the compilation of documents and forms of documents, term sheets, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed prior to the Confirmation Hearing to the extent available, and any additional documents Filed prior to the Effective Date as amendments to the Plan Supplement, including the following, as applicable: (a) the New Organizational Documents; (b) to the extent known, the identities of the members of the New Board; (c) the Assumed Executory Contracts and Unexpired Leases Schedule; (d) the Rejected Executory Contracts and Unexpired Leases Schedule; (e) the New Warrant Agreements; (f) the Schedule of Retained Causes of Action; (g) the definitive documentation related to the Management Incentive Plan; (h) the Bank Term Sheet; (i) the

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/Altera.  The location of Debtor Altera Infrastructure L.P.'s principal place of business and the Debtors' service address in these chapter 11 cases is Altera House, Unit 3, Prospect Park, Prospect Road, Arnhall Business Park, Westhill, AB32 6FJ, United Kingdom.

[2]   Capitalized terms not otherwise defined herein have the same meaning as set forth in the Plan.

Restructuring Transactions Memorandum; (j) the Rights Offering Procedures and other documents or forms necessary to implement the Rights Offering; and (k) the Equinor Contract.  The Debtors shall have the right to alter, amend, modify, or supplement the documents contained in the Plan Supplement up to the Effective Date as set forth in this Plan and in accordance with the Restructuring Support Agreement and the Noteholder Plan Support Agreement (and subject to the applicable consent rights thereunder).

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan and approval of the Disclosure Statement (the "Combined Hearing") will commence on **[November [4], 2022], at [10:00] a.m.**, prevailing Central Time, before the Honorable Marvin Isgur, in the United States Bankruptcy Court for the Southern District of Texas, located at 515 Rusk Street, Courtroom 404, Houston, Texas 77002.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **[November 1] 2022, at 4:00 p.m.**, prevailing Central Time (the "Plan and Disclosure Statement Objection Deadline").  Any objection to the Plan or Disclosure Statement *must*:  (a) be in writing; (b) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan or Disclosure Statement and, if practicable, a proposed modification to the Plan or Disclosure Statement that would resolve such objection; and (d) be filed with the Court on or before the Plan and Disclosure Statement Objection Deadline.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Stretto, Inc., the notice and claims agent retained by the Debtors in these chapter 11 cases (the "Notice and Claims Agent"), by:  (a) emailing AlteraInquiries@stretto.com; or (b) calling the Debtors' restructuring hotline at (855) 300-3407 (US toll free) or (949) 266-0151 (international). You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at:  http://www.txs.uscourts.gov.

---

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE**.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE NOTICE AND CLAIMS AGENT.**

---

Houston, Texas
[●], 2022

/s/
_____

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Kristhy M. Peguero (TX Bar No. 24102776)
Rebecca Blake Chaikin (S.D. Bar No. 3394311)
Victoria N. Argeroplos (TX Bar No. 24105799)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:     (713) 752-4221
Email:         mcavenaugh@jw.com
Email:         kpeguero@jw.com
Email:         rchaikin@jw.com
Email:         vargeroplos@jw.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Brian Schartz, P.C. (TX Bar No. 24099361)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         joshua.sussberg@kirkland.com
               brian.schartz@kirkland.com

- and -

John R. Luze (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         john.luze@kirkland.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

**Schedule 10**

**Form of Notice of Assumption of Executory Contracts and Unexpired Leases**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ALTERA INFRASTRUCTURE L.P., *et al.*,[1] | ) Case No. 22-90130 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE OF (A) EXECUTORY CONTRACTS**
**AND UNEXPIRED LEASES TO BE ASSUMED BY THE**
**DEBTORS PURSUANT TO THE PLAN, (B) CURE AMOUNTS,**
**IF ANY, AND (C) RELATED PROCEDURES IN CONNECTION THEREWITH**

        **PLEASE TAKE NOTICE THAT** on [●], 2022, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order (the "Disclosure Statement Order"): (a) authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit votes on the *First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and Its Debtor Affiliates* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Second Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and its Debtor Affiliates* (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

        **PLEASE TAKE FURTHER NOTICE THAT** the Debtors filed the *Assumed Executory Contract and Unexpired Lease Schedule* [Docket No. [●]] (the "Assumption Schedule") with the Court as part of the Plan Supplement on [●], 2022 as contemplated under the Plan.  The Debtors' determination to assume the agreements identified on the Assumption Schedule is subject to ongoing review, revision, and further negotiation among the Debtors and interested parties with respect thereto.

        **PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan and the Disclosure Statement (the "Combined Hearing") will commence on [**November 4, 2022, at 10:00 a].m.**, prevailing Central Time, before the Honorable

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/Altera.  The location of Debtor Altera Infrastructure L.P.'s principal place of business and the Debtors' service address in these chapter 11 cases is Altera House, Unit 3, Prospect Park, Prospect Road, Arnhall Business Park, Westhill, AB32 6FJ, United Kingdom.

[2]   Capitalized terms not otherwise defined herein have the same meaning as set forth in the Plan.

Marvin Isgur, in the United States Bankruptcy Court for the Southern District of Texas, located at 515 Rusk Street, Courtroom 404, Houston, Texas, 77002.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because the Debtors' records reflect that you are a party to a contract that is listed on the Assumption Schedule. Therefore, you are advised to carefully review the information contained in this notice and the related provisions of the Plan, including the Assumption Schedule.

**PLEASE TAKE FURTHER NOTICE** that the Debtors are proposing to assume the Executory Contract(s) and Unexpired Lease(s) listed in **Exhibit A** attached hereto to which you are a party.[3]

**PLEASE TAKE FURTHER NOTICE THAT** section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption.  Accordingly, the Debtors have conducted a thorough review of their books and records and have determined the amounts required to cure defaults, if any, under the Executory Contract(s) and Unexpired Lease(s), which amounts are listed in **Exhibit A**.  Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtors believe that there is no cure amount outstanding for such contract or lease.

**PLEASE TAKE FURTHER NOTICE THAT** absent any pending dispute, the monetary amounts required to cure any existing defaults arising under the Executory Contract(s) and Unexpired Lease(s) identified in **Exhibit A** will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitations described in Article V.C of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute, however, payment of the cure amount would be made following the entry of a final order(s) resolving the dispute and approving the assumption.  If an objection to the proposed assumption or related cure amount is sustained by the Court, however, the Debtors may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it.[4]

---

[3]   Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumption Schedule, nor anything contained in the Plan or each Debtor's schedule of assets and liabilities, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease capable of assumption, that any Reorganized Debtor(s) has any liability thereunder, or that such Executory Contract or Unexpired Lease is necessarily a binding and enforceable agreement.  Further, the Debtors expressly reserve the right to (a) alter, amend, modify, or supplement the Assumed Executory Contract and Unexpired Leases Schedule or the Rejected Executory Contract and Unexpired Leases Schedule identified in Article V.A of the Plan and in the Plan Supplement at any time through and including forty-five (45) days after the Effective Date, or, if later, after a determination is made by the Court regarding a disputed cure Claim amount, and (b) contest any Claim (or cure amount) asserted in connection with assumption of any Executory Contract or Unexpired Lease.

[4]   The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

**PLEASE TAKE FURTHER NOTICE THAT**, unless otherwise provided in the Plan, the deadline for filing objections to the Plan (including any assumption of an Executory Contract or Unexpired Lease as contemplated in the Plan Supplement) is **[November 1, 2022, at 4:00 p].m.,** prevailing Central Time (the "Plan and Disclosure Statement Objection Deadline"). Any objection to the Plan ***must***:   (a) be in writing;  (b) conform to the Bankruptcy Code, Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on or before the Plan and Disclosure Statement Objection Deadline.

**PLEASE TAKE FURTHER NOTICE THAT** any objections to the Plan in connection with the assumption of the Executory Contract(s) and Unexpired Lease(s) identified above and/or related cure or adequate assurances proposed in connection with the Plan and the Disclosure Statement that remain unresolved as of the Combined Hearing will be heard at the Combined Hearing (or such other date as fixed by the Court).

> **PLEASE TAKE FURTHER NOTICE THAT any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption and cure amount.**

**PLEASE TAKE FURTHER NOTICE THAT ASSUMPTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE DATE OF THE DEBTORS OR REORGANIZED DEBTORS ASSUME SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE.   ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Stretto, Inc., the notice and claims agent retained by the Debtors in these chapter 11 cases (the "Notice and Claims Agent"), by:  (a) emailing AlteraInquiries@stretto.com; or (b) calling the Debtors' restructuring hotline at (855) 300-3407 (US toll free) or (949) 266-0151 (international). You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at:  http://www.txs.uscourts.gov.

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE**.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE NOTICE AND CLAIMS AGENT.**

Houston, Texas
[●], 2022

/s/

| **JACKSON WALKER LLP** | **KIRKLAND & ELLIS LLP** |
|---|---|
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Kristhy M. Peguero (TX Bar No. 24102776)
Rebecca Blake Chaikin (S.D. Bar No. 3394311)
Victoria N. Argeroplos (TX Bar No. 24105799)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:    (713) 752-4200
Facsimile:    (713) 752-4221
Email:    mcavenaugh@jw.com
Email:    kpeguero@jw.com
Email:    rchaikin@jw.com
Email:    vargeroplos@jw.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Brian Schartz, P.C. (TX Bar No. 24099361)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    joshua.sussberg@kirkland.com
           brian.schartz@kirkland.com

- and -

John R. Luze (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    john.luze@kirkland.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

## Exhibit A

**Schedule of Contracts and Leases and Proposed Cure Amounts**

## **Schedule 11**

**Form of Notice of Rejection of Executory Contracts and Unexpired Leases**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ALTERA INFRASTRUCTURE L.P., *et al.*,[1] | ) | Case No. 22-90130 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE REGARDING EXECUTORY CONTRACTS
AND UNEXPIRED LEASES TO BE REJECTED PURSUANT TO THE PLAN**

**PLEASE TAKE NOTICE THAT** on [●], 2022, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order (the "Disclosure Statement Order"): (a) authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit votes on the *First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and Its Debtor Affiliates* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Second Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and its Debtor Affiliates* (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors filed the *Rejected Executory Contract and Unexpired Lease Schedule* [Docket No. [●]] (the "Rejection Schedule") with the Court as part of the Plan Supplement on [●], 2022, as contemplated under the Plan.  The Debtors' determination to reject the agreements identified on the Rejection Schedule is subject to ongoing review, revision, and further negotiation among the Debtors and interested parties with respect thereto.

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/Altera.  The location of Debtor Altera Infrastructure L.P.'s principal place of business and the Debtors' service address in these chapter 11 cases is Altera House, Unit 3, Prospect Park, Prospect Road, Arnhall Business Park, Westhill, AB32 6FJ, United Kingdom.

[2]  Capitalized terms not otherwise defined herein have the same meaning as set forth in the Plan.

> **PLEASE TAKE FURTHER NOTICE THAT YOU ARE RECEIVING THIS NOTICE BECAUSE THE DEBTORS' RECORDS REFLECT THAT YOU ARE A PARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT WILL BE REJECTED PURSUANT TO THE PLAN.  THEREFORE, YOU ARE ADVISED TO CAREFULLY REVIEW THE INFORMATION CONTAINED IN THIS NOTICE AND THE RELATED PROVISIONS OF THE PLAN.[3]**

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan and approval of the Disclosure Statement (the "Combined Hearing") will commence on **[November 4, 2022 at 10:00 a.]m.**, prevailing Central Time, before the Honorable Marvin Isgur, in the United States Bankruptcy Court for the Southern District of Texas, located at 515 Rusk Street, Courtroom 404, Houston, Texas, 77002.

**PLEASE TAKE FURTHER NOTICE THAT** all proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, and (3) the Effective Date.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, their Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.**

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan and Disclosure Statement is **[November 1], 2022, at 4:00 p.m.**, prevailing Central Time (the "Plan and Disclosure Statement Objection Deadline").  Any objection to the Plan **must**: (a) be in writing; (b) conform to the Bankruptcy Code, Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan or Disclosure Statement and, if practicable, a proposed modification to the Plan or Disclosure Statement that would resolve such objection; and (d) be filed with the Court on or before the Plan and Disclosure Statement Objection Deadline.

---

[3]   Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejected Executory Contract and Unexpired Lease Schedule, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  Further, the Debtors expressly reserve the right to (a) remove any Executory Contract or Unexpired Lease from the Rejection Schedule and assume such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, up until forty-five (45) after the Effective Date and (b) contest any Claim asserted in connection with rejection of any Executory Contract or Unexpired Lease.  The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

**PLEASE TAKE FURTHER NOTICE THAT** any objections to the Plan in connection with the rejection of the Executory Contract(s) and Unexpired Lease(s) identified above and/or related rejection damages proposed in connection with the Plan that remain unresolved as of the Combined Hearing will be heard at the Combined Hearing (or such other date as fixed by the Court).

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Stretto, Inc., the notice and claims agent retained by the Debtors in these chapter 11 cases (the "Notice and Claims Agent"), by: (a) emailing AlteraInquiries@stretto.com; or (b) calling the Debtors' restructuring hotline at (855) 300-3407 (US toll free) or (949) 266-0151 (international). You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at: http://www.txs.uscourts.gov.

---

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE NOTICE AND CLAIMS AGENT.**

---

Houston, Texas
[●], 2022

/s/

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Kristhy M. Peguero (TX Bar No. 24102776)
Rebecca Blake Chaikin (S.D. Bar No. 3394311)
Victoria N. Argeroplos (TX Bar No. 24105799)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:      (713) 752-4221
Email:           mcavenaugh@jw.com
Email:           kpeguero@jw.com
Email:           rchaikin@jw.com
Email:           vargeroplos@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Brian Schartz, P.C. (TX Bar No. 24099361)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:           joshua.sussberg@kirkland.com
                      brian.schartz@kirkland.com

- and -

John R. Luze (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:           john.luze@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

## Schedule 12

**Noteholder Settlement Term Sheet**

EXECUTION VERSION

**Noteholder Term Sheet[1]**

**Equity Distribution / Rights Offering**

The Plan will provide that, on the Restructuring Effective Date:

- holders of Allowed DIP Claims shall receive their pro rata share of subscription rights in an aggregate amount equal to $[71.81] million to participate in the Rights Offering;

- holders of Allowed IntermediateCo RCF Claims shall receive their pro rata share of subscription rights in an aggregate amount equal to $[12.15] million to participate in the Rights Offering;

- holders of Allowed IntermediateCo Notes Claims shall receive their pro rata share of (a) 87% of the new common equity in Reorganized Altera, subject to dilution on account of the Management Incentive Plan, the New Warrants, and the Rights Offering, and (b) 100% of the new common equity in Reorganized Altera GP; and

- holders of Altera Unsecured Notes Claims and other General Unsecured Claims at Altera and Altera Finance Corp. shall receive their pro rata share of (a) 13% of the new common equity in Reorganized Altera, subject to dilution on account of the Management Incentive Plan, the New Warrants, and the Rights Offering and (b) subscription rights to participate in up to $[12.55] million of the Rights Offering.

On the Restructuring Effective Date, the Debtors will consummate the Rights Offering, which will be a rights offering for new common equity in Reorganized Altera in an aggregate amount up to $[96.51] million. The proceeds of the Rights Offering shall be used first to pay in full in cash Allowed DIP Claims, and then to pay in full in cash Allowed IntermediateCo RCF Claims, and then by the Debtors to pay other emergence costs and for general corporate purposes. The new common equity purchased pursuant to the Rights Offering shall be at a 40% discount to settlement plan equity value of $363 million, whether for cash or contributed or exchanged claims. In lieu of cash, Brookfield may exercise any Rights Offering subscription rights received on account of its Allowed IntermediateCo DIP Claims and Allowed IntermediateCo RCF Claims by contributing or otherwise exchanging such Allowed DIP Claims and/or Allowed IntermediateCo RCF Claims

---

[1] Definitive structuring terms to be finalized in definitive documentation. Capitalized terms used but on defined herein shall have the meanings given to such terms in that certain Restructuring Support Agreement to which this Noteholder Term Sheet is attached as Exhibit C (the "Noteholder RSA").

in an equal amount.  The portion of the Rights Offering available to holders of Altera Unsecured Notes Claims and other General Unsecured Claims at Altera and Altera Finance Corp. will not be backstopped and there will be no oversubscription rights for any such holders related to any such subscription rights.

| | |
|---|---|
| **Final DIP / Disclosure Statement Hearing / Challenge Period** | The hearing on final approval of the DIP Facility and approval of the Disclosure Statement and Solicitation Motion will proceed as scheduled on October 7, 2022 or as otherwise agreed by the Company Parties, the Consenting Sponsor, and the Required Consenting Altera Unsecured Noteholders.  The "Challenge Deadline" under the DIP Order for Challenges brought by the Committee or any noteholder signatory to the Noteholder RSA with respect to Brookfield will be extended to the earlier of the date of entry of the Confirmation Order or November [15], 2022.  The release provisions in favor of Brookfield will be removed from the DIP Order for purposes of final approval (without limiting the releases Brookfield shall receive pursuant to the Plan and Confirmation Order). |
| **Board:** | The new organizational documents of Reorganized Altera will contain provisions substantially consistent with the below. |
| | Reorganized Altera shall be governed by a board of directors, board of managers or equivalent governing body (the "Board"). |
| | Brookfield Business Partners L.P. and its applicable affiliated managed funds and accounts ("Brookfield") shall have the right to determine the size of the Board from time to time in its sole discretion and to appoint a chairperson. |
| | The Chief Executive Officer of Reorganized Altera shall sit on the Board. |
| | Brookfield shall have the right to appoint the remainder of the individuals to the Board (collectively, the "Brookfield Designees"). The Brookfield Designees shall be entitled to a majority of the votes on any matter presented to the Board. |
| | The Board will make decisions by a majority vote.  Except as set forth above, each member of the Board shall be entitled to one vote on all matters that come before the Board. |
| **Fiduciary Duties, Indemnification and Corporate Opportunity:** | The definitive documentation will waive fiduciary duties to the same extent as the existing organizational documents. |
| | All members of the Board will be indemnified by Reorganized Altera to the maximum extent permitted by law, and Reorganized Altera's organizational documents shall provide that equityholders (other than service providers) and non-employee directors will have no obligation to present corporate opportunities to Reorganized Altera. |

| | |
|---|---|
| **Minority Holder Consent Rights:** | Prior to the expiration of the lock up period for the IPO[2] of Reorganized Altera, Reorganized Altera may not take any of the following actions without the consent of Minority Holders holding equity securities representing at least 50% of the then-outstanding common equity of Reorganized Altera (on a fully-diluted basis) held by Minority Holders at the applicable time: |

(i) amending the powers, preferences, or rights of any class of equity securities or amending or revising the organizational documents or limited partnership, operating, shareholders or similar agreement of Reorganized Altera, in each case, to the extent such amendment or revision would disproportionately and adversely modify the rights or obligations of the Minority Holders, individually or taken as a whole, as compared to Brookfield other than in a de minimis respect (it being understood that neither (x) proportional dilution with Brookfield nor (y) the issuance or repurchase of securities pursuant to which the Minority Holders have preemptive rights or tag-along rights shall in each case be deemed to be such a disproportionate and adverse modification on the rights or obligations of any Minority Holder), and

(ii) affiliate transactions between Reorganized Altera and Brookfield or any of their affiliates, subject to exceptions for:

(A) issuances of equity or equity-linked securities (provided Minority Holders have pro rata pre-emptive rights as described below),

(B) Unsecured Brookfield Debt (provided (x) such issuance or incurrence is approved by a majority of the disinterested members of the Board, (y) the terms thereof include customary "sacred rights" (to be defined in the definitive documentation) for each holder and (z) Minority Holders have pro rata pre-emptive rights as described below),

(C) Secured Brookfield Debt (provided with respect to Secured Brookfield Debt, (w) such issuance or incurrence is approved by a majority of the disinterested members of the Board, (x) the terms thereof include customary "sacred rights" (to be defined in the definitive documentation) for each holder, (y) any related collateral agreement, collateral trust agreement or intercreditor agreement shall provide that, upon the exercise of remedies on account of such Secured Brookfield Debt, (i) the holders thereof shall receive ratable treatment on account of such claims and (ii) if the holders thereof receive equity interests on account of such Secured Brookfield Debt and Brookfield or any affiliate thereof is a controlling shareholder with respect to such equity interests, such holders shall be entitled to minority protections on account of such equity interests substantially the same as those set forth herein (and such provisions may not be amended or waived without the consent of a majority of the holders thereof, determined excluding Brookfield and its affiliates), and (z) pursuant to which Minority

---

[2]   "IPO" to be defined in customary manner to be agreed.

Holders have pro rata pre-emptive rights as described below,

(D) customary director fees and expense reimbursement and indemnification arrangements, subject to a cap on reimbursed expenses in an amount to be agreed,

(E) *bona fide* arm's length commercial transactions (excluding for the avoidance of doubt any incurrence of Secured Brookfield Debt or Unsecured Brookfield Debt) with any portfolio company of Brookfield, and

(F) the exercise of any rights under the organizational documents or any partnership, limited liability company or shareholders agreement or any Unsecured Brookfield Debt or Secured Brookfield Debt.

For the avoidance of doubt, the New Money Knarr Facility (as defined in the Plan) or the funding thereof shall not be subject to the consent rights set forth above or the preemptive rights set forth below.

"Minority Holders" means the former holders of Altera Infrastructure L.P.'s 8.50% senior unsecured notes due 2023 and their permitted transferees.

For the avoidance of doubt, for purposes of this term sheet, affiliates of Brookfield shall not include related investment funds behind a *bona fide* information wall and identified to the Ad Hoc Group prior to the execution of definitive documentation.  Transactions between Altera Parent and its subsidiaries, on the one hand, and any such fund (including portfolio companies), on the other shall, be on arms' length terms.

**Transfers:**    Each holder of common equity, New Warrants or any other equity securities of Reorganized Altera other than Brookfield or any of its affiliates may transfer such securities only after compliance with the Right of First Offer covenant described below and certain other customary requirements to be agreed, except for the following transfers (each, a "Permitted Transfer"): (i) transfers to customary permitted transferees (e.g., affiliated investment vehicles), or (ii) transfers in connection with drag-along rights or participation under tag-along rights.  Brookfield may transfer any common equity, New Warrants or any other equity securities of Reorganized Altera at any time, subject to the tag-along rights of Minority Holders described below (except for Permitted Transfers).  For the avoidance of doubt, in connection with a Permitted Transfer, any transferees must sign appropriate joinders to the relevant agreements and agree to be bound by the terms thereof, including, without limitation, the provisions set forth in this term sheet.

In no event will a Minority Holder or any transferee thereof be permitted to transfer its common equity, New Warrants or other equity securities of Reorganized Altera (A) to any Disqualified Holder, or (B) if such transfer would be reasonably likely to result in a material

adverse tax consequences for Reorganized Altera, in each case as determined by the Board in good faith.

"Disqualified Holder" will be defined in the definitive documentation and will include all persons and entities that are (a) Competitors of Reorganized Altera, as determined by the Board, (b) separately identified in writing by Brookfield on or prior to the date of execution of definitive documentation, subject to the reasonable consent of a majority of the Minority Holders, or (c) that own an interest in or are an affiliate or successor of any person or entity described in the foregoing clauses (a) or (b).  "Competitor" will be defined in the definitive documentation.

The common equity and any New Warrants or other equity securities of Reorganized Altera will be issued pursuant to an exemption from, or in a transaction not subject to, registration under Securities Act of 1933, as amended (the "Securities Act").  Any Minority Holder (or transferee thereof) of common equity, New Warrants or any other equity of Reorganized Altera may not transfer such securities in violation of the Securities Act or any applicable U.S. federal or state securities laws or if such transfer shall result in any requirement that Reorganized Altera register the common equity or any New Warrants or other equity security under Section 12(g) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), in each case as determined by the Board.

| | |
|---|---|
| **Right of First Offer:** | In the event that any Minority Holder proposes to sell or transfer any of its common equity, New Warrants or other equity securities, other than in connection with a Permitted Transfer, Reorganized Altera, first, and Brookfield, second, will have a right of first offer to purchase the securities proposed to be transferred, subject to customary notice and other procedural requirements. Such requirements will include (i) that prior to any sale or transfer of such securities the applicable Minority Holder must deliver to Reorganized Altera and Brookfield a written notice setting forth the proposed price and other material terms and conditions of the proposed sale or transfer, (ii) that Reorganized Altera, first, and Brookfield, second, will have successive periods of 15 days commencing on the date of such notice to notify such Minority Holder of their intention to exercise their respective rights to acquire all such securities at such price and on such terms and conditions, and (iii) if Reorganized Altera and Brookfield do not exercise such rights with respect to all of the securities to be transferred, such Minority Holder may, within 6 months after the expiration of such 30-day period, sell or transfer the securities to a third party at a price not less than, and otherwise on terms and conditions no more favorable in the aggregate to the buyer or transferee than, the price and terms and conditions offered by such Minority Holder to Reorganized Altera and Brookfield. |
| **Tag Along Rights:** | Prior to the consummation of a change of control or IPO of Reorganized Altera, in the event that Brookfield proposes any sale of more than 20% of Brookfield's equity securities in one or more transactions to an unaffiliated party (a "Tag-Along Sale"), each |

Minority Holder will have the right to participate in the Tag-Along Sale on a *pro rata* basis based on ownership of such equity securities, subject to customary notice and procedural requirements.

**<u>Drag Along Rights</u>:** In the event Brookfield proposes any sale of all or a majority of Brookfield's equity securities in Reorganized Altera or all or a majority of Reorganized Altera's and its subsidiaries consolidated assets, in each case, to an unaffiliated party, whether by merger, sale of securities or assets, or otherwise (each, a "<u>Sale Transaction</u>"), each Minority Holder shall be obligated to participate on a *pro rata* basis and use commercially reasonable efforts to cooperate (subject to reimbursement by Altera Parent for reasonable expenses subject to a cap to be agreed) in any such Sale Transaction, including transferring all or any portion of its equity securities, granting proxies and powers of attorney, waiving any appraisal or similar rights, and otherwise taking all actions reasonably necessary to consummate such transaction, in each case, as reasonably directed by (and on substantially the same terms as applicable to) Brookfield (it being acknowledged that any rights of Brookfield and any Minority Holder in respect of any securities received as consideration may take into account their respective relative ownership) and subject to customary limitations; <u>provided</u> that no Minority Holder shall be required to agree to any restrictive covenants (other than customary confidentiality and non-solicitation/non-hire covenants and that are substantively the same as those entered into by Brookfield in connection with such Sale Transaction).

**<u>Preemptive Rights</u>:** Subject to customary exclusions, if, prior to the consummation of a change of control of Reorganized Altera, Reorganized Altera or any of its subsidiaries proposes to issue (directly or indirectly, including through derivatives arrangements) (i) additional equity, equity-linked or convertible debt to any person or entity (or, following an IPO, to Brookfield or its affiliates), (ii) secured debt (including secured convertible debt) to Brookfield or its affiliates ("<u>Secured Brookfield Debt</u>") or (iii) unsecured debt (including unsecured convertible debt) to Brookfield or its affiliates (the "<u>Unsecured Brookfield Debt</u>") (each, an "<u>Offered Investment</u>"), each Minority Holder will in each case have the right to purchase its *pro rata* share of the Offered Investment, (x) in the case of issuances of equity, equity-linked or convertible debt securities, in an amount sufficient to maintain its percentage equity ownership of Reorganized Altera as of immediately prior to such issuance (on a fully-diluted basis) following the issuance of the Offered Investment, and (y) in the case of the incurrence of Secured Brookfield Debt or Unsecured Brookfield Debt, in an amount proportionate to its percentage ownership of [fully-diluted equity of Reorganized Altera/total capital contributed by Brookfield and the other equityholders of Reorganized Altera][3] at the time of issuance, in each case, subject to customary notice, which notice shall include a summary of the terms of such Offered Investment and the most recent financial

---

[3]   Open point to be resolved in the definitive documentation.

information required to be provided to creditors of Reorganized Altera or any of its subsidiaries, and procedural requirements.

Notwithstanding the foregoing, if the Board reasonably determines that special circumstances warrant, Reorganized Altera may sell equity, equity-linked or debt securities without first offering the Minority Holders the opportunity to participate in such sale so long as each Minority Holder is provided the opportunity to purchase its allocated portion within 60 days after consummation of the sale of such securities or participations on the same terms and conditions (including price), which offer shall be held open for 10 business days following delivery of a preemptive notice; provided, that Reorganized Altera shall, to the extent reasonably practicable absent exigent or emergency circumstances, provide written notice to the Minority Holders of any such proposed issuance of debt securities to Brookfield not less than 3 business days prior to the consummation of such issuance.

**IPO:**

Only Brookfield will have the right to elect, in its sole discretion, to cause Reorganized Altera to consummate an IPO and the Board shall not cause Reorganized Altera to consummate an IPO without Brookfield's consent. All equityholders will be required to take steps reasonably proposed by Brookfield or the Board (subject to reimbursement by Altera Parent for reasonable expenses subject to a cap to be agreed) in connection with an IPO, including restructuring transactions made in anticipation of an IPO, including executing all documents and taking all actions reasonably requested by Brookfield, so long as (i) they are not treated in a disproportionate and adverse manner other than in a de minimis respect and (ii) such steps or actions do not limit or deprive any such person of the other rights or protections set forth herein.  Following any such IPO the Minority Holders will have customary registration rights (including customary demand and piggyback rights) and holders of equity of Reorganized Altera (minimum ownership for lock-up to be discussed) at the time shall be subject to customary lock-up arrangements with respect to the IPO (not to exceed 180 days) and underwritten secondary offerings (not to exceed 90 days) to the same extent as Brookfield.

Without Brookfield's consent, the Board shall not cause Reorganized Altera to engage in any transaction that will result in any requirement that Reorganized Altera register the common equity or any New Warrants or other equity security or any debt security under Section 12(g) or 12(b) of the Exchange Act.

**Information Rights:**

Prior to an IPO, each Minority Holder shall have the right to receive (i) audited annual financial statements and unaudited quarterly financial statements of Reorganized Altera, and (ii) any other financial information required to be provided to creditors of Reorganized Altera or any of its subsidiaries pursuant to the terms of any debt instrument of Reorganized Altera or any of its subsidiaries, in each case subject to customary confidentiality restrictions (which shall permit the disclosure of the foregoing financial information to any *bona fide* potential

transferee of equity securities of Reorganized Altera that has entered into a customary confidentiality agreement with Reorganized Altera). In addition, one or more members of the management team of Reorganized Altera shall host quarterly conference calls of reasonable duration with the Minority Investors (following reasonable advance notice thereof).

**Restrictive Covenants:**    Each Minority Holder shall agree to customary confidentiality restrictions.

**Governing Law:**    Marshall Islands.

**Consent to Jurisdiction and Forum:**    Delaware