United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 06, 2022

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| ALTERA INFRASTRUCTURE L.P., *et al.*,[1] | Case No. 22-90130 (MI) |
| Debtors. | (Jointly Administered) |
|  | **Re:  Docket No. 231** |

**ORDER AUTHORIZING THE
RETENTION AND EMPLOYMENT OF
EVERCORE GROUP L.L.C. AS INVESTMENT
BANKER TO THE DEBTORS, EFFECTIVE AS OF AUGUST 12, 2022**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing the employment and retention of Evercore as investment banker to the Debtors, in accordance with the terms and conditions set forth in the Engagement Letter, attached hereto as **Exhibit 1**, (b) approving the terms of Evercore's employment and retention, including the Fee and Expense Structure and the Indemnification Obligations, contribution, reimbursement, and related provisions set forth in the Engagement Letter, and (c) approving the modification of compliance with requirements regarding time entry detail, all as more fully set forth in the Application; and upon consideration of the D'Souza Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/Altera.  The location of Debtor Altera Infrastructure L.P.'s principal place of business and the Debtors' service address in these chapter 11 cases is Altera House, Unit 3, Prospect Park, Prospect Road, Arnhall Business Park, Westhill, AB32 6FJ, United Kingdom.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the terms and conditions of Evercore's employment, including but not limited to the Fee and Expense Structure set forth in the Engagement Letter and summarized in the Application, are reasonable as required by section 328(a) of the Bankruptcy Code; and this Court having found that the relief requested in the Application is necessary and essential for the Debtors' reorganization and such relief is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that Evercore is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Debtors are authorized, pursuant to sections 327 and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Bankruptcy Local Rules 2014-1 and 2016-1, to employ and retain Evercore as investment banker to the Debtors, effective August 12, 2022, in accordance with the terms and conditions set forth in the Engagement Letter and to pay fees and reimburse expenses to Evercore as of the Petition Date on the terms and at the times specified in the Engagement Letter, except as limited or modified herein.

2.      The provisions set forth in the Engagement Letter are approved in all respects except as limited or modified herein.

3.      The terms of Evercore's compensation as set forth in the Engagement Letter, as modified by this Order, including, without limitation, the Fee and Expense Structure and the Indemnification Obligations, are approved pursuant to section 328(a) of the Bankruptcy Code, and Evercore shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of the Engagement Letter, as modified by this Order, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Complex Case Procedures (except as otherwise set forth herein), and any other applicable orders of this Court.

4.      None of the fees payable to Evercore shall constitute a "bonus" or fee enhancement under applicable law.

5.      Notwithstanding anything to the contrary in the Application, Engagement Letter, or the D'Souza Declaration, to the extent the Debtors wish to expand the scope of Evercore's services beyond those services set forth in the Application, Engagement Letter, or the D'Souza Declaration, such other services shall be subject to separate application and approval by Court order.

6.      Evercore shall file fee applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code and any orders of this Court, and such applications shall be subject to review by the Court; *provided* that the fee applications filed by Evercore shall be subject to review only pursuant to the standard of review set forth in section 328 of the Bankruptcy Code and not subject

to the standard of review set forth in section 330 of the Bankruptcy Code, except as otherwise expressly set forth herein.

7.      Notwithstanding any provision to the contrary in this Order, the Application, or the Engagement Letter, the U.S. Trustee shall have the right to object to Evercore's request(s) for interim and final applications for compensation based on the reasonableness standard provided in section 330 of the Bankruptcy Code; *provided* that "reasonableness" shall be evaluated by comparing (among the other factors set forth in section 330(a)(3) of the Bankruptcy Code) the fees payable in these chapter 11 cases to fees paid to comparable investment banking firms with similar experience and reputation offering comparable services in other chapter 11 cases and shall not be evaluated primarily on an hourly or length-of-case criterion.

8.      Evercore shall include in its monthly, interim, and final fee applications, among other things, reasonably detailed time records setting forth, in a summary format by project category, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors in half-hour increments, but Evercore shall be excused from keeping time in tenth-hour increments.

9.      Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the D'Souza Declaration, to the extent that Evercore uses the services of independent or third-party contractors or subcontractors (the "Contractors") in these cases and Evercore seeks to pass through the fees and/or costs of the Contractors to the Debtors, Evercore shall (a) pass through the fees of such Contractors to the Debtors at the same rate that Evercore pays the Contractors; and (b) seek reimbursement for actual costs of the Contractors only.  In addition, the Debtors shall ensure that the Contractors perform the conflicts checks as required for Evercore and file such disclosures as required by the Bankruptcy Code and Bankruptcy Rules.

10.     The Debtors shall be bound by the indemnification, contribution, reimbursement, exculpation, and other provisions of the Engagement Letter and will indemnify and hold harmless Evercore and the other Indemnified Persons, pursuant to the Engagement Letter, subject to the following modifications during the pendency of these chapter 11 cases:

a.      Subject to the provisions of subparagraphs (b) and (c) below, the Debtors are authorized to indemnify, and shall indemnify, Evercore for any claims arising from, related to, or in connection with the Services to be provided by Evercore as specified in the Application, but not for any claim arising from, related to, or in connection with Evercore's postpetition performance of any other services other than those in connection with the engagement, unless such postpetition services and indemnification therefor are approved by this Court;

b.      The Debtors shall have no obligation to indemnify Evercore for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from Evercore's fraud, bad faith, gross negligence, willful misconduct, breach of fiduciary duty (if any), or self-dealing, or (ii) settled prior to a judicial determination as to Evercore's fraud, bad faith, gross negligence, willful misconduct, breach of fiduciary duty (if any), or self-dealing but determined by this Court, after notice and a hearing pursuant to subparagraph (c) infra, to be a claim or expense for which Evercore is not entitled to receive indemnity under the terms of the Application; and

c.      If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Evercore believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, Evercore must file an application in this Court, and the Debtors may not pay any such amounts to Evercore before the entry of an order by this Court approving the payment.  This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Evercore for indemnification, and not as a provision limiting the duration of the Debtors' obligation to indemnify, or make contributions or reimbursements to Evercore.  All parties in interest shall retain the right to object to any application by Evercore or other Indemnified Person for indemnification, contribution, or reimbursement.

11.     In the event that, during the pendency of these chapter 11 cases, Evercore seeks reimbursement for any attorneys' fees and/or expenses pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Evercore's fee

applications and such invoices and time records shall be in compliance with the Bankruptcy Local Rules and approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained pursuant to section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy section 330(a)(3)(C) of the Bankruptcy Code; *provided*, *however*, that Evercore shall not seek reimbursement from the Debtors' estates for any attorneys' fees or expenses incurred in defending against any formal objections to Evercore's fee applications filed in these chapter 11 cases.

12.     Evercore's Monthly Fee shall be prorated for any month in which Evercore is not employed for each day of the month.

13.     Evercore shall use reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

14.     The relief granted herein, including, without limitation, approval pursuant to section 328(a) of the Bankruptcy Code of the Fee and Expense Structure and the Indemnification Obligations, shall be binding upon any chapter 11 trustee appointed in these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

15.     To the extent that this Order is inconsistent with the Application, the D'Souza Declaration, or the Engagement Letter, the terms of this Order shall govern.

16.     Notice of the Application satisfies the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

17.      This Order is effective as of August 12, 2022.

18.     The Debtors and Evercore are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

19.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed: October 06, 2022

_____
Marvin Isgur
United States Bankruptcy Judge

## __Exhibit 1__

**Engagement Letter**

As of January 1, 2022

Altera Infrastructure L.P.
Altera House, Unit 3, Prospect Park
Arnhall Business Park, Westhill
Aberdeenshire, AB32 6FJ, United Kingdom

Gentlemen:

This engagement letter (this "Agreement") is to formalize the arrangement between Evercore Group L.L.C. ("Evercore") and Altera Infrastructure L.P. (together with any direct or indirect subsidiaries, the "Company") regarding the retention of Evercore by the Company as a financial advisor for the purposes set forth herein.

**Assignment Scope:**

The Company hereby retains Evercore as its financial advisor to provide the Company with general investment banking advice and to advise it in connection with any Restructuring and/or Financing transactions (each as defined below and each a "Transaction") on the terms and conditions set forth herein.

As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization and/or recapitalization approved by the Company, however such result is achieved, of all or a substantial portion of the Company's equity or indebtedness, including without limitation, through one or more of the following: (i) a plan of reorganization or liquidation or similar transaction confirmed or approved pursuant to 11 U.S.C. §101 *et. seq.* and/or any other current or future U.S. federal statute or regulation, as from time to time amended, or (b) any foreign insolvency law in any other jurisdiction (11 U.S.C. §101 *et. seq.* and those other statutes and regulations of the U.S. and other jurisdictions are generically referred to herein as the "Bankruptcy Code"); (ii) a cancellation, forgiveness and/or a material modification or amendment to the terms of all or a substantial portion of the Company's outstanding indebtedness (including bank debt, bond debt, preferred stock, and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), litigation-related claims and obligations, unfunded pension and retiree medical liabilities, lease obligations, partnership interests and other liabilities (collectively, the "Existing Obligations") including pursuant to a sale, repurchase, refinancing or an exchange transaction, a Plan (as defined below) or a solicitation of consents, waivers, acceptances or authorizations; and/or (iii) an acquisition, merger, consolidation, or other business combination, including a sale pursuant to section 363 of the Bankruptcy Code (including via credit bid), pursuant to which a majority of the business, assets, or existing equity or securities of the Company are, directly or indirectly, sold or transferred to, or combined with, another company (other than an ordinary course intra-company transaction).

As used in this Agreement, the term "Financing" shall mean the issuance, sale or placement, in each case for cash or new money commitments, of newly issued or treasury equity, equity-linked or debt securities, instruments or obligations of the Company with one or more lenders and/or investors or security holders (each such lender or investor, an "Investor"), including any "debtor-in-possession financing" or "exit financing" in connection with a case under the Bankruptcy Code,

1

Altera Infrastructure L.P.
As of January 1, 2022
Page 2

or a refinancing, rights offering or any loan or other financing or obligation, in each case that Evercore is directed by the Company to pursue as lead financial advisor.

**Description of Services**:

1. Evercore agrees, in consideration of the compensation provided in Section 2 below, to perform the following services, to the extent requested by the Company and reasonable and appropriate under the circumstances:

   a. Reviewing and analyzing the Company's business, operations and financial projections;

   b. Advising and assisting the Company in connection with a Transaction, if the Company determines to undertake such a Transaction;

   c. Providing financial advice in developing and implementing a Restructuring, which would include:

      i. Evaluating transaction alternatives and financial implications on the Company's capital structure and financial condition;

      ii. Analyzing various Restructuring scenarios and the potential impact of those scenarios on the value of the Company and the recoveries of those stakeholders impacted by the Restructuring;

      iii. Providing financial and valuation advice and assistance to the Company in developing and seeking approval of a restructuring plan or plan of reorganization that is approved by the Company, including a plan of reorganization or similar transaction pursuant to the Bankruptcy Code (any such plans are referred to generically herein as the "Plan");

      iv. Advising and assisting in structuring, negotiating, implementing, and otherwise responding to the financial aspects of a Restructuring, in each case on behalf of the Company and subject to the terms and conditions of this Agreement;

      v. Providing financial advice and assistance to the Company in structuring any new securities to be issued pursuant to a Restructuring;

      vi. Advising the Company on tactics and strategies for negotiating with various stakeholders regarding a transaction;

      vii. Structuring, facilitating, coordinating and effecting a Restructuring;

      viii. Providing testimony, as necessary, with respect to matters on which Evercore has been engaged to advise the Company in any proceedings under the

Altera Infrastructure L.P.
As of January 1, 2022
Page 3

> Bankruptcy Code that are pending before a court (generically referred to herein as the "Bankruptcy Court") exercising jurisdiction over the Company as a debtor; and,
>
> ix. Providing the Company with other financial restructuring advice as Evercore and the Company may deem appropriate.

d. If the Company pursues a Financing and requests that Evercore act as lead financial advisor in connection therewith, assisting the Company in:

> i. Structuring, facilitating, coordinating and effecting a Financing;
>
> ii. Identifying potential Investors and, at the Company's request, contacting such Investors;
>
> iii. Managing the due diligence process and working with the Company in negotiating the economic terms of a Financing with potential Investors;
>
> iv. Assisting the Company in preparing marketing materials for such Financing;
>
> v. Evaluating the terms of a Financing; and
>
> vi. Providing the Company with other financial advice as Evercore and the Company may deem appropriate.

> It is understood that nothing contained herein shall constitute an express or implied commitment by Evercore to act in any capacity or to underwrite, place or purchase any financing or securities, which commitment, if any, shall be set forth in a separate underwriting placement or other appropriate agreement relating to a Financing.

In rendering its services to the Company hereunder, Evercore is not assuming any responsibility for the Company's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect a Transaction.

Evercore shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for design or implementation of operating, organizational, administrative, cash management or liquidity improvements; nor shall Evercore be responsible for providing any tax, legal or other specialist advice.  The Company confirms that it will rely on its own counsel, accountants and similar expert advisors for legal, accounting, tax and other similar advice.

**<u>Fees:</u>**

2. As compensation for the services rendered by Evercore hereunder, the Company agrees to pay Evercore the following fees in cash as and when set forth below:

Altera Infrastructure L.P.
As of January 1, 2022
Page 4

a. A monthly fee of $200,000 (a "Monthly Fee"), payable on the first day of each month commencing January 1, 2022 until the earlier of the consummation of the Restructuring transaction or the termination of Evercore's engagement.

b. A fee of $14,400,000 (a "Restructuring Fee"), payable upon the consummation of any Restructuring.

c. A fee (a "Financing Fee"), payable upon consummation of any Financing and incremental to any Restructuring Fee, equal to the following:

| Financing | As a Percentage of Financing Gross Proceeds |
|---|---|
| Indebtedness Secured by a First Lien (including Debtor-in-Possession financing) | 1.0% |
| Indebtedness Secured by a Second Lien, Junior Lien, Unsecured and/or Subordinated | 2.0% |
| Equity or Equity-linked Securities/Obligations | 3.0% |

For purposes of calculating each Financing Fee, "Gross Proceeds" shall equal the aggregate amount of capital committed, whether or not drawn or funded; provided, however that no Financing Fee shall be earned on (i) the portion of any Financing provided by Brookfield Asset Management Inc. or any of its affiliates or (ii) the portion of any new money market financing or refinancing on which Evercore does not act as lead financial advisor.

d. In addition to any fees that may be payable to Evercore and, regardless of whether any transaction occurs, the Company, on a monthly basis, shall promptly reimburse to Evercore (a) all reasonable and documented out-of-pocket expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (b) other reasonable and documented out of pocket fees and expenses, including expenses of counsel (other than legal fees associated with the negotiation of this Agreement or any amendment or modification hereof), if any, incurred in either case in connection with the engagement hereunder (the "Engagement Expenses"). The Engagement Expenses for which Evercore seeks reimbursement pursuant to this paragraph (other than the reasonable and documented fees and expenses of Evercore's counsel) shall not exceed $150,000 without the prior consent of the Company (which consent shall not be unreasonably withheld). Nothing in this paragraph shall in any way affect or limit the obligations of the Company as set forth on Schedule I attached hereto.

e. If Evercore provides services to the Company for which a fee is not provided herein, such services shall, except insofar as they are the subject of a separate agreement, be treated as falling within the scope of this Agreement. If a fee is to be payable pursuant to this section 2(e), Evercore will advise the Company prior to the provision of such services, and the Company and Evercore will agree upon a fee for such services based upon good faith negotiations.

Altera Infrastructure L.P.
As of January 1, 2022
Page 5

    f.   All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder upon presentation of an invoice for such amounts.

The Company and Evercore acknowledge and agree that more than one fee may be payable to Evercore under subparagraphs 2(c) and/or 2(e) hereof in connection with any single transaction or a series of transactions, it being understood and agreed that if more than one fee becomes so payable to Evercore in connection with a series of transactions, each such fee shall be paid to Evercore. For the avoidance of doubt, only one Restructuring Fee may be payable by the Company under this Agreement.

If a Restructuring and/or Financing is to be completed through a pre-packaged Plan or similar pre-arranged Plan (i) (a) in the case of a pre-packaged Plan (including any Plan for which solicitation of votes in respect of such Plan will commence prior to, but remain incomplete upon, commencement of the Chapter 11 proceedings), 50% of the fees pursuant to subparagraphs 2(b) and 2(c) (as applicable) shall be earned and payable upon the earlier of (1) execution of a restructuring support agreement (or other similar definitive agreement) and (2) delivery of binding consents, each with sufficient majorities with respect to such Plan and (b) in the case of a pre-arranged Plan, $1,000,000 of the fees pursuant to subparagraphs 2(b) and 2(c) shall be earned and payable upon obtaining binding support (e.g., via an executed term sheet, restructuring support agreement or other agreement in principle documenting the key terms of such pre-arranged Plan), from one or more of the Company's key creditor classes that is sufficient to justify filing such pre-arranged Plan and (ii) the remainder of such applicable fees shall be earned and payable upon consummation of such Plan; provided, further, that in the event that Evercore is paid a fee in connection with a pre-packaged Plan or similar pre-arranged Plan, and such Plan is not thereafter consummated, then such fee previously paid to Evercore may be credited by the Company against any subsequent fee hereunder that becomes payable by the Company to Evercore.

The Company acknowledges that the fee structure herein, including the Monthly Fees, reflects the substantial commitment of professional time and effort that will be required of Evercore and its professionals and in light of the fact that (i) such commitment may foreclose other opportunities for Evercore and (ii) the actual time and commitment required of Evercore and its professionals to perform its services may vary substantially from week to week and month to month, creating "peak load" issues for Evercore.

Notwithstanding anything to the contrary herein, the aggregate amount of fees payable to Evercore under this Agreement (excluding for the avoidance of doubt, any indemnification payable pursuant to Schedule I or reimbursement of expenses payable pursuant to subparagraph 2(d)) shall not exceed $18,000,000.

**<u>Support of Fees and Retention in Bankruptcy Code Proceedings:</u>**

3.   In the event the Company obtains support (e.g., via an executed term sheet, restructuring support agreement, or other agreement in principle documenting the key terms of a Plan and/or

Altera Infrastructure L.P.
As of January 1, 2022
Page 6

out-of-court restructuring) from one or more of the Company's key creditor classes (such creditors the "Supporting Creditors" and any such documentation of support, an "RSA"), the Company agrees that it will use commercially reasonable efforts to include in the RSA a provision that the Supporting Creditors affirmatively agree to support and not to object or in any way oppose: (i) the retention of Evercore; (ii) the terms and conditions set forth in this Agreement including, for the avoidance of doubt, the fee and expense structure included herein; and/or (iii) any fee statement or application submitted by Evercore to the Bankruptcy Court. In the event of the commencement of Chapter 11 proceedings by the Company, the Company agrees that it will use commercially reasonable efforts to obtain prompt authorization from the Bankruptcy Court to retain Evercore on the terms and conditions set forth in this Agreement under the provisions of 11 U.S.C. §§ 327 and 328 subject to the standard of review provided in Section 328(a), and not subject to the standard of review under 11 U.S.C. § 330 or any other standard of review. Subject to being so retained, Evercore agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and orders of the Bankruptcy Court. The Company shall supply Evercore with a draft of the application and proposed retention order authorizing Evercore's retention sufficiently in advance of the filing of such application and proposed order to enable Evercore and its counsel to review and comment thereon. Evercore shall be under no obligation to provide any services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Evercore's retention under the terms of this Agreement is approved under Section 328(a) by final order of the Bankruptcy Court, not subject to appeal, which order is reasonably acceptable to Evercore. In so agreeing to seek Evercore's retention under Section 328(a), the Company acknowledges that it believes that Evercore's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring and/or Financing, that the value to the Company of Evercore's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent fees are reasonable under the standard set forth in Section 328(a), regardless of the number of hours to be expended by Evercore's professionals in the performance of the services to be provided hereunder. No fee payable to any other person, by the Company or any other party, shall reduce or otherwise affect any fee payable hereunder to Evercore.

**<u>Other:</u>**

4. Evercore's engagement hereunder is premised on the assumption that the Company will make available to Evercore all information and data that Evercore reasonably deems appropriate in connection with its activities on the Company's behalf and will not omit or withhold any material information. The Company recognizes and consents that (a) Evercore will use and rely on the accuracy and completeness of public reports and other information provided by others, including information provided by the Company, other parties and their respective officers, employees, auditors, attorneys or other agents in performing the services

Altera Infrastructure L.P.
As of January 1, 2022
Page 7

contemplated by this Agreement, and (b) Evercore does not assume responsibility for, and may rely upon, without independent verification of, the accuracy and completeness of any such information.

5.  Evercore's engagement hereunder may be terminated by the Company or Evercore at any time upon written notice (which may be provided by email) and without liability or continuing obligation to the Company or Evercore, except that following such termination, Evercore shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination, and to reimbursement of reasonable and documented expenses incurred prior to such termination, and, except in the event that Evercore's engagement hereunder is terminated for cause[1] by the Company or Evercore terminates this Agreement without the Company being in material default of its payment obligations hereunder, Evercore shall remain entitled to full payment of all fees contemplated by Section 2 hereof in respect to any Transaction that is consummated or for which a definitive agreement has been executed during the period from the date hereof until 12 months following such termination (the "Tail Period"); provided that no Financing Fee shall be due or payable after the consummation of a Restructuring, except to the extent such Financing was entered into by the Company in connection with such Restructuring.

6.  Nothing in this Agreement, expressed or implied, is intended to confer or does confer on any person or entity other than the parties hereto or their respective successors and assigns, and to the extent expressly set forth in accordance with the indemnification agreement ("Indemnification Agreement") attached to this Agreement as Schedule I, the Indemnified Persons (as defined in the Indemnification Agreement), any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Evercore hereunder. The Company acknowledges that Evercore is not acting as an agent of the Company or in a fiduciary capacity with respect to the Company and that Evercore is not assuming any duties or obligations other than those expressly set forth in this Agreement. Nothing contained herein shall be construed as creating, or be deemed to create, the relationship of employer and employee between the parties, nor any agency, joint venture or partnership. Evercore shall at all times be and be deemed to be an independent contractor. Nothing contained herein is intended to create or shall be construed as creating a fiduciary relationship between Evercore and the Company or its Board of Directors. No party to this Agreement nor its employees or agents shall have any authority to act for or to bind the other party in any way or to sign the name of the other party or to represent that that the other party is in any way responsible for the acts or omissions of such party.

7.  As part of the compensation payable to Evercore hereunder, the Company agrees to indemnify Evercore and certain related persons in accordance with the Indemnification Agreement. The provisions of the Indemnification Agreement are an integral part of this Agreement, and the

---

[1] As used in this Agreement, "for cause" shall mean any termination of Evercore's engagement hereunder as a result of Evercore's fraud, gross negligence, bad faith or willful misconduct in performing the services hereunder.

Altera Infrastructure L.P.
As of January 1, 2022
Page 8

terms thereof are incorporated by reference herein.  The provisions of the Indemnification Agreement shall survive any termination or completion of Evercore's engagement hereunder.

8.  The Company agrees that it is solely responsible for any decision regarding a transaction, regardless of the advice provided by Evercore with respect to such a transaction.  The Company acknowledges that the Company's appointment of Evercore pursuant to this Agreement is not intended to achieve or guarantee the closing of a transaction and that Evercore is not in a position to guarantee the achievement or closing of a transaction.

9.  The Company recognizes that Evercore has been engaged only by the Company and that the Company's engagement of Evercore is not deemed to be on behalf of and is not intended to confer rights on any shareholder, partner or other owner of the Company, any creditor, lender or any other person not a party hereto or any of its affiliates or their respective directors, officers, members, agents, employees or representatives.  Unless otherwise expressly agreed, no one, other than senior management or the Board of Directors of the Company, is authorized to rely upon the Company's engagement of Evercore or any statements, advice, opinions or conduct by Evercore.  Without limiting the foregoing, any advice, written or oral, rendered to the Company's Board of Directors or senior management in the course of the Company's engagement of Evercore are solely for the purpose of assisting senior management or the Board of Directors of the Company, as the case may be, in evaluating the Restructuring, Financing, or other transaction and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with a transaction.  Any advice, written or oral, rendered by Evercore may not be disclosed publicly or made available to third parties without the prior written consent of Evercore, which consent shall not be unreasonably withheld, delayed or conditioned; provided that no such consent shall be required if such disclosure is (a) on a confidential and non-reliance basis to the Company's outside counsel who needs to know such information in connection with the Restructuring or any other transaction hereunder, (b) required (as advised by legal counsel) by law, rule, regulation, or governmental, or regulatory body (including by deposition, interrogatory, request for documents, subpoena, civil investigative demand, legal, regulatory, or similar process), so long as the Company shall have, to the extent not prohibited by law, (i) promptly notified Evercore of such disclosure requirement, (ii) consulted with Evercore as to the advisability of taking steps to resist or narrow the scope of the disclosure contemplated thereby, and (iii) cooperated with Evercore in any efforts it may make to obtain an order or other reliable assurance that confidential treatment will be accorded to such information and such advice, or (c) in connection with routine audits and inquiries from governmental, regulatory and self-regulatory authorities that are not primarily directed at the Transaction or the services provided under this Agreement.

10. This Agreement (including the Indemnification Agreement) between Evercore and the Company, embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof.  If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect this Agreement in any other respect, which will remain in

Altera Infrastructure L.P.
As of January 1, 2022
Page 9

full force and effect.  This Agreement may not be amended or modified except in writing signed by each of the parties.

11. In the event that, as a result of or in connection with Evercore's engagement for the Company, Evercore becomes involved in any legal proceeding or investigation or is required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, the Company will reimburse Evercore for the reasonable and documented out-of-pocket fees and expenses of counsel incurred in responding to such a request. Nothing in this paragraph shall affect in any way the Company's obligations pursuant to the separate Indemnification Agreement attached hereto.

12. The Company agrees that Evercore shall have the right to place advertisements in financial and other newspapers and journals at its own expense describing its services to the Company hereunder, to the extent approved by the Company and Brookfield.

13. Evercore will comply with all applicable federal and state securities laws, rules, and regulations in connection with its activities hereunder and agrees that it has all required licenses to carry out its activities hereunder.

14. The Company acknowledges that Evercore, in the ordinary course, may have received information and may receive information from third parties which could be relevant to this engagement but is nevertheless subject to a contractual, equitable or statutory obligation of confidentiality, and that Evercore is under no obligation hereby to disclose any such information or include such information in its analysis or advice provided to the Company.  In addition, Evercore or one or more of its affiliates may in the past have had, and may currently or in the future have, investment banking, investment management, financial advisory or other relationships with the Company and its affiliates, potential parties to a Transaction and their affiliates or persons that are competitors, customers or suppliers of (or have other relationships with) the Company or its affiliates or potential parties to a Transaction or their affiliates, and from which conflicting interests or duties may arise.  Nothing contained herein shall limit or preclude Evercore or any of its affiliates from carrying on (i) any business with or from providing any financial or non-financial services to any party whatsoever, including, without limitation, any competitor, supplier or customer of the Company, or any other party which may have interests different from or adverse to the Company or (ii) its business as currently conducted or as such business may be conducted in the future.  The Company also acknowledges that Evercore and its affiliates engage in a wide range of activities for their own accounts and the accounts of customers, including corporate finance, mergers and acquisitions, equity sales, trading and research, private equity, asset management and related activities. In the ordinary course of such businesses, Evercore and its affiliates may at any time, directly or indirectly, hold long or short positions and may trade or otherwise effect transactions for their own accounts or the accounts of customers, in debt or equity securities, senior loans and/or derivative products relating to the Company or its affiliates, potential parties to a Transaction and their affiliates or persons that are competitors, customers or suppliers of the Company.

Altera Infrastructure L.P.
As of January 1, 2022
Page 10

Notwithstanding the foregoing, during the term of this Agreement and during the Tail Period, Evercore shall not (i) provide investment banking financial advisory or M&A advisory services to any party (other than the Company) in connection with a Transaction; or (ii) without the Company's prior written consent (which may be provided by email), arrange and/or provide new debt or equity capital markets or new bank financing during the term of this Agreement to any party other than the Company, in each case, in connection with a Transaction.

Evercore agrees that it is not currently aware of a relationship that would adversely impact its ability to provide advisory services hereunder and, during the term of this Agreement, and subject to its confidentiality obligations, Evercore will promptly notify the Company in writing if, in its reasonable discretion, Evercore believes it has a conflict of interest that would adversely impact its ability to provide services hereunder.

Nothing herein shall limit or impair in any way the terms of that certain Non-Disclosure Agreement, dated as of June 3, 2021, by and between Evercore and the Company.

15. The Company agrees to provide and procure all corporate, financial, identification and other information regarding the Company and control persons and/or beneficial owners, as Evercore may require to satisfy its obligations as a U.S. financial institution under the USA PATRIOT Act and Financial Crimes Enforcement Network regulations.

16. Evercore may, in the performance of its services hereunder, delegate the performance of all or certain services as it may select to any of its affiliated entities; provided that no such delegation by Evercore shall in any respect affect the terms hereof, and Evercore shall be responsible for any acts or omissions by any of its affiliated entities in the performance of any services delegated to such entity.

17. For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken together shall constitute one and the same Agreement. Delivery of a signed counterpart of this Agreement by facsimile transmission shall constitute valid sufficient delivery thereof.

18. Except as provided herein, the parties hereby irrevocably consent to the exclusive jurisdiction of any New York State or United States federal court sitting in the Borough of Manhattan of the City of New York over any action or proceeding arising out of or relating to this Agreement, and the parties hereby irrevocably agree that all claims in respect of such action or proceeding may be heard in such New York State or federal court.  The parties irrevocably agree to waive all rights to trial by jury in any such action or proceeding and irrevocably consent to the service of any and all process in any such action or proceeding by the mailing of copies of such process to each party at its address set forth above.  The parties agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. The Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with

Altera Infrastructure L.P.
As of January 1, 2022
Page 11

the laws of the State of New York (without regard to conflicts of law principles that would result in the application of any law other than the law of the State of New York). The parties further waive any objection to venue in the State of New York and any objection to any action or proceeding in such state on the basis of forum non conveniens.

Altera Infrastructure L.P.
As of January 1, 2022
Page 12

If the foregoing correctly sets forth the understanding and agreement between Evercore and the Company, please so indicate in the space provided below, whereupon this letter shall constitute a binding agreement as of the date hereof.

Very truly yours,

Evercore Group L.L.C.

By: _____
Daniel Aronson
Senior Managing Director

By: _____
Avinash D'Souza
Senior Managing Director

Agreed to and Accepted as of the Date
January 1, 2022:

Altera Infrastructure L.P. and its direct and indirect subsidiaries

By: _____
Mark Mitchell
Vice President & Company Secretary
Altera Infrastructure GP LLC as general partner
of Altera Infrastructure L.P.

Altera Infrastructure L.P.
As of January 1, 2022
Page 13

Schedule I

Indemnification Agreement

As of January 1, 2022

Altera Infrastructure L.P.
Altera House, Unit 3, Prospect Park
Arnhall Business Park, Westhill
Aberdeenshire, AB32 6FJ, United Kingdom

Gentlemen:

In connection with the engagement of Evercore Group L.L.C. ("Evercore") to render financial advisory services to Altera Infrastructure L.P. (the "Company") pursuant to the engagement letter, dated as of January 1, 2022 (the "Engagement Letter"), the Company and Evercore are entering into this Indemnification Agreement (this "Agreement").  It is understood and agreed that in the event that Evercore or any of its members, partners, officers, directors, advisors, representatives, employees, agents, affiliates or controlling persons, if any (each of the foregoing, including Evercore, an "Indemnified Person"), become involved in any capacity in any claim, action, proceeding or investigation brought or threatened by or against any person, including the Company's stockholders, related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, the Company will promptly reimburse each such Indemnified Person for its reasonable and documented out-of-pocket legal and other expenses (including the reasonable cost of any investigation and preparation) as and when they are incurred in connection therewith; provided, however, if it is found in any such claim, action, proceeding or investigation that any loss, claim, damage or liability of Evercore has resulted from Evercore's or any Indemnified Person's fraud, gross negligence, bad faith or willful misconduct in performing the services which are the subject of the Engagement Letter, Evercore shall repay such portion of the reimbursed amounts that is attributable to the act or omission of Evercore or such Indemnified Person which is the subject of such finding.

The Company will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expense to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, whether or not any pending or threatened claim, action, proceeding or investigation giving rise to such losses, claims, damages, liabilities or expense is initiated or brought by or on the Company's behalf and whether or not in connection with any claim, action, proceeding or investigation in which the Company or an Indemnified Person is a party, except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted from such Indemnified Person's fraud, gross

Altera Infrastructure L.P.
As of January 1, 2022
Page 14

negligence, bad faith or willful misconduct. The Company also agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its security holders or creditors related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, except to the extent that any loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted from such Indemnified Person's fraud, gross negligence, bad faith or willful misconduct. Each Indemnified Person shall promptly remit to the Company any amounts paid to such Indemnified Person under this Agreement in respect of losses, claims, damages, liabilities or expense that resulted from such Indemnified Person's fraud, gross negligence, bad faith or willful misconduct. If multiple claims are brought against Evercore in an arbitration related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, with respect to at least one of which such claims indemnification is permitted under applicable law, the Company agrees that any arbitration award shall be conclusively deemed to be based on the claims as to which indemnification is permitted and provided for hereunder, except to the extent the arbitration award expressly states that the award, or any portion thereof, is based solely on a claim as to which indemnification is not available.

If for any reason the foregoing indemnification is unavailable to an Indemnified Person or insufficient to hold it harmless, then the Company shall contribute to the loss, claim, damage, liability or expense for which such indemnification is unavailable or insufficient in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by the Company and its security holders on the one hand and the party entitled to contribution on the other hand in the matters contemplated by Evercore's engagement as well as the relative fault of the Company and such party with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations. The Company agrees that for the purposes hereof the relative benefits received, or sought to be received, by the Company and its security holders and Evercore shall be deemed to be in the same proportion as (i) the aggregate consideration paid or contemplated to be paid or received or contemplated to be received by the Company or its security holders, as the case may be, pursuant to a transaction contemplated by the engagement (whether or not consummated) for which Evercore has been engaged to perform financial advisory services bears to (ii) the fees paid or payable to Evercore in connection with such engagement; provided, however, that, to the extent permitted by applicable law, in no event shall Evercore or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to Evercore for such financial advisory services. The Company and Evercore agree that it would not be just and equitable if contribution hereunder were determined by pro rata allocation or by any other method that does not take into account the equitable considerations referred to herein. The Company's reimbursement, indemnity and contribution obligations under this Agreement shall be in addition to any liability which the Company may otherwise have, shall not be limited by any rights Evercore or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company, Evercore, and any other Indemnified Persons.

Altera Infrastructure L.P.
As of January 1, 2022
Page 15

If any claim, action, proceeding or investigation shall be brought, threatened or asserted against an Indemnified Person in respect of which indemnity may be sought against the Company, Evercore shall promptly notify the Company in writing, and the Company shall be entitled, at its expense, and upon delivery of written notice to Evercore, to assume the defense thereof with counsel reasonably satisfactory to Evercore.  Such Indemnified Person shall have the right to employ separate counsel in any such claim, action, proceeding or investigation and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person unless (i) the Company has agreed in writing to pay such fees and expenses, (ii) the Company has failed to assume the defense, pursue the defense reasonably diligently or to employ counsel in a reasonably timely manner or (iii) in such action, claim, suit, proceeding or investigation there is, in the reasonable belief of such Indemnified Person, a conflict of interest or a conflict on any material issue between the Company's position and the position of the Indemnified Person.  It is understood, however, that in the situation in which an Indemnified Person is entitled to retain separate counsel pursuant to the preceding sentence, the Company shall, in connection with any one such claim, action, proceeding, investigation or separate but substantially similar or related claims, actions, proceedings or investigations in the same jurisdiction arising out of the same general allegations or circumstances, be liable for the reasonable fees and expenses of only one separate firm of attorneys at any time for all such Indemnified Persons (unless in the reasonable belief of such Indemnified Persons, there is a conflict of interest or a conflict on any material issue between the positions of such Indemnified Persons), which firm shall be designated in writing by Evercore.  No Indemnified Person will enter into any settlement or compromise of any claim, action, proceeding or investigation in respect of which indemnification or contribution may be sought hereunder (or for any related losses, claims, damages, liabilities or expenses) if such settlement or compromise is effected without the Company's prior written consent (which will not be unreasonably withheld, conditioned or delayed), and the Company shall not be liable for any settlement or compromise of any claim, action, proceeding or investigation (or for any related losses, claims, damages, liabilities or expenses) if such settlement or compromise is effected without the Company's prior written consent (which will not be unreasonably withheld).

The Company agrees that, without Evercore's prior written consent (which consent shall not be unreasonably withheld, conditioned or delayed), it will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, proceeding or investigation in respect of which indemnification or contribution is reasonably likely to be sought hereunder (whether or not Evercore or any other Indemnified Person is an actual or potential party to such claim, action, proceeding or investigation), unless such settlement, compromise or consent includes an unconditional release from the settling, compromising or consenting party of each Indemnified Person from all liability arising out of such claim, action, proceeding or investigation. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby.

For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken

Altera Infrastructure L.P.
As of January 1, 2022
Page 16

together shall constitute one and the same Agreement. Delivery of a signed counterpart of this Agreement by facsimile transmission shall constitute valid sufficient delivery thereof.

This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflicts of law principles that would result in the application of any law other than the law of the State of New York). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York. Evercore and the Company (on its own behalf and, to the extent permitted by applicable law, on behalf of its stockholders and creditors) waive all right to trial by jury in any claim, action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of or in connection with this Agreement.

Each party has all necessary corporate or limited liability company, as applicable, power and authority to enter into this Agreement. All corporate or limited liability company, as applicable, action has been taken by each party necessary for the authorization, execution, delivery of, and the performance of all obligations of each of the parties under the Agreement, and each signatory below is duly authorized to sign this Agreement on behalf of the party it represents.

This Agreement shall remain in effect indefinitely, notwithstanding any termination of Evercore's engagement.

Altera Infrastructure L.P.
As of January 1, 2022
Page 17

Very truly yours,

Evercore Group L.L.C.

By: _____
     Daniel Aronson
     Senior Managing Director

By: _____
     Avinash D'Souza
     Senior Managing Director

Agreed to and Accepted as of the Date
January 1, 2022:

Altera Infrastructure L.P. and its direct and indirect subsidiaries

By: _____
     Mark Mitchell
     Vice President & Company Secretary
     Altera Infrastructure GP LLC as general partner
     of Altera Infrastructure L.P.