IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| ALTERA INFRASTRUCTURE L.P., *et al.*,[1] | ) Case No. 22-90130 (MI) |
| Debtors. | ) (Jointly Administered) |

DECLARATION OF
MARK WHATLEY, SENIOR
MANAGING DIRECTOR OF EVERCORE GROUP
L.L.C., IN SUPPORT OF CONFIRMATION OF THE THIRD
AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF ALTERA INFRASTRUCTURE L.P. AND ITS DEBTOR AFFILIATES

I, Mark Whatley, hereby declare under penalty of perjury:

**Background and Qualifications**

1. I am a Senior Managing Director of Evercore Group L.L.C. ("Evercore"), the investment banker to the above-captioned debtors and debtors in possession (collectively, the "Debtors").

2. Evercore is an investment banking firm listed on the New York Stock Exchange with its principal offices at 55 East 52nd St., New York, NY 10055. Evercore has extensive experience in providing investment banking services to debtors and creditors in financial restructurings and bankruptcy proceedings. Since its founding, Evercore has advised on over $4.7 trillion of transactions.

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/Altera. The location of Debtor Altera Infrastructure L.P.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is Altera House, Unit 3, Prospect Park, Prospect Road, Arnhall Business Park, Westhill, AB32 6FJ, United Kingdom.

3. Before joining Evercore in 2009, I worked in the Gaming, Leisure, and Transportation group at Merrill Lynch from 2004 to 2009. Prior to that, I received an MBA from the Texas McCombs School of Business. I have nearly two decades of strategic advisory experience, focusing primarily on restructuring, capital raising, and M&A transactions in the aviation, maritime, and transportation services industries. Over the course of my career, I have advised senior management and boards of directors in a wide variety of industries in connection with restructurings, mergers and acquisitions, and financing transactions. I have been involved in numerous restructurings including, among others, Nordic Aviation Capital, Grupo Aeroméxico, S.A.B. de C.V., LATAM Airlines Group, Avianca Holdings S.A., American Commercial Lines Inc., Danaos Corporation, Torm PLC, Clipper Group, ZIM Integrated Shipping Services Ltd., Eitzen Chemical, Delphin Shipping LLC, Ocean Rig UDW Inc., General Ore International Corporation Ltd., and US Airways.

4. I have significant experience in providing valuation analyses to transportation, maritime, and offshore companies, including providing fairness and valuation opinions in connection with dozens of transactions.

5. On October 6, 2022, the Court entered the *Order Authorizing the Retention and Employment of Evercore Group L.L.C. as Investment Banker to the Debtors, Effective as of August 12, 2022* [Docket No. 322] (the "Evercore Retention Order").

6. I submit this declaration (this "Declaration") on behalf of the Debtors in support of confirmation of the *Third Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and Its Debtor Affiliates* [Docket No. 516] (as modified, amended, or

2

supplemented from time to time, the "Plan").[2]  In connection with its retention in this matter, under my supervision and direction, Evercore has conducted an enterprise valuation of the Reorganized Debtors on a going concern basis.

7.  Neither Evercore nor I am being specifically compensated for this testimony, other than compensation to Evercore as a professional services firm retained by the Debtors pursuant to the Evercore Retention Order.

8.  Except where specifically noted, the statements in this Declaration are based on (a) my personal knowledge of the Debtors' operations and finances, (b) my review of relevant documents, including information provided by other parties, (c) information provided to me by Evercore employees working under my supervision, (d) information provided to me by members of the Debtors' management team or their other advisors, (e) discussions with members of the Debtors' management team or their other advisors, and (f) my opinions based upon my experience.

9.  If I were called upon to testify, I would testify to the facts and opinions set forth herein.

## Valuation Analysis

10.  At the request of the Debtors, Evercore prepared the valuation analysis attached as Exhibit G to the Disclosure Statement (the "Valuation Analysis").  In conducting the Valuation Analysis, Evercore estimated a range of total enterprise value (the "Enterprise Value") of the Reorganized Debtors on a going-concern basis, *pro forma* for the transactions contemplated by the Plan.

---

[2]  Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan or the *Third Amended Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Reorganization of Altera Infrastructure L.P. and Its Debtor Affiliates* [Docket No. 441] (the "Disclosure Statement"), as applicable.

3

11.     In my expert opinion, and as described more fully in the Valuation Analysis, the Enterprise Value of the Reorganized Debtors would be in a range of approximately $2,392 million to approximately $2,772 million, with a midpoint of approximately $2,582 million as of an assumed effective date of the Plan of December 31, 2022 (the "Assumed Effective Date").  Based upon the estimated range of the Enterprise Value of the Reorganized Debtors described above and assuming funded net debt of approximately $2,219 million as of the Assumed Effective Date, the imputed equity value of the Reorganized Debtors as of the Assumed Effective Date would be in a range of approximately $173 million and $553 million, with a midpoint of $363 million.

## Information Considered

12.     In preparing the Valuation Analysis, Evercore, among other things: (a) reviewed certain historical financial information of the Debtors for recent years and interim periods; (b) met with certain members of the Debtors' senior management to discuss the Debtors' operations and future prospects; (c) reviewed publicly available financial data and considered the market values of public companies deemed generally comparable to the operating businesses of the Debtors; (d) considered certain economic and industry information relevant to the Debtors' operating businesses; (e) prepared a sum-of-the-parts analysis based on the specific characteristics of each of the Debtors' operating segments; (f) prepared discounted cash flow analyses based on the Debtors' financial projections, which are attached to the Disclosure Statement as Exhibit F (the "Financial Projections"), utilizing various discount rates and assumptions in the calculation of terminal values; and (g) conducted such other analyses as Evercore deemed appropriate.  In connection with my work providing investment banking and valuation services to companies, I frequently rely on similar projections and financial data provided by and prepared by other entities.

It is common for experts in my field to rely on such projections and data, and I believe that relying upon such information in preparing the Valuation Analysis is reliable and reasonable.

## Valuation Methodologies

13. In preparing its estimate of the Enterprise Value of the Reorganized Debtors, given the Debtors' complex and unique asset mix, Evercore considered multiple methodologies: (a) the sum-of-the-parts methodology; (b) the discounted cash flow methodology ("DCF"); and (c) the peer group company trading multiples methodology. Evercore then applied a weighting to each of these methodologies based on a judgment as to the relative usefulness and relevance of each methodology to reach an overall conclusion as to the Enterprise Value of the Reorganized Debtors.

14. Evercore's application of the sum-of-the-parts methodology involved estimating total enterprise value by separately ascribing a value to each of the Debtors' operating segments (*i.e.*, (i) floating production, storage, and offloading vessels ("FPSO"), which includes joint venture assets; (ii) floating storage and off-take vessels ("FSO"); (iii) towage vessels ("Towage"); (iv) the accommodations unit ("UMS"); and (v) shuttle tankers ("Shuttle")), and then combining these separate values to estimate total enterprise value. For the FPSO and FSO segments, Evercore considered a range of values derived from the DCF methodology for forecasted cash flows plus residual values at the end of the Projection Period discounted to derive their present values as of the Assumed Effective Date. For the Towage segment, Evercore considered a range of values derived from the peer group company trading multiples methodology and third-party desktop appraisals. For the UMS segment, Evercore considered a range of values derived from management sale price estimates and third-party desktop appraisals. For the Shuttle segment,

Evercore considered a range of values derived from third-party desktop appraisals and precedent sales of similar assets.

15. Evercore's application of the discounted cash flow methodology involved deriving the unlevered free cash flows that the Debtors' operations would generate assuming the Financial Projections are realized. To determine the Enterprise Value range, these cash flows and an estimated Enterprise Value at the end of the Projection Period were discounted to derive their present value as of the Assumed Effective Date, using the estimated weighted average cost of capital of the Reorganized Debtors. In applying the discounted cash flow methodology, Evercore used both a range of perpetuity growth rates and a range of exit multiples.

16. Evercore's application of the peer group company trading multiples methodology involved identifying a group of publicly-traded companies whose businesses and operating characteristics are generally similar to the Reorganized Debtors' operations, although no selected company is either identical or directly comparable to the Reorganized Debtors. From a review of this group, Evercore then developed a range of valuation multiples to apply to the Financial Projections on a run-rate basis with certain adjustments (for the purposes of comparability to the aforementioned valuation methodologies) to derive a range of implied enterprise values for the Reorganized Debtors' operations.

17. In conducting the Valuation Analysis, Evercore did not consider any one analysis or factor to the exclusion of any other analyses or factors. Accordingly, I believe that Evercore's Valuation Analysis must be considered as a whole and that selecting portions of its analysis and factors could create a misleading or incomplete view of the Valuation Analysis.

## Conclusion

18.     Based on my work performed and the information and methodologies considered, I conclude that the Enterprise Value of the Reorganized Debtors is in the range of approximately $2,392 million to $2,772 million, with a midpoint of $2,582 million as of the Assumed Effective Date.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  November 3, 2022

*/s/ Mark Whatley*
Mark Whatley
Senior Managing Director
Evercore Group L.L.C.